IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 11-cv-9147 |
| | ) | |
| ROSEBUD FARMSTAND, ET AL., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Robert Smith has sued Defendants Rosebud Farmstand, Rocky Mendoza, and Carlos Casteneda for sexual and racial harassment (Counts I and II), retaliation (Count III), and constructive discharge (Count IV) pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), a violation of the Illinois Gender Violence Act (Count V), and for violating 42 U.S.C. § 1981 (Count VI). Before the Court is Defendants' motion to dismiss [12] parts of Plaintiff's complaint. Defendants move to dismiss all claims except Plaintiff's sexual harassment claim against Defendant Rosebud. For the reasons set forth below, the Court grants in part and denies in part Defendants' partial motion to dismiss [12].

**I.  Background**

Plaintiff worked as a butcher for Rosebud Farmstand from November 14, 2003 until June 2008. Plaintiff alleges that he was subjected to repeated sexual harassment by his co-workers, including co-workers grabbing and touching his penis and grabbing and slapping his buttocks. He also maintains that co-workers used racial and sexual slurs around him. Plaintiff alleges that he complained to his managers—Defendants Rocky Mendoza, and Carlos Casteneda—about the ongoing racial and sexual harassment, but that they did nothing to stop the harassment and

instead participated in the harassment. He also alleges that he was suspended for nine days for failing to report to work on December 13, 2007, even though he had previously requested the day off. Finally, Plaintiff alleges that Rosebud reduced Plaintiff's average weekly hours from 34 to 30 hours per week.

On January 7, 2008, Plaintiff filed a Charge of Discrimination ("Charge") with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission. In his Charge, Plaintiff maintained that he had been sexually harassed by male co-workers, including Defendants Mendoza and Castaneda, from July 2007 through January 6, 2008. He also maintained that he had been subjected to race discrimination because he was sent home for nine days without pay after failing to report to work on December 13, 2007, and because his work hours were reduced from thirty-four to thirty hours per week.

Plaintiff continued to work for Rosebud Farms until June 2008, when he terminated his employment due to "intolerable" working conditions. On September 26, 2011, the EEOC issued a Notice of Right to Sue with respect to Plaintiff's Charge, stating conciliation failure. On December 23, 2011, Plaintiff filed his complaint in this action, alleging same-sex sexual harassment (Count I); racial harassment (Count II); retaliation (Count III); constructive discharge (Count IV); violation of the Illinois Gender Violence Act (Count V); and violation of § 1981 of the Civil Rights Act (Count VI).

## II. Legal Standard for Rule 12(b)(6) Motions to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that

the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S.Ct. at 1969. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

**III.    Analysis**

Defendants contend that multiple shortcomings in Plaintiff's complaint warrant considerable pruning of the claims at the outset of the case. Defendants make several arguments: (1) Plaintiff's racial harassment, retaliation, and constructive discharge claims exceed the scope of his EEOC Charge (and thus were not properly exhausted before filing federal suit), (2) the claims against Mendoza and Castaneda must be dismissed because individual defendants cannot be held liable under Title VII, (3) Illinois law does not recognize a common law cause of action for constructive discharge, (4) Plaintiff's Illinois Gender Violation Act claim should be dismissed for failure to state a claim upon which relief can be granted; and (5) Plaintiff's allegations in Count VI fail to state a claim under § 1981. The Court takes up each argument in turn.

### A. Scope of the EEOC Charge

The scope of a judicial proceeding subsequent to an EEOC charge "is limited by the nature of the charges filed with the EEOC." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). The limitation, like the statutory limitations period, is not jurisdictional, but is a condition precedent to recovery. See *id.* & n.20. "To determine whether the allegations in the complaint fall within the scope of the earlier EEOC charge," a court must decide whether "the allegations are like or reasonably related to those contained in the [EEOC] charge." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001). The rule is designed at once to give notice to the employer of the nature of the claims against it and to provide an opportunity for the EEOC and the employer to settle the dispute. *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005). Nonetheless, the standard is a liberal one. *Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 525-26 (7th Cir. 2008). Claims are reasonably related—and hence properly raised in a subsequent lawsuit—"if there is a factual relationship between them." *Kersting*, 250 F.3d at 118. The factual information provided in the charge is "[m]ore significant" than "technical defect[s]." *Cable v. Ivy Tech State College*, 200 F.3d 467, 477 (7th Cir. 1999); *Ajayi v. Aramark Bus. Svcs., Inc.*, 336 F.3d 520, 528 (7th Cir. 2003) ("we do not rest our decision here on an omitted checkmark"). In short, the pertinent inquiry is "what EEOC investigation could reasonably be expected to grow from the original complaint." *Ajayi*, 336 F.3d at 527.

