IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  11-CV-9147 |
| | ) | |
| | ) | |
| ROSEBUD FARMSTAND, ROCKY MENDOZA, | ) | |
| CARLOS CASTANEDA, PABLO VELASCO, | ) | |
| ORLANDO ALARCON, LUIS ARAMBULA, | ) | |
| MARCOS ROMERO, FREDERICO LOPEZ | ) | |
| JOSÉ G MARTINEZ | ) | Honorable Judge Robert M. Dow Jr. |
| | ) | Honorable Judge Jeffrey T. Gilbert |
| | ) | Jury Demand |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO BAR DEFENDANT'S RETAINED EXPERT AND STRIKE HIS REPORT**

**Posttrial: plaintiff's attempts to resolve outstanding issues, but to no avail**

Prior to the 7 December 2015 trial, the parties had agreed that the Honorable Judge Dow would decide the issues concerning back wages and other equitable damages. Also, the plaintiff stated that he would present his objections and arguments relating to the defendant's retained expert, Malcolm Cohen, after the trial if the jury found in favor of the plaintiff. Indeed, litigating those objections and arguments before trial would have been a waste of judicial resources and attorney's fees because the jury may have resolved the case not in the plaintiff's favor.

Consequently, to avoid unnecessary attorney's fees, the plaintiff suggested that the issues concerning back wages and other equitable damages, including the plaintiff's response to Malcolm Cohen and the defendant's other arguments regarding phase II, be resolved after trial if the jury found in the plaintiff's favor. After the parties presented all of their evidence and closing statements in the lengthier trial than some suspected, the jury deliberated. The jury returned a

verdict in the plaintiff's favor. Consequently, the parties have entered phase II for this Court to determine the amount of back wages and other equitable damages.

Shortly after the trial, the plaintiff corresponded with the defendants on a couple of occasions. The plaintiff suggested that the parties work to resolve the issues of back wages and other equitable relief to which the plaintiff was entitled. The plaintiff stated that such would save thousands and thousands of dollars of attorney's fees. Indeed, the defendants would have to pay their own attorney's fees. Also, under law, they would have to pay the attorney's fees of the plaintiff. Therefore, the plaintiff stated to the defendants that it would be prudent to resolve the outstanding issues.

In fact, on numerous occasions throughout this litigation, the plaintiff suggested to the defendants that settling this case was prudent to avoid the increase of further attorney's fees. The defendants responded that they were disinterested in resolving the issues concerning phase II. Consequently, the plaintiff presents his motion to bar Malcolm Cohen and the report of Malcolm Cohen to the Honorable Judge Dow.

**Overview of Malcolm Cohen's report**

In his five-page report, excluding his resume and so forth, Malcolm Cohen begins by stating that the defendants retained him to review the job opportunities relating to the plaintiff's occupation and labor markets, but he mentions nothing about the plaintiff's qualifications, education, abilities and so forth. Malcolm Cohen's report, Exhibit I. Indeed, on page 1, under "information reviewed", Malcolm Cohen admits that he reviewed nothing relating to the plaintiff, for example, the plaintiff's deposition, the plaintiff's resume, the plaintiff's limited educational background, plaintiff's limited qualifications and so forth. The only thing that the expert reviewed were statistics from the Bureau of Labor Statistics and help wanted advertisements.

On page 2, §3, Malcolm Cohen states that the plaintiff worked behind the meat counter, that the plaintiff spent some time in Maricopa County, Arizona and that the plaintiff earned minimum wage. However, Malcolm Cohen fails to specify where he received this information. Presumably, he received this information from the defendant's attorney, but Malcolm Cohen had an obligation to do his own research and not rely on the information provided by the defendant's attorney. The information from the defendant's attorney is inadmissible hearsay. FRE 702 does not provide exceptions for the hearsay rule. As the defendants chose to restrict Malcolm Cohen's access to information relating to this case to the hearsay information from the defendant's attorney, this Court may find that this is an additional reason to lean towards barring Malcolm Cohen and striking his report.

