IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT SMITH,<br><br>Plaintiff,<br><br>v.<br><br>ROSEBUD FARMSTAND, ROCKY MENDOZA, CARLOS CASTANEDA, et al<br><br>Defendants. | ) | Civil Action No. 11-CV-9147<br><br>Honorable Judge Robert M. Dow Jr.<br>Jury Demand |

**MOTION FOR JUDGMENT ON DEFENDANT'S AFFIRMATIVE DEFENSE OF MITIGATION**

***Defendant's burden on their affirmative defense of mitigation***

The law is well-established that the defendants had the burden to prove their affirmative defense at the phase II hearing, i.e., that the plaintiff 1) did not exercise reasonable diligence to seek employment and 2) a reasonable likelihood existed that he might have found comparable employment. Gaddy v. Abex, 884 F.2d 312, 318 (7th Cir. 1989); Coleman v. Lane, 949 F. Supp. 604, 608, 611 (N.D. Ill. 1996); Wheeler v. Snyder., 794 F.2d 1228, 1234 (7th Cir.1986).

The plaintiff has pending a motion to bar the testimony and strike the report of the defendant's economist. Doc 250. Also, the plaintiff has a motion to strike documents from the defendant's economist that were not produced in discovery and to bar any opinion not in the economist's report. Doc 257. If this Court grants those motions, then the court's order will bolster the plaintiff's motion for judgment. If such motions are not granted, the Honorable Judge Dow may find that the plaintiff's motion for judgment can still be granted. Operating v. Clarks, 688 F.Supp.2d 902, 913 (N.D.Calif. 2010) (granting summary judgment for the plaintiff on defendant's affirmative defense of mitigation). As will be demonstrated, the defendants failed to prove both or either of the two prongs of their burden, supra. Consequently, judgment can be

entered against the defendants on their affirmative defense of mitigation and the parties can proceed to the next step.

***Defendants failed to meet their "heavy" burden on their affirmative defense***

The defendant's burden to prove a failure to mitigate is "heavy". Atlantic Limousine v. N.L.R.B., 243 F.3d 711,721 (3 rd Cir. 2001). Why? The defendant's burden is heavy because the law promotes an important public policy, that is, 1). refusing to allow employers to benefit from breaking the law and 2). making victimized plaintiffs whole. NLRB v. Westin, 758 F. 2d 1126, 1130 (6th Cir. 1985) ("Westin seeks… to place the burden on the employee to prove a 'systematic method of searching for a job', and…to retain employment once secured regardless of the conditions under which the employee was required to work. Neither the courts nor the Board has recognized this as an appropriate standard. To the contrary, basic principles of equity and fairness mandate that the burden of proof must remain on the employer because the employer's illegal discharge of the employee precipitated the search for another job.") Once a plaintiff has established that his employer unlawfully terminated his employment, a presumption in favor of full relief arises. Gaddy v. Abex, supra.

***Prong #1: The defendants failed to meet their burden to prove that the plaintiff did not exercise reasonable diligence to seek employment***

The Seventh Circuit standard for victimized plaintiffs seeking a substantially equivalent job includes 'check[ing] want ads, register[ing] with employment agencies, and discuss[ing] employment opportunities with friends and acquaintances.'" Hanna v. American, 724 F. 2d 1300, 1307 (7th Cir.1984). The victimized plaintiff is "only required to make a reasonable effort to mitigate damages and is not held to the highest standard of diligence. This burden is not onerous, and does not mandate that the plaintiff be successful in mitigating." NLRB v. Ryder, 983 F.2d 705, 715 (6th Cir. 1993); see also, Canova v. NLRB, 708 F.2d 1498, 1506 (9th Cir.1983).