Although Plaintiff's EEOC charge is not attached to the complaint, it is referenced in the complaint and central to the allegations contained in Plaintiff's complaint. It is well-established that a court may consider documents that are concededly authentic, referenced in a plaintiff's complaint, and central to a plaintiff's claims, even if those documents are not attached to the complaint. See *Hecker v. Deere & Co.,* 556 F.3d 575, 582 (7th Cir.2009) ("This court has been

4

relatively liberal in its approach to the rule articulated in *Tierney* and other cases."); see also *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1248 (7th Cir. 1994) (upholding consideration of an agreement quoted in the complaint and central to the question whether a property interest existed for purposes of 42 U.S.C. § 1983); *Venture Associates v. Zenith Data Sys.,* 987 F.2d 429, 431 (7th Cir. 1992) (admitting letters, to which the complaint referred, that established the parties' contractual relationship); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 739 (7th Cir. 1986) (permitting reference to a welfare plan referred to in the complaint in order to decide whether the plan qualifies under ERISA). Because Plaintiff's EEOC charge was referenced in his complaint and is central to his claims, the Court may (and will) consider it when evaluating Plaintiff's prospects on a motion to dismiss. See *Hecker,* 556 F.3d at 582; see also *Kuhn v. United Airlines*, 2012 WL 3582209, at *2 (N.D. Ill. Aug. 17, 2012).

        1.    *Plaintiff's claim of racial harassment*

Defendants contend that Plaintiff's racial harassment claim exceeds the scope of his EEOC Charge. "Normally, retaliation, sex discrimination, and sexual harassment charges are not 'like or reasonably related' to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another." *Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003); see also *Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 501 (7th Cir. 1994) ("Because an employer may discriminate on the basis of sex in numerous ways, a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination."); see also *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 110-15, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (emphasizing the separate nature of claims based on specific discriminatory or retaliatory acts for purposes of the limitations period). Plaintiff's EEOC Charge describes

5

sexually offense conduct by male co-workers that created "a hostile and intimidating work environment." He also describes two specific instances in which he was prevented from working—being sent home for nine days without pay and having his hours reduced—due to his race.

Nothing in the Charge suggests that Plaintiff was alleging that he was the victim of racial harassment (as opposed to racial discrimination, a claim clearly set forth in his EEOC charge but not included as a claim in his complaint). Plaintiff makes no mention of harassment on account of race in either his statement of the bases for his Charge or the body of the Charge. He does not mention any of the alleged comments (racial slurs, racial remarks, and racial epithets), conduct, or incidents that he now alleges in Count II of his complaint. Instead, Plaintiff specifically alleges that he was "sent home * * * due to his race" and that he had a "reduction in hours * * * due to his race." Being sent home from work and suffering a reduction in hours are classic examples of race discrimination, which is a different claim from being harassed with racial epithets, slurs, and comments. See *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110-1111 (7th Cir. 1992) (concluding that racial harassment claim was beyond the scope of plaintiff's charge where plaintiff included a specific race discrimination claim in her charge, but failed to include any reference to racial harassment).

The specificity in Plaintiff's Charge with respect to his claims for sexual harassment and race discrimination belie his argument that he did not understand how to plead a racial harassment claim. He set forth detailed facts to support both sexual harassment and race discrimination claims, yet failed to include any reference to conduct that would support a racial harassment claim. To allow him now to claim additional instances of racial harassment would not be consistent with Title VII's goal of providing notice to an employer of the nature of the

claims. See *Rush*, 966 F.2d at 1110 ("In many cases challenging the allegations in the complaint for failure to come within the charge filed with the EEOC, the question of congruence arises because the charge was fairly detailed and the subsequent complaint deviated form the specific instances of discrimination.").

Plaintiff also maintains that his allegations of sexual harassment and racial harassment are intertwined and that his racial harassment claims "grew from" the sexual harassment. While Plaintiff has connected these claims in his complaint, the Charge allegations do not support this connection. None of the alleged racial remarks appear, directly or indirectly, in his Charge, despite his very specific sex and race allegations. Thus, the Court concludes that Plaintiff's racial harassment claim (Count II) falls outside the scope of his EEOC charge and is barred.