Next, on page 2, §IV, Malcolm Cohen states that he obtained a list of advertisements in various occupations, but fails to specify how he obtained the list. Malcolm Cohen states that he reviewed advertisements for jobs "relevant" to the plaintiff, but Malcolm Cohen fails to provide any facts how he determined what was "relevant". Then, Malcolm Cohen on page 2, lists various categories, e.g., service occupations, sales, production and so forth, but he fails to specify with facts how and why he chose those categories as opposed to some other categories. Perhaps one could guess, but one should not have to guess because the law requires that an expert's report be complete, so that guessing and a deposition would be unnecessary. Infra.

On page 3, the defendant's retained expert states the legal conclusion that "Mr. Smith would have access to the various databases from which the ads originated," but Malcolm Cohen fails to provide any facts for this legal conclusion. Malcolm Cohen fails to specify how and whether the plaintiff would have access to various databases, or even if the plaintiff would know how to search for these on the Internet. Indeed, Malcolm Cohen never reviewed the plaintiff's deposition, knows nothing about the plaintiff's qualifications and abilities and so forth.

Therefore, Malcolm Cohen is unqualified in this case.

On page 3, Malcolm Cohen states that "Wanted Technologies de-duplicates identical ads", but Malcolm Cohen fails to provide any facts for this legal conclusion. On page 3, Malcolm Cohen admits that the plaintiff "would not be qualified for every position", but Malcolm Cohen fails to specify what positions the plaintiff would be qualified for and how he arrived at such legal conclusion. Then, on page 3, he states "the ads are an indicator of the labor market for Mr. Smith's field", but Malcolm Cohen fails to specify the facts supporting this legal conclusion. Nor does he specify what he means by "indicator", "labor market" and the plaintiff's "field."

On page 3, Malcolm Cohen discusses tables, but he fails to specify the origin of these tables, why he chose these tables and not some others, their alleged relevance and so forth. On page 4, Malcolm Cohen refers to "appendix B", referring to ads, but such is unattached. Similarly, Malcolm Cohen refers to appendix C on page 4, but appendix C is unattached. Melendez v. Illinois Bell Telephone Co., 79 F.3d 661 (7th Cir. 1996) (affirming district court's bar of the defendant's expert for failing to provide documents during discovery, whether unintentional or intentional.)

Nevertheless, on page 4, Malcolm Cohen states that appendix C lists ads, but he fails to identify why he chose these particular ads, how he derived them, what they told him and so forth. He just states that the ads were coded in the Wanted Technologies database without specifying how he would know this and its relevance, if any.

On page 4, Malcolm Cohen states "these are examples of the types of opportunities which would have been available", but he fails to state how he obtained these examples, why he chose them and what relevance they have, if any, to this case. Also, he fails to specify how he came to the legal conclusion of what is "available" and to whom? This is particularly true as Malcolm Cohen admits, page 4, that many of the postings may be duplicate and may not "be an exact

match for Mr. Smith." Yet, Malcolm Cohen included them anyway even though they have nothing to do with Mr. Smith. Malcolm Cohen fails to specify which ads are not "an exact match for Mr. Smith."

Finally, on page 4, §III, Malcolm Cohen states that "the ads are illustrative of the types of opportunities that would be available", but he fails to identify what he means by "type of opportunities", "available" and what, if anything, it has to do with the plaintiff. Also, in §V, page 4, Malcolm Cohen states that the unemployment rate "has been consistently higher in Chicago, Illinois than the US as a whole since 2008." He then states that the unemployment rate was not as high in Maricopa County, Arizona since 2008, but he fails to specify the basis for his statement, why he mentions these years and what they have to do with the plaintiff. Also, he provides no opinion relating to this information. Indeed, he fails to provide any opinion relating to nearly all of the information he provides in his report.