The defendants attempting to attack the credibility of the plaintiff fails to meet the defendant's burden of proof. Floca v. Homecare, 849 F.2d 108, 112 (5th Cir. 1988) (reversing District Court's holding that plaintiff, a supervisory RN, was required to accept a regular RN position; "the judge did not believe… (Plaintiff) that she could not find comparable work; the lack of credibility…is insufficient to meet the defendant's burden of proof.) This concept is important because as will be seen and determined, in Smith vs. Rosebud, the defendants did not refute the plaintiff's uncontroverted testimony of his efforts to find a job.

In Clark v. Takata, 192 F.3d 750, 759 n. 5 (7th Cir.1999), the Court of Appeals held:

> The district court… held that…Mr. Bozeman made no meaningful attempt to obtain teaching employment ….On that basis, in addition to the finding of no racial discrimination, the court below declined to award back….Mr. Bozeman testified that he sent written applications to two school districts… that he had talked to the superintendent…and that he had also inquired about vacancies… through teachers and former teachers, all black, who had been released….The district court concluded that Mr. Bozeman's efforts to find other teaching employment were insufficient…
>
> The appellees do not claim that at trial it was proved that there were teaching jobs available for which Mr. Bozeman would have qualified had he applied. It merely asserts that Mr. Bozeman did not expend sufficient effort to find other teaching employment. The appellees' position is without legal justification. As the Eighth Circuit held in Hegler…'The defendant…(school board) has to show not only that the plaintiff… failed to use reasonable care and diligence, but that there were jobs available which appellant could have discovered and for which she was qualified'.

In Snow v. HealthSouth., 2001 Lexis 5534 (S.D. Ind. 2001), the court held:

> (The plaintiff) …claims that, because of her inside knowledge of the health care community in Kokomo, she knew that no comparable jobs were available to her. It is true that she merely asserts this claim. However, that is enough, because it is not her burden to present evidence to prove that she was sufficiently diligent. Rather, it is HealthSouth's burden to bring forth evidence to disprove it. The only evidence that HealthSouth proffers is its own assertion that Snow did not 'apply for a job [in the health care market, and that] she [did not] inquire into possible job openings at any of the numerous healthcare facilities in the surrounding area.' HealthSouth Brief at 33. Even if true, this is an inadequate showing. The law does not require that a plaintiff circulate resumes or make formal inquiries when it is clear that such an attempt would be futile. The burden remains with HealthSouth to show that the attempt, most likely, would not have been futile. Thus, to refute

> Snow's explanation, HealthSouth would have to show that there were jobs available which Snow ignored. This, HealthSouth has failed to do.

As in Clark and Snow, in Smith vs. Rosebud, the defendants failed to present any employers who would have hired the plaintiff if he had applied. Also, the defendants failed to refute the plaintiff's testimony. The plaintiff testified that after being constructively discharged in June 2008 and before discovering that he had an opportunity to move to Arizona in July 2008, the plaintiff testified that, daily, he spent five hours a day looking for a job. He would review job postings in the Chicago Tribune, Chicago Sun-Times and the free employment newspapers that one would find at supermarkets. Also, the plaintiff testified that daily he submitted numerous job applications. Moreover, the plaintiff either daily or frequently throughout the week would go to the Illinois Department of Economic Security (IDES) and used their computers. He testified that the IDES would give the plaintiff lists of job openings. He would respond to about 32 of those job openings daily by submitting applications. Furthermore, he frequently contacted family and friends asking them if they had any ideas where he could obtain a job.

After moving to Mesa, Arizona in July 2008, the plaintiff testified that he followed the same procedure as in Chicago before leaving for Arizona. Instead of the Chicago newspapers, he reviewed the Arizona Republic and the same type of employment newspapers one would find at supermarkets. Moreover, he would go to the employment agencies where he lived every day and followed the same procedure as he did in Chicago. He testified that he would walk within a 4 mile radius of where he lived and applied for jobs.