2.  *Plaintiff's claims of retaliation and constructive discharge*

Defendants also allege that Plaintiff's claims of retaliation (Count III) and constructive discharge (Count IV) exceed the scope of the Plaintiff's EEOC charge. Although these claims have similarities, Title VII treats them as discrete causes of action. Title VII provides that an employer may not "discharge any individual * * * because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). A constructive discharge occurs where an employer "makes an employee's working conditions so intolerable that the [reasonable] employee is forced into an involuntary resignation." *Saxton v. American Tel. & Tel. Co.,* 10 F.3d 526, 536–37 (7th Cir. 1993) (quoting *Weihaupt v. American Medical Ass'n,* 874 F.2d 419, 426 (7th Cir. 1989)). In order to recover under a constructive discharge theory of discrimination, the plaintiff must show that (1) he was actually constructively discharged; and (2) that the constructive discharge resulted from his membership in a protected class. *Saxton,* 10 F.3d at 526. On the other hand, a Title VII retaliation charge requires the following three

elements of proof: "(1) [the plaintiff] must show that she engaged in statutorily protected expression; (2) [the plaintiff] suffered an adverse action by her employer; and (3) there is a causal link between her protected expression and the adverse action." *McKenzie v. Illinois Dep't of Transportation,* 92 F.3d 473, 483 (7th Cir. 1996). A plaintiff can prove the "causal link" by demonstrating that her employer would not have acted adversely "but for" the protected expression. *Id.*

Defendants correctly point out that Plaintiff's EEOC Charge does not refer to or allege any instances of retaliation and constructive discharge. However, with respect to a retaliation claim, it is "the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case—a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII." *McKenzie*, 92 F.3d at 482 (quoting *Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir. 1981)); see also *Kirkland v. Buffalo Bd. of Educ.*, 622 F.2d 1066 (2d Cir. 1980) (holding that the act of retaliation was "directly related" to plaintiff's initiation of litigation and that no second EEOC charge was necessary); *Nealon v. Stone,* 958 F.2d 584 (4th Cir. 1992) (holding that retaliation claim may be raised for the first time in federal court); *Bouman v. Block,* 940 F.2d 1211 (9th Cir. 1991) (holding that retaliation claim was "reasonably related" to prior sex discrimination claim); *Brown v. Hartshorne Public Sch. Dist. No. 1,* 864 F.2d 680 (10th Cir. 1988) (holding that retaliation arising out of first EEOC filing was "reasonably related" to that filing, obviating the need for a second EEOC charge).[1]  Here, the only incidents of retaliation

---

[1]   The Seventh Circuit has identified a limit to this reasoning. In *Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534 (7th Cir. 1988), the court noted that *Gupta* and similar cases "all involved situations where the alleged retaliation arose after the charge of discrimination had been filed." *Id.* at 545. In such cases, only a single filing was necessary to comply with the intent of Title VII; a double filing "would serve no

alleged by Plaintiff occurred after the filing of his EEOC charge, and therefore those incidents (occurring between January 2008 and June 2008) may be considered as evidence of Plaintiff's retaliation claim, despite the fact that "retaliation" was not alleged in his administrative filing.[2]

Turning to his constructive discharge claim, Plaintiff's EEOC Charge does not allege that sexual harassment prompted him to leave his job in June 2008. Indeed, it would have been impossible for his EEOC charge to have mentioned his departure from Rosebud or to have alleged a constructive discharge because his EEOC Charge preceded his resignation from Rosebud. But the Seventh Circuit does not treat retaliation and constructive discharge claims in the same manner. In *Herron v. DaimlerChrysler Corp.,* 388 F.3d 293 (7th Cir. 2004), the Seventh Circuit held that EEOC charges alleging "racial discrimination, retaliation, and harassment, [but] not constructive discharge," were an insufficient predicate for bringing a constructive discharge claim in federal court. *Id.* at 303 n. 2; see also *Dixon v. Americall Grp., Inc.,* 390 F.Supp.2d 788, 791 (C.D. Ill. 2005) ("when a plaintiff's EEOC charge alleges discrimination, but does not state that his decision to stop working is based on that discrimination, the charge does not support a constructive discharge claim"). This was particularly so because the EEOC charges in *Herron* preceded the plaintiff's resignation; as the

---

purpose except to create additional procedural technicalities." But in instances where incidents of retaliation could have been—and should have been—included in the administrative charge, those incidents cannot serve as the basis of a retaliation claim alleged in a federal complaint.