On page 4, §VI, Malcolm Cohen refers to the plaintiff's constructive discharge from Rosebud in 2008, but he fails to state the basis for this information. One can only surmise that all of Malcolm Cohen's information came from the defendant's attorney. Malcolm Cohen then presents a table referring to service occupations, sales and related occupations, office and administrative occupations, production occupations and transportation and moving occupations. Malcolm Cohen fails to specify what these occupations have to do with the plaintiff, for example, office and administrative, etc. why he chose these categories and so forth.

On page 5, Malcolm Cohen states "it is my understanding that as of the time of this report, Mr. Smith has been unemployed", but Malcolm Cohen fails to state the basis of his "understanding." Then, in his conclusion on page 5, Cohen states that 56,000 ads existed "for occupations in categories that would typically be relevant for someone with his qualifications", but Malcolm Cohen fails to identify to whom he is referring when he says "his qualifications."

5

One can surmise that he is referring to the plaintiff, but Cohen doesn't state this, particularly when he previously admitted in his report that many of the advertisements had nothing to do with the plaintiff. Also, Cohen fails to state whether he has any knowledge whatsoever of the plaintiff or the plaintiff's qualifications. Moreover, Cohen fails to specify the relevance, if any, of the ads and what they have to do with the plaintiff.

Notably, nowhere does Cohen state any opinion of whether the plaintiff could have acquired any job in the unspecified "ads." Also, nowhere does Cohen identify any particular employers that could--or would-- have hired the plaintiff. In the last paragraph of his report, Malcolm Cohen states that the report "represents my opinion", but this report fails to specify his opinions. For all the reasons stated in the plaintiff's motion, Judge Dow may decide to strike Malcolm Cohen and his report.

**Defendants' Expert Should Be Barred for Incompleteness of the Report**

Expert reports are required to be "detailed and complete," "such that opposing counsel is not forced to depose an expert," and must not be "sketchy, vague or preliminary in nature"....A "report must ...include 'how' and 'why' the expert reached a particular result, and not merely the expert's conclusory opinions." Salgado v. GM, 150 F.3d 735, 741, 742, n. 6 (7th Cir. 1998); Jenkins v. Bartlett, 487 F.3d 482, 487 (7th Cir. 2007)("The purpose of the report is to set forth the substance of the direct examination"). Rule 26 (a)(2) Advisory Committee's Note states that reports must detail all opinions and the basis for such opinions. Otherwise, the alleged expert will be barred. Salgado, supra.

**The defendant's retained expert does not Meet The <u>Daubert</u> Standard**

The defendant's retained expert must meet the standards in Daubert v. Merrill Dow, 509 U.S. 579, 113 S.Ct. 2786 (1993); Naeem v. McKesson Drug Co., 444 F.3d 593, 607 (7th Cir. 2006). The defendants, not the plaintiff, bear the burden of proving admissibility. Daubert, supra,

509 U.S. at 592, fn. 10. In <u>Naeem</u>, the Seventh Circuit barred a human resources expert as the opinions were general observations on what constitutes normal business practices. The Seventh Circuit rejected off-the-cuff statements void of analysis, citing <u>Lang v. Kohl's Food Stores, Inc.</u>, 217 F.3d 919, 924 (7th Cir.2000).

In <u>Smith vs. Rosebud</u>, the defendant's retained expert provides little to no opinions, but merely states what seem to be statistics, without explaining why such statistics were selected and their relevance to the plaintiff, if any. Supra. Indeed, Cohen does not even state that the plaintiff could have found a job and how much he would have earned in such alleged, fictitious job, much less state what the plaintiff's lost wages would have been.

Even when retained experts have included calculations of what would have been lost wages, courts have struck them because they were based upon faulty premises. See, e.g., <u>McMillan v. Weeks</u>, 478 F.Supp. 2d 651, 658 (D. Del. 2007). As the defendant's retained expert does not give opinions, the defendant's report can be stricken.