Also, the plaintiff testified about proceeding to interviews. Furthermore, he testified how he looked for a job as a meat butcher both in Chicago and Mesa, Arizona, but to no avail, except for some temporary jobs. He testified that his girlfriend informed him of a couple of job leads. He pursued those job leads and was able to find temporary employment. Moreover, the plaintiff

testified how he has worked for a temporary employment agency.

Had Rosebud not constructively discharged him, the plaintiff testified that he would have continued to work for Rosebud beyond 2016. At trial, he testified that when working at Rosebud, he could walk to work when his car would frequently break down. He testified how he would have worked 50, 60 and 70 hours per week. He also testified that when he did work overtime, that is, 50, 60, 70 hours per week, Rosebud did not pay him time and one-half. Indeed, he stated that he complained to head butcher, Federico Lopez, but to no avail. The defendants violated Illinois law by failing to pay time and one-half for the plaintiff working overtime. 820 ILCS 105/4a (1) ("no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 1/2 times the regular rate at which he is employed.")

In Hanna, supra, the plaintiff had been an assemblyman for the defendant. The plaintiff visited the job service office, applied at factories, read want ads, discussed jobs with friends and worked at least 2 jobs. The Court of Appeals held, "these actions are more than sufficient to constitute 'reasonable diligence' on the part of Hanna." Id at page 1309. Therefore, the Court of Appeals reversed the District Court's finding that the plaintiff "should have more diligently pursued work that was available". Hanna at page 1308. Also, the Court of Appeals held:

> AMC failed to introduce a scintilla of evidence to contradict or discredit Hanna's testimony that he had placed applications on file with various employers, registered with the employment office, discussed employment opportunities with others, checked the want-ads, or secured temporary employment.

In Smith v. Rosebud, the plaintiff satisfied the Seventh Circuit standard or exceeded it. He filed applications with various employers. He registered with employment agencies. He discussed employment opportunities with friends and family. He checked the want ads and he secured temporary employment. Indeed, he did more than required by Hanna, spending 5 hours

daily a day checking the want ads in multiple newspapers, checking the lists of job openings at the Department of Economic Security and the correlative agency in Mesa, Arizona, walking a 4 mile radius daily looking for jobs and so forth. As in Hanna, the defendants have presented no evidence to contradict the plaintiff's testimony of his efforts to find employment. The plaintiff's testimony is uncontroverted, undisputed, and thus, must be accepted. As stated, the defendants must meet both prongs to fulfill their burden. As the defendants failed to meet their burden regarding the first prong, on this basis alone, Judge Dow may decide to enter judgment against the defendants on their affirmative defense.

In Gaddy v. Abex, supra, on cross-examination, the plaintiff testified that Kraft was interested to employ the plaintiff, but she did not pursue the possible job because she could not afford relocating herself and her family from Chicago to Geneva, Illinois. The plaintiff testified that she contacted over 100 employers, used two employment agencies, answered newspaper ads and followed leads from friends and relatives. Despite all of these efforts, the plaintiff received no job offers and earned no income since her employment with the defendant terminated. The District Court granted back pay for 71 months totaling $118,270. Affirming the District Court, the Court of Appeals held that the defendants failed to produce any probative evidence that if the plaintiff had pursued Kraft, a reasonable probability existed that she would have received a job offer. Therefore, the Court of Appeals held that the defendants failed to meet their burden to overcome the important public policy of making victimized plaintiffs whole.

In Wheeler v. Snyder, 794 F.2d 1228, 1234 (7th Cir.1986), the plaintiff answered want ads, registered with employment agencies and applied for various positions, but did not pursue other known opportunities with new car dealerships. The Seventh Circuit found that the plaintiff's efforts were sufficient, although it was "not untroubled by the [low] level of Wheeler's post-termination job-seeking activities." Id. A diligent ... plaintiff endeavoring to mitigate

damages would at least check the want ads, register with employment agencies, and discuss job opportunities with friends and acquaintances." Id. In Smith v. Rosebud, the plaintiff met the Seventh Circuit standard of answering want ads, registering with employment agencies and discussing job opportunities with friends and acquaintances. Indeed, he did considerably more than the standard. Supra.