[2] Defendants argue in their reply brief that "Plaintiff claims he was retaliated against for allegedly complaining internally about alleged harassment" and therefore his claims of retaliation stem from conduct that occurred prior to the filing of the EEOC Charge in early 2008. This argument is unpersuasive and directly contrary to the allegations in Plaintiff's complaint. In his complaint, Plaintiff specifically alleges that "[i]n 2008 *after* the plaintiff's EEOC charge of 7 January 2008, until the plaintiff terminated his employment in June 2008, the defendants would ignore the plaintiff, give him the cold shoulder, exclude him from meetings, scratch his car, slash his tires, expose meat knives threateningly and so forth." See Compl. at ¶ 25 (emphasis added). Plaintiff's response brief confirms that his retaliation claim centers on "retaliatory behavior that results from filing an EEOC charge." Pl.'s Resp. at 7. Thus, Plaintiff's retaliation claim is limited to instances of retaliation which occurred after the filing of his EEOC charge (or to ongoing sexual harassment and race discrimination).

9

Seventh Circuit explained, the "delay between [the] EEOC complaint and [the plaintiff's] decision to leave was inconsistent with notice [in the EEOC charge] of constructive discharge." *Herron,* 388 F.3d at 303 n. 2; see also *Conner v. Ill. Dep't of Natural Res.,* 413 F.3d 675, 680 (7th Cir. 2005) (holding that discriminatory non-promotion claim could not have been exhausted in the EEOC charge where the non-promotion occurred one month after the charge was filed); *Kulumani v. Blue Cross Blue Shield Ass'n,* 224 F.3d 681, 685 (7th Cir. 2000) (holding that discriminatory failure to rehire claim was not exhausted where the EEOC charge was filed prior to the plaintiff's applying for the position).

Plaintiff's constructive discharge claim suffers from the same infirmities as those in *Herron* and the cases cited above. It might have been a different case if Plaintiff alleged that the sexually harassing conduct continued until he resigned in June 2008, but his complaint clearly states that following the filing of his EEOC Charge, the complained of conduct was that "defendants would ignore the plaintiff, give him the cold shoulder, exclude him from meetings, scratch his car, slash his tires, expose meat knives threateningly and so forth," not that Defendants continued to sexually harass him and cut his pay and hours. The post-EEOC filing conduct is different from both the sexually harassing conduct and the racially discriminatory conduct alleged in his EEOC Charge. Therefore, Plaintiff cannot argue that his constructive discharge claim is "like or reasonably related to those contained in the [EEOC] charge." *Kersting*, 250 F.3d at 1118. In short, Plaintiff has not exhausted his administrative remedies with respect to his constructive discharge claim.

At the end of the day, the decision to allow Plaintiff's retaliation claim to go forward, while dismissing his constructive discharge claim for failure to exhaust, may have little effect on the litigation of this case. This is so because Plaintiff may argue that Defendants constructively

10

discharged him in retaliation for his complaints of sex discrimination. See *Fischer v. Avanade, Inc.*, 519 F.3d 393, 408-09 (7th Cir. 2008); *Williams v. Waste Mgmt. of Ill., Inc.,* 361 F.3d 1021, 1032 (7th Cir. 2004) (discussing how constructive discharge can serve as the adverse employment action in a retaliation claim). Constructive discharge does constitute an adverse employment action and is deemed to have occurred when the plaintiff shows that he was forced to resign because his working conditions, from the standpoint of the reasonable employee, had become unbearable. *EEOC v. Univ. of Chicago Hosps.,* 276 F.3d 326, 331 (7th Cir. 2002). Here, one could reasonably infer from the allegations in Plaintiff's complaint that he engaged in protected activity, which led to Plaintiff's constructive discharge from Rosebud. Therefore, while Plaintiff's legal claims have been truncated, the factual presentation of the evidence may well proceed as he originally intended.

In sum, the Court grants Defendants' motion to dismiss as to Plaintiff's racial harassment and constructive discharge claims (Counts II and IV), but denies Defendants' motion as it pertains to Plaintiff's retaliation claim (Count III).