**Defendant's report should Be Barred because it fails the FRE 702 requirements.**

To be admissible under FRE 702, expert testimony must be both relevant and reliable. <u>Daubert v. Merrill Dow</u>, 509 U.S. 579, 589 (1993); <u>Kumho v. Carmichael</u>, 526 U.S. 137, 152 (1999) (the objective of the court''s gate keeping requirement is to ensure the reliability and relevancy of expert testimony); <u>Smith v. Ford.</u>, 215 F.3d 713, 718 (7th Cir. 2000) (<u>Daubert</u> requires the court to ensure expert testimony is both reliable and relevant). Experts ordinarily render opinions. However, as stated, the defendant's retained expert did not render opinions. Presumably, the defendants retained an expert to establish that the plaintiff did not mitigate his damages. However, neither this Court, nor the plaintiff, should have to presume. Guessing should not be required because it prejudices the plaintiff. On this basis alone, this Court might decide to strike the retained expert's.

If the defendant's retained expert had rendered non-violative opinions regarding mitigation of damages, the law is well-established that the defendant would have had the burden to prove their affirmative defense, i.e., that the plaintiff 1) did not exercise reasonable diligence to seek other employment and 2) that with the exercise of reasonable diligence, a reasonable likelihood existed that he might have found comparable employment. Gaddy v. Abex, 884 F.2d 312, 318 (7th Cir. 1989); Coleman v. Lane, 949 F.Supp. 604, 608, 611 (N.D. Ill. 1996); Wheeler v. Snyder, 794 F.2d 1228, 1234 (7th Cir. Ind. 1986).

FRE 702 states that testimony is reliable only if offered by a qualified witness and (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Malcolm Cohen refers to the Bureau of Labor Statistics and so forth, but he fails to establish that relying on such is the acceptable principle and method used within the profession.

Also, he fails to establish that he applied principles and methods to the facts of the case. Indeed, he only presents, bare-bones facts to this case, e.g., the plaintiff's name, Mr. Smith, he worked at a supermarket etc. As stated, it appears that the defendant's attorney provided its retained expert with this bare-bones information. The retained expert did not review any documents or any information whatsoever relating to the facts concerning to the plaintiff independently As Malcolm Cohen does not refer to it, it appears that he does not know the plaintiff's age, race, the plaintiff's numerous efforts to find a job and so forth.

Cohen does not state 1). that he read the plaintiff's deposition transcript, 2) that he reviewed the plaintiff's answers to the defendant's interrogatories, 3) that he reviewed the plaintiff's documents produced pursuant to the defendant's request to produce, 4) that he reviewed the plaintiff's applications for employment at various places, 5) that he reviewed the

plaintiff's educational background 6) that he reviewed the plaintiff's qualifications, 7) that he reviewed the plaintiff's work history and so forth. <u>Richmond vs. Sheehan</u>, #98-7350 (ND IL 10/11/05) (barring defendant's expert as he focused only on defendant's version of the "facts", failing to consider the plaintiff's version of the facts).

Therefore as Cohen failed to utilize sufficient facts or data relating to Mr. Smith, he could not have applied reliable principles and methods to nonexistent facts relating to Mr. Smith. Consequently, his testimony is irrelevant under FRE 702.

The Seventh Circuit mandates that district courts analyze the factual bases of an expert's opinion to determine whether to bar it. <u>U.S. v. Moore</u>, 521 F.3d 681, 682 (7th Cir. 2008). In <u>Smoot v. Mazda</u>, 469 F.3d 675 (7th Cir. 2006), the expert opined that the airbags deployed improperly. Upholding the District Court's bar of the expert, the Seventh Circuit noted that the expert did not 1). inspect the car's airbag control unit, 2). ask about the recall, 3). inspect another automobile of the same model, 4). review crash testing data and 5). interview the plaintiff or any mechanic repairing the automobile. See, <u>Naeem v. McKesson</u> 444 F.3d 593, (7th Cir. 2006)(expert examined depositions of employees and the defendant's personnel policy manual, but opinions "were not tied to specific portions of the policy manual, and appeared to be general observations regarding what is normal or usual business practice."*)