***The defendant's answers to the plaintiff's discovery demonstrate that the defendant failed to meet its burden***

As argued in the plaintiff's supplement to the plaintiff's motion to strike and bar the defendant's economist, the defendants failed to disclose in discovery the factual basis of their affirmative defense. The defendant's affirmative defense #2 is bare-bones stating "plaintiff has failed to mitigate his damages." Exh. I. The plaintiff propounded discovery to learn the basis of the defendant's bare-bones defense. For example, interrogatory #15 requested:

> Regarding each and every affirmative defense, I) detail all facts, II) identify all persons having information or knowledge relating to such affirmative defense and identify the affirmative defense and III) please produce all documents related to the affirmative defenses.

Emphasis added. The defendants never answered interrogatory #15. Instead, in response to the plaintiff's motion to compel, the defendants argued that their answer to interrogatory #14 and #16 essentially responded to interrogatory #15. However, neither the defendant's answer to interrogatory #14, Exh. II nor the defendant’s answer to interrogatory #16, Exh. III, detailed all of the facts for the defendant's affirmative defense. Therefore, regarding the first prong of the defendant's burden, the defendants provided no facts that the plaintiff did not exercise reasonable diligence to seek other employment. Regarding the second prong of the defendant's burden, the defendants provided no facts that with reasonable diligence, a reasonable likelihood existed that the plaintiff might have found a substantially equivalent job.

The plaintiff's interrogatory #16, requested:

> Please state whether you or your counsel has received any factual information from any person or entity relating to the allegations in the complaint, the defendant's answer to the complaint or defendant's affirmative defenses, including, but not limited to, any third party, such as, any place where the plaintiff was employed or applied for employment. If the answer is yes, please detail the name, address and telephone number, work position, name of employer, the date the information was provided and the substance of all factual information. If you contend any such information is privileged, please provide privilege log in accordance with the Federal Rules of Civil Procedure.

Emphasis added. As can be seen by and gotten a handle of the defendant's answer to interrogatory #16, Exh. III, the defendant's answer provides no facts to meet their burden to prove the first and second prong of their burden. Plaintiff's request to produce #11 requested "all documents, memorandum, correspondence, notes or computer records referring or relating to your defense of the allegations of the plaintiff's complaint." The defendants failed to produce documents to meet their burden. In short, as the defendants failed to produce evidence to meet their "heavy" burden to overcome the important public policies to make the victimized plaintiff whole, this Court might decide to move to the next step of entering judgment against the defendants on their affirmative defense.

***Prongs #2: The defendants failed to meet their burden to prove that with reasonable diligence, the plaintiff could have found a substantially equivalent job***

The defendants must prove that substantially equivalent employment was available and that the claimant did not exercise reasonable diligence to obtain it. Ford v. EEOC, 458 U.S. 219, 231 (1982), Donlin v. Phillips, 581 F.3d 73, 89 (3rd Cir. 2009). In Coffey v. DFW, #14-4365 (ND Ill. 10/29/15), *7 Exh. IV, regarding the affirmative defense of mitigation, the court asserted that the defendant bore the burden of proving 1) that the plaintiff was not reasonably diligent about finding employment and 2) a reasonable probability existed that the plaintiff might have found comparable employment.

Regarding the first prong, the court noted that the defendant did not rebut the plaintiff's

deposition testimony about her job search. Instead, the defendant only argued that the plaintiff 1). restricted her job search to online sources rather than checking newspaper job advertisements and 2). could have expanded her job search to a wider geographical area. The court held that even if a jury disbelieved the plaintiff about her job search, the defendant still failed to meet its burden to rebut the plaintiff's testimony. Regarding the second prong, the court held that the defendant offered no evidence “that plaintiff might have found a job had she made additional efforts. For instance, defendant did not present evidence from a potential employer that an application from plaintiff would have resulted in a job offer, nor did defendant offer evidence of specific job qualifications sought by employers and how they compare to plaintiff's”. id.