### B. Title VII claims against Mendoza and Castaneda

In his response brief, Plaintiff asserts that he is not suing Defendants Mendoza and Castaneda as individuals under Title VII, but rather sues them only under § 1981 and the Illinois Gender Violence Act. Therefore, Defendants' motion to dismiss the Title VII claims against Defendants Mendoza and Castaneda is denied as moot.

### C. Constructive Discharge under Illinois Law

In both his complaint and his response brief, Plaintiff asserts that his constructive discharge claim is brought pursuant to Title VII, not Illinois state law. The Court takes no position on whether Plaintiff could state a claim for constructive discharge under Illinois law

because Plaintiff maintains that "count VI, constructive discharge, is not under Illinois State law." See Pl.'s Resp. at 3. As previously set forth, Plaintiff cannot sustain a claim that he was constructively discharged in violation of Title VII because Plaintiff did not file a charge of discrimination relating to his separation from employment or seek to amend his original charge to encompass discharge claims. Therefore, Count IV is dismissed.[3]

### D. Illinois Gender Violence Act

In his complaint, Plaintiff alleges that Defendants Rosebud, Castaneda, and Mendoza violated the Illinois Gender Violence Act. Section 10 of the Act provides a civil cause of action for victims of gender-related violence:

> Any person who has been subjected to gender-related violence as defined in Section 5 may bring a civil action for damages, injunctive relief, or other appropriate relief against a person or persons perpetrating that gender-related violence. For purposes of this Section, 'perpetrating' means either personally committing the gender-related violence or personally encouraging or assisting the act or acts of gender-related violence." 740 ILCS 82/10 (West 2008).

Section 5 of the Act defines "gender-related violence" to include: "[o]ne or more acts of violence or physical aggression satisfying the elements of battery under the laws of Illinois that are committed, at least in part, on the basis of a person's sex" and "[a] physical intrusion or physical invasion of a sexual nature under coercive conditions satisfying the elements of battery under the laws of Illinois." 740 ILCS 82/5.

Plaintiff has pleaded facts that lead to an inference that Rosebud (via its managers and supervisors) received Plaintiff's complaints of sexual harassment or assault by its managers and employees and that it took no action against these managers and employees as a result of the

---

[3] Count IV is dismissed without prejudice. To the extent that Plaintiff is able to marshal evidence that the sexual harassment or racial discrimination continued after the filing of his EEOC Charge and that this conduct, rather than the conduct alleged in ¶ 25 of the complaint, made his working conditions too intolerable, Plaintiff may seek leave of court to amend his complaint. However, at this time, the allegations in the complaint do not support a separate constructive discharge claim.

complaints, choosing to punish Plaintiff instead. There is no question that the alleged conduct of Defendants Castaneda and Mendoza—if supported by evidence—would be considered acts of gender-related violence, and Defendants' one-sentence support for dismissal inherently suggests tacit agreement with this conclusion. It is less clear whether Rosebud is susceptible to liability, but once again Defendants provide the Court with minimal support for dismissal. Defendants appear to argue that Rosebud cannot be held liable for a violation of the Act because Plaintiff has not sufficiently alleged that Rosebud was *personally* involved in an act of gender-related violence on account of Rosebud's corporate identity (see Defs.' Mem. at 8 ("Plaintiff is unable to demonstrate * * * that Rosebud *personally* committed gender-related violence or *personally* encouraged or assisted the acts of gender-related violence")), although the one case cited by Defendants addresses only with whether the Act applies retroactively. (It does not, but that is not at issue here.) Defendants have not provided any other basis for dismissing Plaintiff's Gender Violence Act claim. Thus, Plaintiff's allegations are enough to state a claim against Rosebud for encouraging or assisting the individual Defendants' acts of gender-related violence and against Plaintiff's manager and assistant manager for perpetrating the violence. See also *Cruz v. Primary Staffing, Inc.*, 2011 WL 1042629, at *1-2 (N.D. Ill. Mar. 22, 2011).