**Cohen's report is based upon deficient facts and data**

FRCP 26(2) (B) requires that the expert's report contain a complete statement of the basis for the opinion, and the data and information considered by the witness. As stated, Malcolm Cohen's report is nearly void of opinions. His report does include statements without the basis for such statements or specifying why such statements were included. On page 3 of 20, Cohen admits that the plaintiff would be unqualified for every position in the databases. Yet, Cohen included them in his report without specifying the basis for including such. On page 3 of 20 of

his report, Malcolm Cohen states that the plaintiff would have access to various databases, but Cohen fails to define the factual basis for this bald legal conclusion. On page 4 of 20 Cohen admits that every ad in the database would not be a match for the plaintiff. Yet, Cohen included them in his report.

On page 5 of 20, Cohen states that 56,000 Chicagoan advertisements existed "for occupations in categories that would typically be relevant for someone with his qualifications." Cohen fails to provide the basis for this broad, bald conclusion. He fails to define "typically", "relevant" and "his qualifications." He fails to specify which "occupations" would be "relevant." He uses the broad category of "occupations" instead of referring to any particular jobs.

Then, on page 5 of 20, Cohen states "there were 55,000 ads in Maricopa County, Arizona during the approximate time he was there." Cohen fails to explain the relevance of these ads. Also, he fails to identify the "approximate time that he was there", presumably referring to the plaintiff. Furthermore, Cohen fails to identify how many unemployed job applicants existed for each of the 55,000 ads. Also, Cohen fails to compare the qualifications of these unemployed job applicants with the plaintiff's qualifications.

As the labor market was bad for many years, did these applicants have PhD's, master's degrees, college degrees? Did the employers hire these educated applicants over applicants having far less formal education like the plaintiff? During the many years that the job market was bad, the plaintiff's attorney met several highly educated people working as entry-level sales clerks at big retailers because they could not find a job elsewhere. Presumably, these retailers preferred to hire highly educated people over minimally educated people when such an abundant supply of unemployed people existed.

Regarding the general material he reviewed from the Census Bureau, Cohen did not determine whether the plaintiff was qualified for each of the 56,000 jobs, what qualifications

each of employers required, whether the plaintiff would have met the qualifications of each alleged employer and so forth. Moreover, Cohen includes many classes of jobs that are unrelated to the plaintiff. The plaintiff worked behind the meat counter. Cohen included jobs relating to janitors, food preparation, dishwashing, landscaping and so forth without any explanation why or how these jobs relate to the plaintiff. Cohen provides no opinion that these alleged jobs were "substantially equivalent" to the plaintiff's job with the defendant, that is, working behind the meat counter. Effectively, Cohen's report is perfunctory and should be barred. Smoot v. Mazda, Inc., 469 F.3d 675 (7th Cir. 2006) (upholding district court's exclusion of automobile expert's testimony because he failed to analyze adequately the particulars of the accident, violating FRCP 702. )

**Cohen fails to provide any evidence of any available job which Plaintiff was qualified for and for which he did not apply.**

Presumably, the defendant retained their expert to assert that the plaintiff's efforts to find a job were not diligent, although, as stated, the defendant's expert fails to state this. Also, as stated, the law is well-established that the defendant bears the burden on any affirmative defense. The defendant had to prove that the plaintiff could have obtained essentially equivalent employment if certain efforts were used. Of course, this proposition presupposes that the defendants met their burden to prove that particular jobs were available that the plaintiff could have obtained and were disregarded. Snow v. HealthSouth., 2001 Lexis 5534 (S.D. Ind. 2001) (even if plaintiff made no effort to find comparable employment, mitigation defense fails because employer failed to prove that substantially equivalent jobs were available and the plaintiff did not seek them).