As in Coffey v. DFW, in Smith v. Rosebud, the defendants provided no evidence refuting the plaintiff's uncontroverted testimony of his efforts to find a job. Also, the defendants provided no evidence that the plaintiff might have found a job had he made additional efforts. Moreover, the defendants offered no evidence of specific job qualifications sought by employers and how they compare to the plaintiff's. Also, the defendants provided no evidence from a potential employer that if they had received an application from the plaintiff, they would have hired the plaintiff. Therefore, as in Coffey v. DFW, the defendants in Smith v. Rosebud, failed to meet their burden on their affirmative defense.

Regarding the second prong, the defendants, either through their economist or otherwise, failed to demonstrate any substantially equivalent employment which had virtually identical promotional opportunities, compensation, job responsibilities and status as the plaintiff had with the defendants. The defendant's economist merely stating that thousands of jobs from a hearsay website existed failed to meet their burden. At no time did the defendant's economist discuss a specific meat butcher job opening and give an opinion that it was substantially equivalent in promotional opportunities, compensation, job responsibilities and status as the plaintiff's position

with the defendants. Consequently, whether there were thousands of jobs in Chicago or Arizona is irrelevant as it does not relate to any issue in the case.

Notably, as argued in the plaintiff's motion to strike, the defendant's economist admitted at the Phase II hearing that he did not check, even randomly, if the alleged thousands of job openings were real, actual jobs. He did not check if these alleged thousands of job openings were actually filled. If they were real jobs and filled, he did not check who filled them and what qualifications such person had. When defendants submit job advertisements as potential evidence, courts require defendants to prove that such jobs were real, actually available. Mueller v. First, 797 F. Supp. 656, 658 (C.D.Ill.1992) (admitting defense exhibits of job listings in newspapers and magazines, but requiring proper showing that the positions were available and represented actual job openings for the plaintiff). Also, at no time did the defendants through their economist (Malcolm Cohen ) or otherwise prove that had the plaintiff applied for a particular job, he would have obtained it.

Pursuant to the FRE 701, 702, the defendants were obligated to provide an expert with technical or other specialized knowledge to prove that substantially equivalent jobs existed. An economist may be unqualified to render such an opinion. A vocational expert might be more qualified. Even the most "supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in Daubert." Clark at 759 n. 5.

Nevertheless, whether an economist is unqualified to render an opinion about substantially equivalent jobs is irrelevant because the defendant's economist never gave an opinion that substantially equivalent jobs existed. Sparks v. Griffin, 460 F.2d 433, 443 (5th Cir. 1972) ("[T]he [defendants] do not claim that at trial it was proved that there were teaching jobs available for which [the plaintiff] would have qualified had he applied. It merely asserts that [the

plaintiff] did not expend sufficient effort to find other teaching employment. [This] position is without legal justification.");

At the Phase II hearing, the Honorable Judge Dow may recall that the plaintiff repeatedly objected based upon relevance regarding the defendant's cross examination of the plaintiff and/or the defendant's examination of their economist. The reason why the plaintiff objected based upon relevance is because the defendant's questions had little to no bearing on what the defendants had to prove on their affirmative defense. "[E]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful" it should be excluded. Daubert, at 591.