      **E.**    **Section 1981**

In Count VI, Plaintiff alleges that Defendants discriminated against him on the basis of his race in the terms and conditions of his employment and thus violated 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991. The legislative history of the Civil Rights Act of 1991 indicates that it was enacted in response to a number of decisions by the United States Supreme Court that were perceived to sharply cut back on the scope and effectiveness of federal civil rights laws. See H.R.Rep. No. 102–40(I), at 18, *reprinted* in 1991 U.S.C.C.A.N. 549, 556. The

13

Act overruled the Supreme Court's decision in *Patterson v. McLean Credit Union,* 491 U.S. 164 (1989), in which the Court held that § 1981 did not apply to conduct after a contractual relationship had been established. 491 U.S. at 171. Section 12 of the Act amended § 1981 to reaffirm that the right "to make and enforce contracts" includes the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship. See H.R. Rep. 102–40(II), at 37, *reprinted in* 1991 U.S.C.C.A.N. 549, 730–31. Specifically, Congress added subsection (b) to § 1981: "For the purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." H.R. Rep. 102–40(II), at 37, *reprinted in* 1991 U.S.C.C.A.N. 549, 730–31; see also *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 383 (2004) ("The 1991 Act overturned *Patterson* by defining the key 'make and enforce contracts' language in § 1981 to include the 'termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'"); *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012). Thus, a plaintiff bringing a Title VII claim often includes a § 1981 claim as well. The substantive standards and methods of proof that apply to claims of racial discrimination and retaliation under Title VII also apply to claims under § 1981. See *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 403–04 (7th Cir. 2007), *aff'd,* 553 U.S. 442 (2008).[4]

---

[4] One key difference between § 1981 and Title VII is that the latter authorizes suit only against the employer as an entity rather than against individual people who are agents of the employer. Under § 1981, individuals may be liable. Compare *Williams v. Banning,* 72 F.3d 552, 555 (7th Cir. 1995) (holding that supervisor may not held liable in his individual capacity for discrimination under Title VII), with *Patterson v. County of Oneida,* 375 F.3d 206, 226 (2d Cir. 2004) ( "individuals may be held liable under §§ 1981 and 1983 for certain types of discriminatory acts"). Other important differences are that claims under § 1981 have a relatively long four-year statute of limitations, see *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 382 (2004); *Dandy v. United Parcel Service, Inc.,* 388 F.3d 263, 269 (7th Cir. 2004), are not subject to the damage caps enacted in the Civil Rights Act of 1991, see 42 U.S.C. §

In briefing their motion to dismiss, Defendants acknowledge that "there can be scenarios where Title VII and Section 1981 claims might factually overlap," but contend that Plaintiff has failed to allege that "Defendants had intended to discriminate against him on the basis of race in the making or enforcing of a contract of for 'asserting the right to substantive contractual equality provided by § 1981.'" Defs' Reply at 8-9. Defendants interpret the term "contract" too narrowly. As the Seventh Circuit explained in *Walker v. Abbott Laboratories,* "at-will employment, though capable of being terminated by either party at any time, is nonetheless a contractual relationship." 340 F.3d 471, 476 (7th Cir. 2003). Moreover, the court noted, excluding at-will employment relationships from the ambit of § 1981 would "contravene Congress's intention [that] the Civil Rights Act of 1991 * * * restore the broad scope of Section 1981 to ensure that all Americans may not be harassed, fired or otherwise discriminated against in contracts because of their race." *Id.* at 477 (quotation omitted). Thus, the Seventh Circuit has concluded that at-will employment relationships are governed by § 1981. See *id.* at 476-77. In his complaint, Plaintiff clearly has alleged facts that give rise to an inference that he was an "at-will" employee of Rosebud and that Defendants discriminated and retaliated against him on the basis of his race. Therefore, Defendants sole argument for dismissal of Plaintiff's § 1981 claim—that he has failed to plead a contractual relationship—fails.

## IV. Conclusion

For these reasons, the Court grants in part and denies in part Defendants' motion to dismiss [12]. The Court grants the motion with respect to Plaintiff's claims of racial harassment (Count II) and constructive discharge (Count IV) and dismisses those claims without prejudice. The Court denies the motion in all other respects, and Plaintiff may proceed with his claims of

---

1981a(b)(4), and do not require exhaustion of administrative remedies. See, *e.g., Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 539 (7th Cir. 2007).

sexual harassment (Count I), retaliation (Count III), violation of the Illinois Gender Violence Act (Count V), and violation of § 1981 of the Civil Rights Act (Count VI).

Dated: November 15, 2012

_____
Robert M. Dow, Jr.
United States District Judge