In Coleman v. Lane, 949 F.Supp. 604, 614 (N.D. Ill. 1996), the Court held that even though the defendant offered copies of want-ads for positions for which the plaintiff did not

apply, the defendant's argument was deficient:

> Nowhere does the court find evidence of the specific job qualifications sought by the potential employers and how they compare to Plaintiff's skills and background. Nor did Defendant present evidence from any potential employer that an application from Plaintiff would have resulted in an offer. Thus, although Plaintiff was undoubtedly remiss in his efforts to mitigate his damages, Defendant has failed to adequately demonstrate that Plaintiff had a reasonable likelihood of receiving a job offer had he contacted the employers in the newspaper.

*Id.* Cohen does not even submit or refer to any specific want ads, advertisements of any kind. Also, Cohen provides no examples of anyone hired. He provides no evidence that the positions in the ads involved employers who acutely hired employees for jobs for which the plaintiff was qualified and for which the plaintiff did not apply. Indeed, Cohen fails to refer to a single meat department job for which the plaintiff was qualified and in which the employer actually hired somebody with similar qualifications as the plaintiff. Notably, Cohen does not opine that the plaintiff was not diligent in his repeated efforts to acquire employment.

Cohen fails to state how any particular job had requirements that were not incompatible with the plaintiff's skill, education and experience. Therefore, Cohen's report is irrelevant. Indeed, Cohen's general report, e.g., referring to 56,000 open positions without specifics, ignores that the Honorable Judge Dow, as the gatekeeper, will scrutinize Cohen's report. Advisory Committee Notes to 2000 Amendments to FRCP 702 (The trial court's gatekeeping function requires more than simply "taking the expert's word for it.")

"Generalized evidence that the industry is doing well is insufficient to meet the burden to show comparable work existed." Kuper v. Empire Blue Cross & Blue Shield, 2003 LEXIS 2362, 20 (S.D.N.Y. 2003); N.L.R.B. v. Midwestern, 408 F.3d 418, 427 (7th Cir. 2007). Cohen relies upon generalized evidence of the general labor market which is poor methodology because Cohen fails to apply the generalized labor market to the specific facts and particulars relating to Mr. Smith. Cohen refers to Wanted Technologies, but provides no evidence that Wanted

Technologies is not unreliable, is customarily used by those in the industry and so forth. Cohen states that Wanted Technologies is used by State governments, but Cohen provides no evidence of this. Notably, Cohen does not even state any opinion of when the plaintiff could have or should have found a job.

Also, in pages 4 and 5, Cohen provides figures for the number of advertisements, unemployment rate and duration of unemployment, but he attaches no supporting documents. Instead, he expects Judge Dow and the plaintiff to take "the expert's word for it." Advisory Committee Notes to 2000 Amendments to FRCP 702 (The trial court's gatekeeping function requires more than simply "taking the expert's word for it.")

**Cohen Fails to identify any "substantially equivalent" jobs**

Though plaintiffs must use reasonable diligence to find "substantially equivalent" employment to his job with the defendant, plaintiffs have no obligation to "go into another line of work." Ford Motor Co. v. EEOC, 458 U.S. 219, 231 (1982) Yet, Cohen's report refers to landscaping, food preparation, janitorial and so forth--all different lines of work. A plaintiff "need not seek employment which is not consonant with his particular skills, background, and experience or which involves conditions that are substantially more onerous than his previous position.'" Id. at 231 n.16, Graefenhain v. Pabst Brewing Co., 870 F.2d 1198, 1202 (7th Cir. 1989); Wheeler v. Snyder Buick, Inc., 794 F.2d 1228, 1234 (7th Cir. Ind. 1986).

Though the plaintiff's nearly 5 year job with the defendant's meat department was indoors, Cohen refers to jobs outdoors, e.g., landscaping which is not "substantially equivalent" to working indoors behind the meat counter. Notably, Cohen does not even attempt to compare the plaintiff's former job with the defendant with any particular, allegedly available job. As Cohen's report generally discusses advertisements, without demonstrating that any particular employer could have or would have hired the plaintiff, Cohen's report is irrelevant Kuper v.