In NLRB v. Midwestern, 508 F. 3d 418, 427 (7th Cir. 2007), the defendants presented a report from Malcolm Cohen, the same economist used by the defendants in Smith v. Rosebud. The administrative law judge restricted the testimony of Malcolm Cohen to what was contained in his report. (Indeed, the Honorable Judge Dow in Smith vs. Rosebud also restricted Malcolm Cohen at the Phase II hearing to what was in his report.) Allegedly, the report stated that numerous jobs existed. The Court of Appeals affirmed the restriction by the judge holding:

> The data collected was Statewide, and thus the report did not provide specific data for the relevant geographical areas. In addition, Cohen's analysis did not include any data regarding the pool of applicants, any insight into whether the discriminatees would have been able to secure positions had they applied, or any information regarding the hours, wages, and locations of the supposedly available positions. In general, it is reasonable for the Board to reject expert testimony regarding generalized labor market analysis as evidence that particular discriminatees failed to perform a reasonably diligent search.

id. As in NLRB v. Midwestern, in Smith vs. Rosebud, the defendants through Malcolm Cohen failed to provide any evidence regarding the pool of applicants, whether the plaintiff would have been able to secure a job, any information regarding the hours, wages and locations of the supposedly available positions. Also, regarding Arizona, the defendants through Malcolm Cohen provided general information of Maricopa County instead of specific data of Mesa,

Arizona where the plaintiff lived. This is particularly important as the plaintiff had restricted access to means of transportation.

Finally, as in in NLRB v. Midwestern, in Smith vs. Rosebud, the defendants through Malcolm Cohen provided only "generalized labor market analysis". See also, Kuper v. Empire Blue Cross, 2003 LEXIS 2362, 20 (S.D.N.Y. 2003) ("Generalized evidence that the industry is doing well is insufficient to meet the burden to show comparable work existed"); Prine v. Sioux City, 95 F.Supp.2d 1005, 1012 (N.D. Iowa 2000) ("The court concludes that the School District's assertion that the economy is good, and that jobs are available in the Sioux City area does not satisfy its burden of proof on the issue of mitigation.")

Notably, in NLRB v. Midwestern, Malcolm Cohen went a step further than he did in Smith v. Rosebud, that is, rendering an opinion that the plaintiff did not perform a reasonably diligent search. Even with this additional step, the judge rejected Malcolm Cohen's opinion and the Court of Appeals affirmed. In Smith v. Rosebud, Malcolm Cohen does not even render an opinion that the plaintiff with reasonable diligence could have found a substantially equivalent job. Therefore, as in NLRB v. Midwestern, the Honorable Judge Dow may decide to find that the defendants failed to meet their burden.

Courts hold that defendants fail to meet their burden by simply presenting want ads without more. In Kawasaki v. NLRB, 850 F.2d 524, 528 (9th Cir. 1988), the court held, "Kawasaki's reliance on newspaper advertisements and hiring records to show the availability of jobs is not adequately convincing. Kawasaki failed to produce evidence of employment specifically available or employment offers Bennett refused to accept." See, Meyers v. City of Cincinnati, 14 F.3d 1115, 1119 (6th Cir. 1994) ("The City presented no evidence that substantially equivalent positions were available to Meyers and has not, therefore, met its burden of establishing failure to mitigate."); Reid v. Kraft, 1995 WL 262531 9 (E.D.Pa.1995) (defendant

criticizing the plaintiff's efforts to find employment does not meet the defendant's burden; also, defendant failed to demonstrate there were substantially equivalent positions available); Mallek v. City of San Benito, 121 F.3d 993, 997 (5th Cir. 1997) (plaintiff rejected defendant's offer of employment; defendant failed to meet its burden to prove that it's offer was substantially equivalent to the plaintiff's previous position).

In NLRB v. Ryder, 983 F.2d 705 (6th Cir. 1993), the Court of Appeals rejected the defendant's argument that the help-wanted advertisements satisfied their burden:

> Ryder makes much of help wanted advertisements it placed in the record in support of its claim that there were truck driving jobs available if Briscoe wanted one. We are not persuaded. Ryder's reliance on the advertisements is not convincing. It 'failed to produce evidence of employment specifically available or employment offers… (the victimized plaintiff) refused to accept.'