Empire2003 Lexis 2362, *20-21 (plaintiff had a managerial job in investigatory based sector of insurance industry, expert's testimony that he could have obtained job as a claims adjustor was deficient).

When courts look to whether two jobs are substantially equivalent, they look at more than just similar wages. As stated, the defendant's expert fails to identify any particular job with a particular employer which could then be contrasted with the plaintiff's job with the defendant. Though Cohen's report mentions nothing about any particular job that the plaintiff could have acquired and did not, if he had, arguendo, it would have had to been a "substantially equivalent" job.

In US v. City of New York et al., 2012 WL 3637410, *1-3 (E.D.N.Y. Aug. 22, 2012), the court held that that the plaintiff, a former firefighter with the defendant, did not have to seek entry-level firefighting positions in New York State, outside of New York City, or in New Jersey. Nor did the plaintiff have to accept an entry-level New York City Police Department position. Citing Ford Motor Co. v. EEOC, 458 U.S. 219, 231 (1982), the court noted that the plaintiff's duty to seek employment is not onerous and does not require the victim of discrimination to be successful in the attempt to mitigate.

The court noted that defendants had an obligation to prove that "substantially equivalent" positions were available similar to the lost position in "promotional opportunities, compensation, job responsibilities, working conditions, and status. See also, Rasimas v. Michigan Dep't of Mental Health, 714 F.2d 614, 624 (6th Cir.1983); Parrish v. Immanuel Med. Ctr., 92 F.3d 727, 735-36 (8th Cir.1996) (emergency room admissions clerk position different to general hospital admissions clerk); Hemphill v. City of Wilmington, 813 F.Supp.2d 592, 599 (D.Del.2011) (available positions at defendant municipality are not automatically substantially equivalent employment to victim's lost position); NLRB v. Thalbo Corp., 171 F.3d 102, 114-15 (2d

14

Cir.1999) (position working nights and weekends different to prior position working weekday shifts). In short, Cohen fails to identify any "substantially equivalent" job.

**Cohen Fails consider the plaintiff's African-American race**

Notably, Cohen fails to even consider that the plaintiff is an African-American. Perhaps the defendants withheld this information from Cohen. Cohen fails to discuss how the African-American plaintiff would have compared to white applicants for the same job, though, as stated, Cohen does not even identify any particular job. Civil rights laws have passed to give African-Americans a better chance to acquire jobs they would not have acquired otherwise. Yet, African-Americans still have difficulty getting jobs as compared to whites with similar qualifications and so forth.

Cohen has no explanation of the plaintiff's race, the difficulties African-Americans have to acquire jobs, particularly in a very tight job market, compared to whites. Cohen fails to state how long it takes African-Americans to obtain employment as compared to whites, particularly based on the plaintiff's qualifications and limited experience and education. Cohen fails to identify particular jobs with specific employers (name, address etc.) for which the plaintiff could have obtained as opposed to the thousands of other unemployed educated, better qualified, white applicants. All of Cohen's omissions demonstrate that Cohen's report is deficient relating to facts, data and analysis. This deficiency triggers this Court's gatekeeping responsibilities.

Wherefore, the plaintiff prays that the Honorable Judge Dow will strike Malcolm Cohen and his report.

Respectfully submitted,

Joseph A. Longo

15

**LONGO AND ASSOCIATES LTD.**
Joseph A. Longo, Esq.
Attorney for Plaintiff
2100 West Haven
Mt. Prospect, IL   60056
(847) 640-9490
Longo-Associates@SBCglobal.net
Attorney No. 53635

## CERTIFICATE OF SERVICE

I, Joseph A. Longo, an attorney, certify that I served this PLAINTIFF'S MOTION TO BAR DEFENDANT'S RETAINED EXPERT AND STRIKE HIS REPORT by electronic filing on 4 January 2016 before 5pm. Under penalties as provided by law pursuant to 735 ILCS, Sec 5/1-109, I certify that the statements set forth in this Certificate of Service are true and correct.

Joseph A. Longo

16