As in Ryder, the defendants in Smith v. Rosebud failed to produce evidence of substantially equivalent employment and of employment offers which the plaintiff did not accept. Therefore, as in Ryder, Judge Dow may decide to enter judgment against the defendants on their affirmative defense of mitigation. In Coleman v. Lane, 949 F. Supp. 604, 614 (ND Ill. 1996), though the plaintiff only submitted four job applications and inquired into a few positions, the court held that the defendant failed to meet its burden on its affirmative defense of mitigation to overcome the important public policy of making harassed, victimized plaintiffs whole. The defendant submitted numerous pages from the Chicago Tribune listing maintenance positions. Also, the defendant submitted evidence that the plaintiff did not apply for these maintenance jobs.

Aside from the plaintiff objecting that the Chicago Tribune was hearsay, the plaintiff argued that the defendant failed to meet their burden that the posted jobs in the Chicago Tribune were actual, real jobs and that if the plaintiff had applied, he would have obtained the job. The court analyzed whether the defendant met its burden to prove that the plaintiff had a reasonable likelihood to acquire a job, citing Gaddy, 884 F.2d at 318. Finding that the defendant failed to

meet its burden to overcome the important public policy of making victimized plaintiffs whole, the court held:

> The two pronged test…requires Defendant to make a showing that further efforts on Plaintiff's part might have succeeded. All that Defendant has offered to meet this burden are copies of want-ads. No case law cited by Defendant…establishes that such a showing, without more, is adequate to meet Defendant's burden. Nowhere does the court find evidence of the specific job qualifications sought by the potential employers and how they compare to Plaintiff's skills and background. Nor did Defendant present evidence from any potential employer that an application from Plaintiff would have resulted in an offer. Thus, although Plaintiff was undoubtedly remiss in his efforts to mitigate his damages, Defendant has failed to adequately demonstrate that Plaintiff had a reasonable likelihood of receiving a job offer had he contacted the employers in the newspaper. Although Plaintiff appears to believe that he was qualified to do 'anything I want to' in the maintenance field…Defendant presented no evidence that potential employers shared that assessment. The court accordingly awards Plaintiff $88,261.95 in post-judgment back pay — $94,261.95 in lost wages and benefits.

id. Similarly, in Smith v. Rosebud, the defendants failed to provide any evidence of any specific, substantially equivalent job to which the plaintiff had not applied. As in Coleman, defendants in Smith v. Rosebud presented hearsay, generalized, abstract information of job postings without presenting any specific information of the specific job qualifications for each job posting and comparing it to the plaintiff's skills and background. Also, as in Coleman, the defendants provided no evidence from "any potential employer that an application from plaintiff would have resulted in an offer." Id. Furthermore, as in Coleman, the defendants "failed to adequately demonstrate that plaintiff had a reasonable likelihood of receiving a job offer had he contacted the employers" mentioned in the economist's report, presuming that such unidentified employers are real, actual employers, have real, actual job openings. Therefore, as in Coleman, Judge Dow may decide to choose the option of moving to the next step and finding that the defendants failed to meet their burden and entering judgment against the defendants on their affirmative defense.

Wherefore, the plaintiff prays that this Honorable Court will grant the plaintiff's motion and

enter judgment against the defendants on their affirmative defense of mitigation.

Respectfully submitted,

Joseph A. Longo

**LONGO AND ASSOCIATES LTD.**
Joseph A. Longo, Esq.
Attorney for Plaintiff
2100 West Haven
Mt. Prospect, IL 60056
(847) 640-9490
Longo-Associates@SBCglobal.net
Attorney No. 53635

**CERTIFICATE OF SERVICE**

I, Joseph A. Longo, an attorney, certify that I served this MOTION FOR JUDGMENT ON DEFENDANT'S AFFIRMATIVE DEFENSE OF MITIGATION by electronic filing on 28 April 2016 before 5pm. Under penalties as provided by law pursuant to 735 ILCS, Sec 5/1-109, I certify that the statements set forth in this Certificate of Service are true and correct.

Joseph A. Longo