***Defendant's burden is "heavy" because the law prohibits employers from benefiting when they break the law and to make victimized plaintiffs whole***

The defendant's burden to prove a failure to mitigate is "heavy". <u>Atlantic v. NLRB</u>, 243 F.3d 711,721 (3 rd Cir. 2001). Why? The defendant's burden is heavy because the law promotes an important public policy, that is, 1). Prohibiting employers from benefiting by breaking the law and 2). making victimized plaintiffs whole. <u>NLRB v. Westin</u>, 758 F. 2d 1126, 1130 (6th Cir. 1985) ("Westin seeks… to place the burden on the employee to prove a 'systematic method of searching for a job', and…to retain employment once secured regardless of the conditions. …To the contrary, basic principles of equity and fairness mandate that the burden of proof must remain on the employer because the employer's illegal discharge of the employee precipitated the search for another job.") "Once plaintiff has established that her employment was terminated as a result of unlawful discrimination on the part of the employer, a presumption in favor of full relief arises". <u>Gaddy v. Abex,</u> 884 F.2d 312, 318 (7th Cir. 1989).

***Defendant's burden on their affirmative defense of mitigation***

The law is well-established that the defendants had the burden to prove their affirmative defense at the phase II hearing, i.e., that the plaintiff 1) did not exercise reasonable diligence to seek employment <u>and</u> 2) a reasonable likelihood existed that he might have found comparable employment. <u>Coleman v. Lane</u>, 949 F. Supp. 604, 608, 611 (N.D. Ill. 1996); <u>Wheeler v. Snyder</u>., 794 F.2d 1228, 1234 (7th Cir.1986). Rosebud had to prove prong #2 <u>first</u>. <u>Woolridge v. Marlene</u>, 875 F.2d 540, 548 (6th Cir. 1989) (unnecessary for plaintiff to present evidence of diligence until defendant has proved prong #2). As will be demonstrated, the defendants failed to prove prong #2; thus, no need exists to proceed to prong #1. Alternatively, Rosebud failed to prove prong #1. Consequently, judgment can be entered against the defendants on their affirmative defense of mitigation. <u>Operating v. Clarks</u>, 688 F.Supp.2d 902, 913 (N.D.Calif. 2010) (granting summary

judgment for the plaintiff on defendant's affirmative defense of mitigation). Before reaching those 2 prongs, the plaintiff will address the defendant's economist, his report and the defendant's failure to produce to the plaintiff documents relating to the defendant's economist.

**Prior to the 4/5/16 hearing, Defendants never produced exhibits 28, 30, 32 and 33**

At the 4/5/16 phase II hearing, the defendants introduced their exh. 28, 30, 32 and 33. The plaintiff objected, arguing that the defendants never produced them to the plaintiff. The defendants represented to the Honorable Judge Dow and the plaintiff that the defendants had produced their exhibits to the plaintiff and that they had a copy of the related communications to the plaintiff. After the phase II hearing, the plaintiff reviewed the defendant's 3/16 correspondences relating to their exhibits. On 4/7/16, the plaintiff corresponded with the defendants stating, "regarding the defendant's exhibits, specifically, the exhibits relating to Mr. Cohen, you stated that you had sent those to me. You stated in court that you had the communications. Please send those to me." Exh. XI.

On 4/7/16, the defendants responded by referring the plaintiff to the defendant's correspondences of 3/10 and 3/23/16. Exh. XI. On 4/14/16, the plaintiff responded, stating, "kindly note that as of yet we have not received from you the communications to which you referred at the phase II hearing. Specifically, you stated that you had the communications that you had submitted to the plaintiff all of the exhibits used by the economist." Exh. XI. On 4/14/16, the defendants responded, "I gave you the dates of the emails in which they were sent to you. Can you really not find those in your files? I will send my earlier response to you again.". Exh. XI.

On 4/15/16, the defendants forwarded their 3/10 and 3/23/16 correspondences stating that such correspondences established that the defendants had produced their exhibits to the plaintiff. Exh. XI. On 4/23/16, the plaintiff corresponded with the defendants, stating that in 3/16 the

defendants stated that they would send the plaintiff the exhibits they used at the 4/4/and 4/5/16 hearing and that the plaintiff still has not received them. Exh. XI. On 4/23/16, the defendants responded that the plaintiff had the exhibits. Exh. XI.

On 4/25/16, the plaintiff corresponded, "for clarity, if you could, please forward your electronic correspondence to us containing the defendant's phase II exhibits 28, 30, 32 and 33." Exh. XI. On 4/25/16, the defendants continued to insist that they had served their exhibits:

> I am getting exhausted with your repeated requests….The judge said you can brief whatever your arguments are… post trial….Go to the originals emails I sent you and match everything up. Since you are going to object anyhow, I cannot understand why you are continuing to request the same things now.

Exh. XI. On 4/25/16, the plaintiff responded to the defendants:

> Kindly respond to the specific questions of my previous correspondence. Please do not keep sending me thousands of pages and expecting me to decipher where the specific exhibits are. If I had found them previously, I would not have corresponded again. Repeatedly, I have requested that you identify the exact documents to any previous electronic communication that you state that you had sent to me relating to the specific exhibits to which I referred, namely… exhibits 28, 30, 32 and 33. In this manner, we can all be on the same page.

Exh. XI. On 4/27/16, the defendants corresponded, essentially admitting that they had <u>not</u> served the plaintiff previously with their exhibits and that their exhibits were compilations of other material. Exh. XI. In short, repeatedly, the defendants represented that they had served their exhibits to the plaintiff, even stating on 4/25/16, " I am getting exhausted with your repeated requests for the same information over." Exh. XI. However, the defendants finally admitted on 4/27/16 that they had never produced their exhibits--despite their repeated representations to Judge Dow and/or the plaintiff. Therefore, the plaintiff requests that Judge Dow strike them.

**Defendants failed to produce exhibits referred to in economist's report**

On 3/23/16, the defendant sent an electronic correspondence to Ms. Carolyn Hoesly stating that the defendant had sent the documents of the defendant's expert to the plaintiff's attorney and that

such were "kicked back, perhaps the files ere(sic) too large." Exh. XII. According to the defendant's 3/23/16 electronic correspondence, appendices B and C total 9000 pages. Exh. XII. On 1/4/16, the plaintiff filed a motion to strike the report from the defendant's retained expert and to bar his testimony. In the plaintiff's motion to strike and bar, the plaintiff argued, amongst other arguments, that the defendant's retained economist refers to documents, but failed to attach such documents to his report. Despite the plaintiff's motion, the defendants still failed to produce such documents in 1/16, or even 2/16. Instead, the defendants attempted to email the economist's documents--9000 p.s--late in 3/16, shortly before the 4/4/16 hearing. The defendants essentially sandbagging the plaintiff with over 9000 pages a couple of weeks before the hearing was uncalled for by the defendants and unfair to the plaintiff.

Notably, the Court granted the defendant's motion in limine barring the plaintiff's witnesses whom Gary Holloway disclosed at his deposition. Holloway had been in prison during this litigation. The defendants took his deposition in 12/13, after the discovery cutoff, while he was still in prison. At his deposition, Holloway disclosed witnesses who knew about the defendants racially and sexually harassing the plaintiff. Though the defendants learned of these witnesses at Holloway's deposition in 12/13, nevertheless, shortly after Holloway's deposition, the plaintiff complied with the FRCP and seasonably amended his answers to the defendant's interrogatories to include the witnesses disclosed by Holloway.

The defendants chose not to take the depositions of these witnesses in 2013, 2014 or 2015. Indeed, the defendants never took their depositions. Instead, the defendants filed a motion to bar these witnesses as they were disclosed after the discovery cutoff, though Holloway disclosed these witnesses to the parties at his deposition. This Court granted the defendant's motion in limine as these witnesses were not disclosed prior to the discovery cutoff. The plaintiff respectfully request that this Court to do the same regarding the defendant's exhibits.

*Defendants produced exhibits three (3) years after discovery cutoff*

Aside from the plaintiff objecting to the defendant's exhibits as being unreliable and based upon inadmissible hearsay, the defendants never produced the economist's exhibits as part of their exhibits for the final pretrial order. This is true though the defendant's economist, Cohen, was on the defendant's witness list. Tab to be, doc 182-2. The defendants were required to produce a copy of all of their exhibits for the final pretrial order. As the defendants did not, this Court may decide to strike and bar them. Indeed, because the defendants failed to produce the 9000 pages referred to in appendix B and C of the economist's report, the economist's report fails to contain any exhibits to support the report as required by Rule 26(a)(2)(B)(iii). See, e.g., Gay v. Chandra, 2009 WL 2868398, at *2 (S.D. Ill. 9/4/09) (barring the defendant's expert from testifying because the exhibits used to support the expert's opinion had not been disclosed in violation of Rule 26(a)(2)(B)(iii)); U.S. v. City of NY, 2010 WL 2838386, *3 (E.D. NY, 7/19/10) (regarding demonstrative exhibits, "the City is correct that Plaintiffs were obligated to provide the challenged exhibits along with Dr. Jones's report." Id., quoting Salgado v. GM, 150 F.3d 735, 741 n. 6 (7th Cir.1988) (Rule 26(a) (2)(B)(iii) "encompasses demonstrative evidence which summarizes or supports the economist's opinion").

FRCP 26 places the affirmative duty on the defendant to produce the required information and to ensure that the economist's report fulfills all FRCP 26 requirements. FRCP 26 does not place the burden on the plaintiff to request it from the defendant. Gregory v. Oliver, 2002 WL 31972165 (ND Ill. 12/27/02) (striking expert's report and expert for violating FRCP 26). When assessing whether to bar the economist's exhibits and the economist's testimony, this Court may consider that the defendant failed to meet its burden to prove substantial justification for violating FRCP 26. Also, the defendant failed to meet its burden to prove substantial justification for waiting until 3/16 for submitting the economist's exhibits to the plaintiff before

the 4/4/16 hearing. As a side note, the economist's report refers to appendices B and C. As can be seen by the first p. of the two exhibits that the defendant produced to the plaintiff in March 2016, the front p. of each refers to appendix B. Exh. XIII. One does not refer to appendix C.

The plaintiff was prejudiced by the defendants producing over 9000 pages to the plaintiff in 3/16 shortly before the 4/4/16 Phase II hearing. The plaintiff should not have had to scramble with 9000 pages when the defendants were required to produce those 9000 pages three (3) years earlier to the plaintiff in 2013. Also, during the discovery cutoff, when deciding whether to depose the defendant's economist, the plaintiff made decisions based upon the deficiencies of the economist's report and the defendant's violations of FRCP 26. The defendants should not be rewarded for violating FRCP 26. Otherwise, the plaintiff would be prejudiced.

In Gregory, supra, additional reasons existed why and how the court struck the expert and his report. The court noted that the expert only reviewed the particular information that the defendant gave to the expert and did not review other information about the case. Also, the expert only considered the case from the defendant's perspective and not the plaintiff's perspective. Like Gregory, in Smith, the defendant's economist only reviewed the particular information that the defendant gave to him. The defendants provided restricted information to their economist about the plaintiff's background, specifically, three sentences. Economist's report without the curriculum vitae etc., p. 2. Exh. XIV.

The defendant's economist did not independently review the plaintiff's 1) transcript, 2) answers to the defendant's interrogatories, 3) documents produced pursuant to the defendant's request to produce, 4) job applications, 5) resume or 6) transcripts of others in this case, the testimony of Corey Barr and Gary Holloway. This Court may recall that Barr and Holloway (Holloway tr. 1, 73:5-10, Exh. II), African-Americans, who were Rosebud meat butchers like the plaintiff, also have had difficulties finding jobs.

This Court may recall that at the 4/5/16 hearing, the plaintiff cross-examined the defendant's economist who admitted that he received his entire background of the plaintiff of three sentences and this case in general from the defendant's attorney. Yet, the report failed to disclose the defendant's attorney as a basis for the report. FRCP 26 required the economist to disclose all bases of his report. As the report failed, the defendant's failure is an additional reason to strike and bar the report and the economist.

### *In response to the plaintiff's discovery, defendants failed to disclose the economist's exhibits or the facts for their bare-bones affirmative defense*

Failing to produce the economist's exhibits in 2013 aside, the defendants failed to disclose in discovery the factual basis of their affirmative defense. The defendant's affirmative defense #2 is bare-bones stating "plaintiff has failed to mitigate his damages." Exh. XV. The defendant's affirmative defense has <u>no facts</u> demonstrating the basis of the affirmative defense. The plaintiff objected to the defendant's motion to amend their answer to include an affirmative defense. Doc 106. Also, the plaintiff filed motions to strike such affirmative defense. Doc 32, 46. The plaintiff's motions were denied. Doc 48. Subsequently, the plaintiff propounded discovery seeking to learn the basis of the defendant's bare-bones affirmative defense. For example, interrogatory #15 requested, "regarding each and every affirmative defense, I) <u>detail all facts</u>, II) identify all persons having information or knowledge…and III) please <u>produce all documents</u>." Emph. Add.. The defendants never answered #15.

Therefore, the plaintiff filed a motion to compel. The defendants responded that their answer to #14 and 16 essentially responded to #15. However, neither the defendant's answer to #14 (Exh. XVI), nor #16 (Exh. XVII) detailed all of the facts for the defendant's affirmative defense, nor did the defendants produce the economist's documents. Similarly, the plaintiff's #16, requested "any factual information…relating to the…the defendant's answer to the complaint

or…<u>affirmative defenses</u>…the <u>substance of all factual information</u>." Emph. Add. In their answers to #16 and #14 (as 16 refers to 14), the defendants mention nothing about 9000 documents to which their economist refers. Exh. XVII. Also, plaintiff's request to produce #11 requested "all documents… referring or relating to your defense." The defendants failed to produce the economist's exhibits. In short, as the defendants failed to produce the exhibits upon which their expert relied, this Court might find additional reasons exist to strike them, the economist's report and economist's testimony.

**Defendants' Expert Should Be Barred for Incompleteness of the Report**

As the defendants failed to produce the economist's exhibits to the plaintiff, the economist report was incomplete, violating FRCP 26. Expert reports are required to be "detailed and complete," "such that opposing counsel is not forced to depose an expert," and must not be "sketchy, vague or preliminary in nature"….A "report must ...include 'how' and 'why' the expert reached a particular result, and not merely the expert's conclusory opinions." <u>Salgado v. GM</u>, 150 F.3d 735, 741, 742, n. 6 (7th Cir. 1998); <u>Jenkins v. Bartlett</u>, 487 F.3d 482, 487 (7th Cir. 2007) ("The purpose of the report is to set forth the substance of the direct examination"; Otherwise, the report will be barred.) Rule 26 (a)(2) Advisory Committee's Note states that reports must detail all opinions and the basis for such opinions.

The Advisory Committee Notes state that the expert's report must be detailed and complete. In this manner, a deposition of the defendant's economist can be streamlined or in many cases avoided. Also, FRCP 26 (a) requires complete and detailed reports to avoid trial by ambush. FRCP 26 (a) required that the expert's report detail six categories: 1) <u>all</u> opinions and the reasons and basis for such opinions, 2) the underlying data or information which the expert considered to formulate his opinions, 3) the exhibits to be used as a summary or to support the opinions, 4) the expert's qualifications and a list of publications, 5) the amount the defendants paid

the expert to study, prepare and for his testimony, 6) the prior cases in which the expert testified by deposition or trial within the past four years. The defendant's economist violates FRCP 26 (a), e.g., failing to attach the underlying data or information which the economist considered to formulate his opinions, presumably 9000 documents. Experts are "... the mere paid advocates or partisans of those who employ and pay them." <u>Olympia vs. Western</u>, 797 F 2d 370, 382 (7th Cir. 1986).

**The defendant's retained expert does not meet the <u>Daubert</u> Standard**

The defendant's retained expert must meet the standards in <u>Daubert v. Merrill</u>, 509 U.S. 579, 113 S.Ct. 2786 (1993); <u>Naeem v. McKesson</u>, 444 F.3d 593, 607 (7th Cir. 2006). The defendants, not the plaintiff, bear the burden of proving admissibility. <u>Daubert</u>, 509 U.S. at 592, fn. 10. In <u>Naeem</u>, the Seventh Circuit barred a human resources expert as the opinions were general observations on what constitutes normal business practices. The Seventh Circuit rejected off-the-cuff statements void of analysis, citing <u>Lang v. Kohl's</u>, 217 F.3d 919, 924 (7th Cir. 2000).

In <u>Smith</u>, the defendant's retained economist provides little to no opinions, but merely states what seem to be statistics, without explaining why such statistics were selected and their relevance to the plaintiff, if any. Supra. Indeed, Cohen does not even state that the plaintiff could have found a job and how much he would have earned in such alleged, fictitious job, much less state what the plaintiff's lost wages would have been. Even when retained experts have included calculations of what would have been lost wages, courts have struck them because they were based upon faulty premises. <u>McMillan v. Weeks</u>, 478 F.Supp. 2d 651 (D. Del. 2007). As the defendant's retained expert does not give opinions, the defendant's report can be stricken.

**Overview of Cohen's report**

Notably, pursuant to the plaintiff's motion to strike, on 4/5/16, Judge Dow granted the plaintiff's motion to bar the defendant's economist from testifying to anything that was not in his report at the hearing. Therefore, whatever opinions the defendant's economist rendered, if any,

are restricted to his report. In his five-p. report, excluding his resume and so forth, Cohen begins by stating that the defendants retained him to review the job opportunities relating to the plaintiff's occupation and labor markets, but he mentions nothing about the plaintiff's qualifications, education, abilities and so forth. Cohen's report, Exh. XIV. Indeed, on p. 1, under "information reviewed", Cohen admits that he reviewed nothing relating to the plaintiff, for example, the plaintiff's deposition, the plaintiff's resume, the plaintiff's limited educational background, plaintiff's limited qualifications and so forth. The only thing that the expert reviewed were statistics from the Census Bureau and help wanted ads.

On p. 2, §3, Cohen states that the plaintiff worked behind the meat counter, that the plaintiff spent some time in Maricopa County, Arizona and that the plaintiff earned minimum wage. However, Cohen fails to specify where he received this information. Effectively, the defendants violated FRCP 26 which required them to disclose the basis for all opinions. Presumably, the defendant's economist received this information from the defendant's attorney, but, the defendant's economist was required to disclose the underlying information for his report. As he did not, he violated FRCP 26. Also, the defendants violated the hearsay rules as the information from the defendants attorney is inadmissible hearsay. FRE 702 does not provide exceptions for the hearsay rule. As the defendants chose to restrict Cohen's access to information relating to this case to the hearsay information from the defendant's attorney, this Court may find that this is an additional reason to lean towards barring Cohen and striking his report.

Next, on p. 2, §IV, Cohen states that he obtained a list of advertisements in various occupations, but fails to specify how he obtained the list, again violating FRCP 26. Cohen states that he reviewed advertisements for jobs "relevant" to the plaintiff, but Cohen fails to provide any facts how he determined what was "relevant". Infra. Then, Cohen on p. 2, lists various categories, e.g., service occupations, sales, production and so forth, but he fails to specify with

facts how and why he chose those categories as opposed to some other categories. Perhaps one could guess, but one should not have to guess because the law requires that an economist's report be complete, so that guessing and a deposition would be unnecessary.

On p. 3, the defendant's retained economist states that "Mr. Smith would have access to the various databases from which the ads originated," but Cohen fails to provide any facts for this conclusory statement, again violating FRCP 26. Cohen fails to specify how and whether the plaintiff would have access to databases, or even if the plaintiff would know how to search for these on the Internet, again violating FRCP 26. Indeed, Cohen never reviewed the plaintiff's deposition, knows nothing about the plaintiff's qualifications, abilities, etc. Therefore, Cohen was unqualified in this case.

On p. 3, Cohen states that "Wanted Technologies de-duplicates identical ads", but Cohen fails to provide any facts or the underlying basis for this. On p. 3, Cohen admits that the plaintiff "would not be qualified for every position", but Cohen fails to specify what positions the plaintiff would be qualified for and how he arrived at such legal conclusion. Then, on p. 3, he states "the ads are an indicator of the labor market for Mr. Smith's field", but Cohen fails to specify the facts or the underlying basis supporting this legal conclusion. Nor does he specify what he means by "indicator", "labor market" and the plaintiff's "field."

On p. 3, Cohen discusses tables, but he fails to specify the origin of these tables, why he chose these tables and not some others, their alleged relevance and so forth, again violating FRCP 26. On p. 4, Cohen refers to "appendix B", referring to ads, but such is unattached. Similarly, Cohen refers to appendix C on p. 4, but appendix C is unattached. <u>Melendez v. Illinois Bell</u>, 79 F.3d 661 (7th Cir. 1996) (affirming district court's bar of the defendant's expert for failing to provide documents during discovery, whether unintentional or intentional.)

Nevertheless, on p. 4, Cohen states that appendix C lists ads, but he fails to identify why

he chose these particular ads, how he derived them, what they told him and so forth. He just states that the ads were coded in the Wanted Technologies database (inadmissible hearsay) without specifying how he would know this and its relevance, if any. On p. 4, Cohen states "these are examples of the types of opportunities which would have been available", but he fails to state how he obtained these examples, why he chose them and what relevance they have, if any, to this case. Also, he fails to specify how he came to the legal conclusion of what is "available" and to whom? Indeed, Cohen admits, p. 4, that many of the postings may be duplicate and may not "be an exact match for Mr. Smith."

Yet, Cohen included them anyway  though they have nothing to do with Mr. Smith. Cohen fails to specify which ads are not "an exact match for Mr. Smith." Finally, on p. 4, §III, Cohen states that "the ads are illustrative of the…opportunities… available", but he fails to describe  "opportunities", "available" and what, if anything, it has to do with the plaintiff. Also, in §V, p. 4, Cohen states that the unemployment rate "has been consistently higher in Chicago… than the US as a whole since 2008." He then states that the unemployment rate was not as high in Maricopa County since 2008, but he fails to specify the basis for his statement, why he mentions these years and what they have to do with the plaintiff. Also, he provides no opinion relating to this information. Indeed, he fails to provide any opinion relating to nearly all of the information he provides in his report.

On p. 4, §VI, Cohen refers to the plaintiff's constructive discharge from Rosebud in 2008, but he fails to state the basis for this information. One can only surmise that all of Cohen's information came from the defendant's attorney (inadmissible hearsay). Cohen then presents a table referring to service occupations, sales and related occupations, office and administrative occupations, production occupations and transportation and moving occupations. Cohen fails to specify what these occupations have to do with the plaintiff, for example, office and

administrative, etc. why he chose these categories and so forth. On p. 5, Cohen states "it is my understanding that as of the time of this report, Mr. Smith has been unemployed", but Cohen fails to state the basis of his "understanding," , again violating FRCP 26. Then, in his conclusion on p. 5, Cohen states that 56,000 ads existed "for occupations in categories that would typically be relevant for someone with his qualifications", but Cohen fails to identify to whom he is referring when he says "his qualifications." One can surmise that he refers to the plaintiff, but Cohen doesn't state this, particularly when he admitted that many of the ads had nothing to do with the plaintiff.

Also, Cohen fails to state whether he has any knowledge whatsoever of the plaintiff or the plaintiff's qualifications. Moreover, Cohen fails to specify the relevance, if any, of the ads and what they have to do with the plaintiff. Notably, nowhere does Cohen state any opinion of whether the plaintiff could have acquired any job in the unspecified "ads." Also, nowhere does Cohen identify any particular employer that would have hired the plaintiff. In the last paragraph of his report, Cohen states that the report "represents my opinion", but this report fails to specify his opinions. Therefore, the plaintiff respectfully request that the report be stricken and barred.

**Defendant's report should be barred because it fails the FRE 702 requirements**

To be admissible under FRE 702, expert testimony must be both relevant and reliable. Daubert, supra; Kumho v. Carmichael, 526 U.S. 137, 152 (1999) ( court''s gate keeping requirement ensures the reliability and relevancy of expert); Smith v. Ford, 215 F.3d 713, 718 (7th Cir. 2000) (court ensures expert testimony is both reliable and relevant). Experts ordinarily render opinions. However, as stated, the defendant's economist did not render opinions. FRE 702 states that testimony is reliable only if offered by a qualified witness and (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the

case. Cohen refers to the Census Bureau and so forth, but he fails to establish that relying on such is the acceptable principle and method used within the profession.

Also, he fails to establish that he applied principles and methods to the facts of the case. Indeed, he only presents, bare-bones facts to this case, e.g., the plaintiff's name, Mr. Smith, he worked at a supermarket etc. As stated, it appears that the defendant's attorney provided its retained economist with this bare-bones inadmissible hearsay information. The retained economist did not review any documents or any information whatsoever relating to the facts concerning to the plaintiff independently As Cohen does not refer to it, it appears that he does not know the plaintiff's age, race, the plaintiff's numerous efforts to find a job and so forth.

Cohen does not state 1). that he read the plaintiff's deposition transcript, 2) that he reviewed the plaintiff's answers to the defendant's interrogatories, 3) that he reviewed the plaintiff's documents produced pursuant to the defendant's request to produce, 4) that he reviewed the plaintiff's applications for employment at various places, 5) that he reviewed the plaintiff's educational background 6) that he reviewed the plaintiff's qualifications, 7) that he reviewed the plaintiff's work history and so forth. Richmond vs. Sheehan, #98-7350 (ND IL 10/11/05) (barring defendant's expert as he focused only on defendant's version of the "facts", failing to consider the plaintiff's version of the facts).

Therefore as Cohen failed to utilize sufficient facts or data relating to Mr. Smith, he could not have applied reliable principles and methods to nonexistent facts relating to Mr. Smith. Consequently, his testimony is irrelevant under FRE 702. The Seventh Circuit mandates that district courts analyze the factual bases of an expert's opinion to determine whether to bar it. U.S. v. Moore, 521 F.3d 681, 682 (7th Cir. 2008). In Smoot v. Mazda, 469 F.3d 675 (7th Cir. 2006), the expert opined that the airbags deployed improperly. Upholding the District Court's bar of the expert, the Seventh Circuit noted that the expert did not 1). inspect the airbag control, 2).

ask about recalls, 3). inspect another car of the same model, 4). review crash data and 5). interview the plaintiff or any mechanic repairing the car. See, <u>Naeem v. McKesson</u> 444 F.3d 593, (7th Cir. 2006)(expert examined depositions of employees and the defendant's personnel policy manual, but opinions "were not tied to specific portions of the policy manual, and appeared to be general observations regarding what is normal or usual business practice.")

### *Economist's statement of what is "relevant" and the report are unreliable*

The party offering the economist's testimony has the burden of establishing its admissibility. <u>Bradley v. Brown</u>, 852 F.Supp. 690, 697 (N.D.Ind. 1994), aff'd, 42 F.3d 434 (7th Cir.1994). Establishing their burden, the defendants must prove that the economist's report and testimony are reliable and would assist the trier of fact to understand the evidence or determine a fact in issue. <u>Cummins v. Lyle</u>, 93 F.3d 362, 367 (7th Cir.1996) (Court of Appeals affirming District Court for barring expert; amongst other reasons, expert failed to disclose fully all of his opinions in discovery; also, expert relied on hearsay information from representatives of Allen Bradley, the manufacturer.) The defendants failed to meet their burden.

### *Defendant's economist only obtained information from defendant's attorney*

The report of the defendant's economist is unreliable. First, to prepare his report, the economist admitted at the 4/5/16 hearing that he relied on the information provided by the defendant's attorney without conducting any independent evaluation. Therefore, the defendants failed the reliability requirement. <u>In re TIM</u>, 193 F. 3d 613, 683 (3rd Cir. 1999) (court prohibited physician to testify based upon summaries of histories prepared by the employees of counsel); <u>Crawley v. Chait</u>, 322 F. Supp. 2d 530 (D.N.J. 2004) (court prohibited accountant's opinion based upon deposition summaries prepared by counsel); <u>Lindeman v. St. Jude</u>, 2008 WL 2224352 (ED Wi. 2008) (expert did not independently verify the source and accuracy of the sales data, but accepted the summary of the data prepared by the defendant's attorney).

Though FRE 704 liberalizes what experts can rely upon, the hearsay rule still applies to bar evidence, particularly if the evidence 1). is not reasonably relied upon by other experts in the field and 2). was presented for the truth of the matter asserted. <u>Dura v. CTS</u>, 285 F. 3d 609, 613 (7th Cir. 2002) (barring theoretical economist who relied on an econometric study by another economist as the party offering the economist failed to meet its burden to prove that the economist was qualified in econometrics); <u>In re James Wilson</u>, 965 F. 2d 160, 173 (7th Cir. 1992) (barring architect whose opinion was based on consulting engineer who had inspected the building as hearsay; "if…the expert witness…bases his opinion in part on a fact…that the parties (sic) lawyer told him, the lawyer cannot…tell the jury we proved X through our expert witness'"); <u>SEC v. Lipson</u>, 46 F. Supp. 2d 758, 762 (ND Ill. 1998) (prohibiting accountant's unreliable opinion as it was influenced by objective statements of an interested party).

FRE 703 does not condone an expert to rely on the defendant's attorney. Indeed, the information from the defendant's attorney is hearsay, and thus, inadmissible. In fact, the information from the defendant's attorney was presented for the truth of the matter asserted. Effectively, regarding the facts of the case, the report of the defendant's economist relies solely on information from the defendant's attorney, without any independent evaluation, for example, the plaintiff's "background". Therefore, this Court might decide to strike the report of the defendant's economist, the defendant's economist himself and his testimony. Indeed, without the information from the defendant's attorney, the defendant's economist would not have known what path to take as far as "available" jobs on certain websites and through the Census Bureau. For example, he would not have known if he were looking for jobs for architects, cashiers, janitors, store managers and so forth. Therefore, the whole basis of his report falls.

Pursuant to the FRE 701, 702, the defendants were obligated to provide an expert with technical or other specialized knowledge to prove that substantially equivalent jobs existed. An

economist may be unqualified to render such an opinion. A vocational expert might be more qualified. Even the most "supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in Daubert." Clark at 759 n. 5.

Nevertheless, whether an economist is unqualified to render an opinion about substantially equivalent jobs is irrelevant because the defendant's economist never gave an opinion that substantially equivalent jobs existed. Sparks v. Griffin, 460 F.2d 433, 443 (5th Cir. 1972) ("[T]he [defendants] do not claim that… it was proved that there were…jobs…for which [plaintiff] would have qualified had he applied. It merely asserts that [plaintiff] did not expend sufficient effort to find other…employment. [This] position is without legal justification.")

At the Phase II hearing, Judge Dow may recall that the plaintiff repeatedly objected based upon relevance regarding the defendant's cross examination of the plaintiff and/or the defendant's examination of their economist. The reason why the plaintiff objected based upon relevance is because the defendant's questions had little to no bearing on what the defendants had to prove on their affirmative defense. "[E]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful" it should be excluded. Daubert, at 591. In NLRB v. Midwestern, 508 F. 3d 418, 427 (7th Cir. 2007), the defendants presented Cohen's report, the same economist used by Rosebud. The court restricted Cohen to what was his report. (Indeed, Judge Dow also restricted Cohen at the Phase II hearing to what was in his report.) Allegedly, the report stated that numerous jobs existed. The Court of Appeals affirmed the restriction:

> The data…was Statewide…did not provide specific data for the relevant… areas….Cohen…did not include any data regarding the…applicants, any insight into whether the discriminatees would have been able to secure positions had they applied, or any information regarding the hours, wages, and locations of the supposedly available positions…it is reasonable…to reject expert testimony regarding generalized labor market.

id. As in <u>Midwestern</u>, in <u>Smith</u>, the defendants through Cohen failed to provide any evidence regarding the pool of applicants, whether the plaintiff would have been able to secure a job, any information regarding the hours, wages and locations of the supposedly available positions. Also, regarding Arizona, the defendants through Cohen provided general information of Maricopa County instead of specific data of Mesa, Az. where the plaintiff lived. This is particularly important as the plaintiff had restricted access to means of transportation. Finally, as in <u>Midwestern</u>, in <u>Rosebud</u>, the defendants through Cohen provided only "generalized labor market analysis". See also, <u>Kuper v. Empire</u>, 2003 LEXIS 2362, 20 (S.D.N.Y. 2003) ("Generalized evidence that the industry is doing well is insufficient to meet the burden to show comparable work existed"); <u>Prine v. Sioux</u>, 95 F.Supp.2d 1005, 1012 (N.D. Iowa 2000) ("District's assertion that the economy is good, and that jobs are available…does not satisfy its burden.") Notably, in <u>Midwestern</u>, Cohen went a step further than he did in <u>Smith</u>, i.e., opining that the plaintiff did not perform a reasonably diligent search. Even with this additional step, the Court of Appeals rejected Cohen's opinion. In <u>Smith</u>, Cohen does not even render an opinion that the plaintiff with reasonable diligence could have found a substantially equivalent job. Therefore, as in <u>Midwestern</u>, Judge Dow may decide to find that the defendants failed to meet their burden.

**Cohen's report is based upon deficient facts and data**

As stated, FRCP 26(2) (B) required that the economist's report contain a complete statement of the basis for the opinion and so forth.  As stated, Cohen's report is nearly void of opinions. His report does include statements without the basis for such statements or specifying why such statements were included. On p. 3 of 20, Cohen admits that the plaintiff would be unqualified for every position in the databases. Yet, Cohen included them in his report without specifying the basis for including such. On p. 3 of 20 of his report, Cohen states that the plaintiff would have access to various databases, but Cohen fails to define the factual basis for this bald

legal conclusion. On p. 4 of 20 Cohen admits that every ad in the database would not be a match for the plaintiff. Yet, Cohen included them in his report.

On p. 5 of 20, Cohen states that 56,000 Chicagoan ads existed "for occupations…that would typically be relevant for someone with his qualifications." Cohen fails to provide the basis for this broad, bald conclusion. He fails to define "typically", "relevant" and "his qualifications." He fails to specify which "occupations" would be "relevant." He uses the broad term "occupations" instead of referring to any particular job. Then, on p. 5 of 20, Cohen states "there were 55,000 ads in Maricopa County during the approximate time he was there." Cohen fails to explain the relevance of these ads. Also, he fails to identify the "approximate time that he was there", presumably referring to the plaintiff. Furthermore, Cohen fails to identify how many unemployed job applicants existed for each of the 55,000 ads. Also, Cohen fails to compare the qualifications of these unemployed job applicants with the plaintiff's qualifications.

During the many years after 2008 of the economic slump and high unemployment, the plaintiff's attorney is aware of unemployed professional people, e.g., engineers, accountants earning minimum wage at big-box stores though, based upon their high level of education, some may find them to be exceedingly qualified for such positions. Seemingly, if a potential employer had two applicants for a clerk position, one of whom was Caucasian, articulate with a Masters Degree or PhD, and the other applicant was African-American, inarticulate with substandard education (like the plaintiff), the probability is higher that the potential employer might be inclined to hire the Caucasian, articulate applicant with a Masters or PhD.

Regarding the general material he reviewed from the Census Bureau, Cohen did not determine whether the plaintiff was qualified for each of the 56,000 jobs, what qualifications each of employers required, whether the plaintiff would have met the qualifications of each alleged employer and so forth. Moreover, Cohen includes many classes of jobs that are unrelated

to the plaintiff. The plaintiff worked behind the meat counter. Cohen included jobs relating to janitors, dishwashing, landscaping and so forth without any explanation why or how these jobs related to the plaintiff. Cohen provides no opinion that these alleged jobs were "substantially equivalent" to the plaintiff's job with the defendant, that is, working behind the meat counter. Effectively, Cohen's report is perfunctory and should be barred. Smoot v. Mazda, 469 F.3d 675 (7th Cir. 2006) ( automobile expert excluded because he failed to analyze adequately the particulars of the accident, violating FRCP 702.)

> ### The defendants failed to meet their burden that other experts in the profession would rely on Websites posting jobs etc.

The defendant's economist and the defendants did not demonstrate that experts in the profession (i.e., vocational experts) would rely on hearsay information from websites posting job openings or even the Census Bureau without checking, even randomly, 1) whether such job postings relate to real, actual jobs 2) whether such job postings were ever filled by an applicant and 3) whether the applicant filling such job, if any, had better qualifications than the plaintiff. Gong v. Hirsch, 913 F. 2d 1269, 1271 (7th Cir. 1990) (experts in the field did not reasonably rely on letter from family physician). Indeed, the defendant's economist seeks to present such hearsay information for the truth of the matter asserted. Such is impermissible hearsay. Consequently, the report of the defendant's economist and his report and testimony can be stricken and barred.

> ### The defendant's economist, a non-vocational expert, has little or no opinion about substantially equivalent jobs

Notably, the report of the defendant's economist hardly has any opinion of the economist. The economist does not state that any job opening in the hearsay website (Wanted Technologies) referred to in his report or through the Census Bureau was an actual, real job opening. Also, the defendant's economist hardly has any opinion, if any, that if an actual, real job opening existed, such job opening was substantially equivalent to what the plaintiff had as a meat butcher at

Rosebud. Moreover, the defendant's economist hardly has any opinion, if any, that the plaintiff could have acquired such job if he had applied. Furthermore, the defendant's economist has hardly any opinion, if any, that if any job opening were an actual job, it was filled by a person. If it were filled, the report does not mention the qualifications of such person, including, his race, ability, background, whether such person was articulate (remembering that the plaintiff may be viewed as inarticulate) and so forth.

Even if the economist had rendered such opinions, arguendo, despite adequate qualifications for economics, he may be unqualified to render opinions whether substantially equivalent jobs were available and whether the plaintiff could have acquired such jobs if he had applied. Instead, a vocational expert would have been qualified to render such opinions. As the defendant presented an economist instead of a vocational expert, the defendant fails to meet Daubert as far as presenting a qualified expert. Daubert, 509 US at 593, infra.

### The report of the defendant's economist provides little to no foundation for what is "relevant" to the plaintiff

Judge Dow is the "gatekeeper" regarding the defendant's economist to ensure that the testimony is both relevant and reliable. Daubert, supra. Under FRE 702, the court scrutinizes the facts or data of the report for reliability for any opinion. As stated, little to no expressed opinions exist in his report. Thus, one must create implied opinions from the report. The defendants failed to meet their burden that the plaintiff must search for implied opinions, extrapolate implications and create opinions. Nevertheless, assuming that the plaintiff must search for a speck of a diamond in the pile of rocks, arguendo, p. 2 of the report states "I obtained lists of ads in the following occupations, which I selected because they were most likely to contain advertisements for jobs relevant to Mr. Smith." Exh. XIV. Similarly, p. 5 of the economist's report states, "there were more than 56,000 ads in Chicago, Illinois for occupations in categories that would typically

be relevant for someone with his qualifications." Exh. XIV. The defendant's economist explicitly uses "relevant" (report, p. 2) but, the defendants failed to provide sufficient facts or data how their economist determined what was "relevant".

Similarly, the defendants failed to provide sufficient facts or data how their economist determined what were the plaintiff's "qualifications." Effectively, the economist's report fails to disclose the basis of his implications. Also, the defendant's economist failed to discuss the methodology he used to determine what was "relevant" or what were the plaintiff's "qualifications." Elliott v. CFTC, 202 F.3d 926, 934 (7th Cir. 1998) ("Nothing in either Daubert or the…(FRE) requires a…court to admit opinion evidence which is connected to the existing data only by the ipse dixit of the expert." ).

The report of the defendant's economist has little to nothing about the plaintiff, including, his race, background, restricted access to a car, education and so forth. Indeed, at the hearing, the economist could not respond to the plaintiff's questions about how he determined what was relevant to the plaintiff. In other words, he had no basis for his legal conclusion that thousands of jobs were "relevant" to the plaintiff. DePaepe v. GM, 141 F.3d 715, 720 (7th Cir. 1998) (whole point of Daubert is that experts cannot speculate; they need analytically sound bases for their opinions; trial courts must carefully keep experts within their scope; expert's opinion within their proper scope.) An expert, e.g., an economist, that is "carefully tailored to support [a] position" is not reliable. Minasian v. Standard, 109 F.3d 1212, 1216 (7th Cir.1997). Even "[a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some scientific method." Clark v. Takata, 192 F.3d 750, 759 n.5 (7th Cir.1999).

The economist's report and his testimony fail in other ways. Deficient facts or data exist in the economist's report about these alleged jobs for which the plaintiff was allegedly qualified. For example, no mention of these alleged jobs is made of the 1) duties and work conditions, 2)

the pay, benefits, 3) whether they require indoor or outdoor work and so forth. <u>Mid v. Exchange</u>,
877 F.2d 1333 (7th Cir. 1989) (expert's affidavit was deficient because it presented conclusions
without facts). The report fails to identify how far away the alleged jobs were from where the
plaintiff lived. Though the economist's report limits itself to the city of Chicago, when discussing
Arizona, it expands the geographical area of "available" jobs to the entire Maricopa County. Yet,
the report fails to provide any basis for how the plaintiff could travel throughout the Maricopa
County, i.e., whether he had the means to travel, particularly given his restricted access to a car
and so forth. The burden rested with the defendants to provide the basis for their report.

Much information is excluded from his report. Judge Dow may recall that at the 4/5/16
hearing, this Court stated that the plaintiff did not have to ask the defendant's economist
information that was excluded from his report and that the plaintiff would not be prejudiced by
not asking those questions, so that the hearing could be completed by 4/5/16. The defendant's
economist did not check the Chicago Tribune, Sun-Times, Arizona Republic and the free
supermarket newspapers of job openings to which the plaintiff testified that he reviewed daily.
For Rosebud, the plaintiff was a meat butcher. Therefore, the only "relevant" jobs would be meat
butcher jobs.

Nevertheless, the report discusses "relevant" jobs based upon the plaintiff's alleged
"qualifications", but fails to meet its burden to establish why or how the various categories
discussed in the report relate to the plaintiff. For example, p. 2 discusses janitors, cleaners,
maids, housekeeping cleaners, landscapers, grounds-keeping workers, hosts, hostesses, coffee
shops, shipping, receiving, stock clerks, laundry, dry cleaning, production workers, cleaners of
vehicles, laborers, freight, machine feeders, packers, order fillers and so forth.

On p. 2, the defendant's economist states that the plaintiff earned minimum wage.
Presuming, that a plaintiff's pay is the only factor that is considered and no other (e.g., duties,

work conditions and so forth), arguendo, the report stating that the plaintiff earned minimum wage is irrelevant. Why? The relevant information is what the plaintiff would have continued to earn after he was constructively discharged in 2008. He would have earned more than minimum wage. In the defendant's second amended response to the plaintiff's interrogatories, interrogatory #6, the defendants state "if plaintiff was (sic) still employed, his pay would be present minimum wage <u>plus</u> potentially an additional $.25-$.50 per hour." Emph. Add. Regarding the statement in the report that the plaintiff earned minimum wage, the report violates FRCP 26, e.g., failing to identify the basis for such information and failing to identify the data and methodology used when assessing the plaintiff earning minimum wage and how it affects the analysis.

In short, the report failed to identify the facts and circumstances for the alleged, implied opinion that thousands of jobs were "relevant." "[I]t is critical under Rule 702 that there be a link between the facts or data the economist has worked with and the conclusion the expert's testimony is intended to support." <u>US v. Mamah</u>, 332 F.3d 475, 478 (7th Cir. 2003). In <u>Smith</u>, a missing link exists because the defendant's economist did not present opinions, and even if he had, arguendo, such would have been based upon hearsay. Therefore, as the report violates Rule 26, this Court might decide to strike it and the economist's testimony.

Analogizing to a scientific case, the Seventh Circuit stated that the District Court "'must determine whether the evidence is genuinely scientific, as distinct from…unscientific speculation …by a genuine scientist.'" <u>Cummins</u>, 93 F.3d at 368. If the opinion is not squarely grounded in the principles and methodology of the relevant discipline, the opinion is 'inadmissible no matter how imposing [the] credentials of the proffered expert.'" <u>Rosen</u>, 78 F.3d at 318-19 (despite expert's stellar qualifications, the court struck his opinions of what caused the heart attack; also the expert had no reliable information to believe that wearing a nicotine patch for 3 days or removing it would precipitate a heart attack; no peer review.) In <u>Smith</u>, the defendant's

economist presented no peer review of his theory that an economist could present hearsay information from a job website or the Census Bureau of "available" jobs without determining whether such job opening were real, the work conditions of the job, duties, pay, whether the alleged job was part-time, full-time or seasonal, whether it was actually filled and so forth.

Expert evidence is when it is " incomplete as to be inadmissible as irrelevant," (Bazemore v. Friday, 478 U.S. 385, 400 n. 10 (1986), or when it fails "even to make the most elementary comparisons." People Who Care v. Rockford, 111 F.3d 528, 537 (7th Cir. 1997). Presuming that the defendant's economist had presented real jobs and proof that such jobs were filled, the "most elementary comparisons" would have been to present a meat butcher position and compare the person acquiring the job with the plaintiff based upon race, education, restricted access to a car, background, ability, whether such person was inarticulate, etc. Courts scrutinize whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting." Sheehan v. Daily, 104 F.3d 940, 942 (7th Cir. 1997). See Kumho at 1176 (court ensures that expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field".) Would the defendant's economist in his regular profession submit a report without any opinions relating to whether any alleged job opening was substantially equivalent to the plaintiff's former job?

Would the defendant's economist in his regular profession submit a report without checking, not even randomly, to ensure that alleged job openings involved real, actual jobs? Would the defendant's economist in his regular profession submit any report not discussing economics, but other issues, e.g., available jobs, whether they are substantially equivalent and so forth, as such report would be more appropriately submitted by a vocational expert? Would the defendant's economist in his regular profession submit a report and make a conclusory explicit or implicit statement of what is "relevant" without reading the plaintiff's transcript, reviewing the

plaintiff's answers to the defendant's interrogatories, reviewing the documents the plaintiff produced pursuant to the defendant's request to produce, reviewing the plaintiff's job applications, reviewing the plaintiff's resume, reviewing the fact that other African-American meat butchers at Rosebud, e.g., Corey Barr and Gary Holloway, have had difficulties finding jobs and so forth? The answer to these questions is most likely no.

**Cohen fails to provide any evidence of any available job which Plaintiff was qualified for and for which he did not apply**

As stated, the law is well-established that the defendant bears the burden on any affirmative defense. The defendant had to prove that the plaintiff could have obtained substantially equivalent employment if certain efforts were used. Of course, this proposition presupposes that the defendants met their burden to prove that particular jobs were available that the plaintiff could have obtained and were disregarded. Snow v. HealthSouth., 2001 Lexis 5534 (S.D. Ind. 2001) (even if plaintiff made no effort to find comparable employment, mitigation defense fails because employer failed to prove that substantially equivalent jobs were available and the plaintiff did not seek them).

Cohen 1) does not submit or refer to any specific want ads of any kind, 2) provides no examples of anyone hired., 3) provides no evidence that the positions in the ads involved employers who acutely hired employees for jobs for which the plaintiff was qualified and for which the plaintiff did not apply, 4) fails to refer to a single meat department job for which the plaintiff was qualified and in which the employer actually hired somebody with similar qualifications as the plaintiff. Notably, Cohen does not opine that the plaintiff was not diligent in his repeated efforts to acquire employment.

Cohen fails to state how any particular job had requirements that were not incompatible with the plaintiff's skill, education and experience. Therefore, Cohen's report is irrelevant.

Indeed, Cohen's general report, e.g., referring to 56,000 open positions without specifics, ignores that the Honorable Judge Dow, as the gatekeeper, will scrutinize Cohen's report. Advisory Committee Notes to 2000 Amendments to FRCP 702 (The trial court's gatekeeping function requires more than simply "taking the expert's word for it.")  "Generalized evidence that the industry is doing well is insufficient to meet the burden to show comparable work existed." Kuper v. Empire, supra; Midwestern, at 427. Cohen relies upon generalized evidence of the general labor market which is poor methodology because Cohen fails to apply the generalized labor market to the specific facts and particulars relating to Mr. Smith. Cohen refers to Wanted Technologies (inadmissible hearsay), but provides no evidence that Wanted Technologies is not unreliable, is customarily used by those in the industry and so forth. Cohen states that Wanted Technologies is used by State governments, but Cohen provides no evidence of this.

Notably, Cohen does not even opine when the plaintiff could  or should have found a job. Also, in p. 4, 5, Cohen provides figures for the number of advertisements, unemployment rate and duration of unemployment, but he attaches no supporting documents. Instead, he expects Judge Dow and the plaintiff  to take "the expert's word for it." Advis. Comm. Notes to 2000 Amend. to FRCP 702 (gatekeeping function requires more than simply "taking the expert's word for it.")

**Cohen Fails to identify any "substantially equivalent" jobs for the black plaintiff**

Though plaintiffs must use reasonable diligence to find "substantially equivalent" employment to his job with the defendant, plaintiffs have no obligation to "go into another line of work." Ford  v. EEOC, 458 U.S. 219, 231 (1982) Yet, Cohen's report refers to landscaping, food preparation, janitorial and so forth--all different lines of work. A plaintiff "need not seek employment which is not consonant with his particular skills, background, and experience or which involves conditions that are substantially more onerous than his previous position.'" *Id*. at

231 n.16, <u>Graefenhain v. Pabst</u>, 870 F.2d 1198, 1202 (7th Cir. 1989); <u>Wheeler</u>, supra.

Though the plaintiff's nearly 5 year job with the defendant's meat department was indoors, Cohen refers to jobs outdoors, e.g., landscaping which is not "substantially equivalent" to working indoors behind the meat counter. Notably, Cohen does not even attempt to compare the plaintiff's Rosebud with any particular, allegedly "available" job. As Cohen's report generally discusses advertisements, without demonstrating that any particular employer could have or would have hired the plaintiff, Cohen's report is irrelevant <u>Kuper</u> at 20 (plaintiff had a managerial job in investigatory based sector of insurance industry, expert's testimony that he could have obtained job as a claims adjustor was deficient). Substantially equivalent jobs require more than the same wages, i.e, "'compensation, job responsibilities, working conditions and status' as the previous position." <u>Hutchison v. Amateur</u>, 42 F.3d 1037, 1044 (7th Cir. 1994). Nevertheless, the defendant's economist fails to identify any particular job with a particular employer which could then be contrasted with the plaintiff's Rosebud job. Though Cohen's report mentions nothing about any particular job that the plaintiff could have acquired and did not, if he had, arguendo, it would have had to been a "substantially equivalent" job.

In <u>US v. City of NY.</u>, 2012 WL 3637410, *1-3 (E.D.N.Y. 8/22/12), the court held that that the plaintiff, a former firefighter with the defendant, did not have to seek entry-level firefighting positions in NY State, outside of NY city, or in New Jersey. Nor did the plaintiff have to accept an entry-level NY Police position. Citing <u>Ford v. EEOC</u>, supra, the court noted that the plaintiff's duty to seek employment is not onerous and does not require the victim of discrimination to be successful in the attempt to mitigate. The court noted that defendants had an obligation to prove that "substantially equivalent" positions were available similar to the lost position in "promotional opportunities, compensation, job responsibilities, working conditions, and status. See also, <u>Rasimas v. Michigan Dep't,</u> 714 F.2d 614, 624 (6th Cir.1983); <u>Parrish v. Immanuel,</u> 92

F.3d 727, 735-36 (8th Cir.1996) (ER admissions clerk different from general hospital admissions clerk); Hemphill v. City of Wilmington, 813 F.Supp.2d 592, 599 (D.Del.2011) (available positions at defendant were not substantially equivalentvictim's lost position); NLRB v. Thalbo, 171 F.3d 102, 114-15 (2d Cir.1999) (working nights, weekends different from working weekdays). In short, Cohen fails to identify any "substantially equivalent" job.

Similarly, Cohen failed to consider that the plaintiff is an African-American. Cohen fails to discuss how the African-American plaintiff compared to Caucasian applicants for the same job, in a very tight job market, though, as stated, Cohen does not even identify any particular job. All of Cohen's omissions demonstrate that Cohen's report is deficient. This deficiency triggers this Court's gatekeeping responsibilities to strike Cohen and his report.

**Defendants failed to meet their burden to prove both prongs**

As stated, the plaintiff would discuss Cohen's report and how it should be stricken. Then, the plaintiff would discuss how the defendants failed to prove both prongs of their burden. Even if the Court does not strike Cohen's report, arguendo, the defendants still failed to prove both prongs. However, the burden does not rest with the plaintiff to demonstrate anything relating to the defendant's affirmative defense . Rather, the burden rests with the defendants to demonstrate that they proved not one, but both prongs.

*Prong #1: The defendants failed to meet their burden to prove that the plaintiff did not exercise reasonable diligence to seek employment*

The Seventh Circuit's standard for victimized plaintiffs seeking a substantially equivalent job includes "'check[ing] want ads, register[ing] with employment agencies, and discuss[ing] employment opportunities with friends and acquaintances.'" Hanna v. American, 724 F. 2d 1300, 1307 (7th Cir.1984). The victimized plaintiff is "only required to make a reasonable effort to mitigate damages and is not held to the highest standard of diligence. This burden is not onerous,

and does not mandate that the plaintiff be successful in mitigating." NLRB v. Ryder, 983 F.2d 705, 715 (6th Cir. 1993); Iron v. NLRB, 804 F.2d 1100, 1102 (9th Cir.1986); The law requires only an "honest good faith effort." Canova v. NLRB, 708 F.2d 1498, 1506 (9th Cir.1983).

The defendants attempting to attack the credibility of the plaintiff fails to meet the defendant's burden of proof. Floca v. Homecare, 849 F.2d 108, 112 (5th Cir. 1988) (reversing District Court's holding that plaintiff, a supervisory RN, was required to accept a regular RN position; "the judge did not believe… (Plaintiff) that she could not find comparable work; the lack of credibility…is insufficient to meet the defendant's burden of proof.) This concept is important because as will be seen and determined, in Rosebud, at the phase II hearing, the defendants did not refute the plaintiff's uncontroverted testimony of his efforts to find a job. Therefore, the failed to meet their prong #1 burden. Consequently, judgment can be entered against the defendants on their affirmative defense.

In Clark v. Takata, 192 F.3d 750, 759 n. 5 (7th Cir.1999), Clark reversed, holding that despite the the defendant's argument that the plaintiff did not "expend sufficient effort to find other teaching employment", the defendants failed to prove that there were particular teaching jobs for which the plaintiff would have been qualified had he applied.In Snow v. HealthSouth., 2001 Lexis 5534 (S.D. Ind. 2001), the court held the plaintiff did not have the "burden to present evidence to prove that she was sufficiently diligent. Rather, it is HealthSouth's burden." HealthSouth failed to meet their burden to prove that particular jobs were available. As in Clark and Snow, Rosebud failed 1) to present any employers who would have hired the plaintiff  if he had applied, 2) to refute the plaintiff's testimony.

After being constructively discharged in 6/08 and before discovering that he had an opportunity to move to Arizona in 7/08, the plaintiff testified that, daily, he spent five hours a day looking for a job. He would review job postings in the Chicago Tribune, Chicago Sun-Times and

the free employment newspapers that one would find at supermarkets. Also, the plaintiff testified that daily he submitted numerous job applications. Moreover, the plaintiff either daily or frequently throughout the week would go to the Illinois Department of Economic Security (IDES) and use their computers. He testified that the IDES would give the plaintiff lists of job openings. He would respond to about 32 of those job openings daily by submitting applications. Furthermore, he frequently contacted family and friends asking them if they had any ideas where he could obtain a job.

Accepting his aunt's 7/08 offer for him to move to Mesa, Arizona, the plaintiff moved to Mesa and testified that he followed the same procedure as in Chicago, utilizing the local equivalents, i.e., local newspapers, local supermarket employment newspapers, local employment agencies, etc. He testified that he would walk within a 4 mile radius of where he lived , applying for jobs, and about proceeding to interviews. Also, he testified how he looked for a job as a meat butcher both in Chicago and Mesa, but to no avail. He testified that his girlfriend informed him of a couple of job leads. He pursued those job leads and was hired for those seasonal jobs.  Moreover, the plaintiff testified how he has worked for a temporary employment agency. Had Rosebud not constructively discharged him, the plaintiff testified that he would have continued to work for Rosebud beyond 2016. At trial, he testified that when working at Rosebud, he could walk to work when his car would frequently break down.

In Hanna, the plaintiff visited the job service office, applied at factories, read want ads, discussed jobs with friends and worked at least 2 jobs. The Seventh Circuit held, "these actions are more than sufficient to constitute 'reasonable diligence'". Id at p. 1309. Therefore, Hanna reversed the District Court's finding that the plaintiff "should have more diligently". Hanna at p. 1308.  Also, Hanna held that the defendants "failed to introduce a scintilla of evidence to contradict" the plaintiff's testimony. In Smith, the plaintiff satisfied the Seventh Circuit standard

or exceeded it: 1) filing applications with various employers, 2) registering with employment agencies, 3) discussing employment opportunities with friends and family, 4) checking the want ads, 5) securing temporary employment, etc. Indeed, he did more than required by <u>Hanna</u>, spending 5 hours a day checking the want ads in multiple newspapers, checking the lists of job openings at the Department of Economic Security and the correlative agency in Mesa, walking a 4 mile radius daily looking for jobs, etc. As in <u>Hanna</u>, Rosebud has presented <u>no evidence</u> to contradict the plaintiff's <u>undisputed</u> testimony of his efforts to find employment. As stated, Rosebud had to meet <u>both</u> prongs to fulfill their burden.

In <u>Gaddy v. Abex,</u> supra, on cross-examination, the plaintiff testified that Kraft was interested to employ the plaintiff, but she did not pursue the possible job because she could not afford relocating herself and her family from Chicago to Geneva, Illinois. The plaintiff testified that she contacted over 100 employers, used two employment agencies, answered newspaper ads and followed leads from friends and relatives. Despite all of these efforts, the plaintiff received no job offers and earned no income since her employment with the defendant terminated. The District Court granted back pay for 71 months totaling $118,270. Affirming the District Court, the Court of Appeals held that the defendants failed to produce any probative evidence that if the plaintiff had pursued Kraft, a reasonable probability existed that she would have received a job offer. Therefore, the Court of Appeals held that the defendants failed to meet their burden to overcome the important public policy of making victimized plaintiffs whole.

In <u>Wheeler v. Snyder</u>, 794 F.2d at 1234, the plaintiff answered want ads, registered with employment agencies and applied for various positions, but did not pursue other known opportunities . The Seventh Circuit found that the plaintiff's efforts were sufficient, although it was "not untroubled by the [low] level of Wheeler's post-termination job-seeking activities." Id. A diligent ... plaintiff endeavoring to mitigate damages would at least check the want ads,

register with employment agencies, and discuss job opportunities with friends and acquaintances." Id. In <u>Smith</u>, the plaintiff met the Seventh Circuit standard of answering want ads, registering with employment agencies and discussing job opportunities with friends and acquaintances. Indeed, he did more than the standard. Supra. As Rosebud failed to meet their burden regarding the first prong, Judge Dow may decide to enter judgment against Rosebud.

### *The defendant's answers to the plaintiff's discovery demonstrate that the defendant failed to meet its burden*

As stated, the defendants provided no facts to the plaintiff's interrogatories 15, 16, requesting that the defendants finally disclose and reveal the alleged facts supporting their affirmative defense mitigation. Supra. Also, the plaintiff requested the supporting documents, but the defendants produced none relating to Cohen. Supra. Therefore, regarding the first prong of the defendant's burden, the defendants provided no facts that the plaintiff did not exercise reasonable diligence to seek other employment. Regarding the second prong of the defendant's burden, the defendants provided no facts that with reasonable diligence, a reasonable likelihood existed that the plaintiff might have found a substantially equivalent job.

### *Prongs #2: The defendants failed to meet their burden to prove that with reasonable diligence, the plaintiff could have found a substantially equivalent job*

The defendants had to prove that substantially equivalent employment was available and that the claimant did not exercise reasonable diligence to obtain it. <u>Ford v. EEOC</u>, supra, <u>Donlin v. Phillips</u>, 581 F.3d 73, 89 (3rd Cir. 2009). In <u>Coffey v. DFW</u>, #14-4365 (ND Ill. 10/29/15), *7 Exh. XIX, regarding the affirmative defense of mitigation, the court asserted that the defendant bore the burden of proving the above two prongs. Regarding the first prong, the defendant did not rebut the plaintiff's testimony about her job search. Instead, the defendant only argued that the plaintiff 1). restricted her job search to online sources rather than checking newspaper job advertisements and 2). could have expanded her job search to a wider geographical area. The

court held that even if a jury disbelieved the plaintiff about her job search, the defendant still failed to meet its burden to rebut the plaintiff's testimony. Regarding the second prong, the defendant offered no evidence "that plaintiff might have found a job had she made additional efforts. For instance, defendant did not present evidence from a potential employer that an application from plaintiff would have resulted in a job offer, nor did defendant offer evidence of specific job qualifications sought by employers and how they compare to plaintiff's". id.

As in <u>Coffey</u>, in <u>Smith</u>, the defendants provided no evidence 1). refuting the plaintiff's uncontroverted testimony of his efforts to find a job, 2). that the plaintiff would have found a job had he made additional effort, 3). of specific job qualifications sought by employers and how they compare to the plaintiff's and 4). From a potential employer that if they had received the plaintiff's application, they would have hired the plaintiff. Therefore, as in <u>Coffey</u>, the defendants in <u>Smith</u>, failed to meet their burden on their affirmative defense.

Regarding the second prong, either through their economist or otherwise, the defendants failed to demonstrate any substantially equivalent employment which had virtually identical promotional opportunities, compensation, job responsibilities and status as the plaintiff had with the defendants. The defendant's economist merely stating that thousands of jobs from a hearsay website existed failed to meet their burden. As stated, never did the defendant's economist discuss a specific meat butcher job opening and opine that it was substantially equivalent in promotional opportunities, compensation, job responsibilities and status as the plaintiff's position with the defendants. Consequently, whether there were thousands of jobs in Chicago or Arizona (instead of Mesa) is irrelevant. It does not relate to the specific issue in the case.

Notably, the defendant's economist admitted at the Phase II hearing that he did not check, even randomly, if the alleged thousands of job openings were real, actual jobs. He did not check if these alleged thousands of job openings were actually filled. If they were real jobs and filled,

he did not check who filled them and what qualifications such person had. When defendants submit job advertisements as potential evidence, courts require defendants to prove that such jobs were real, actually available. Mueller v. First, 797 F. Supp. 656, 658 (C.D.Ill.1992) (admitting defense exhibits of job listings in newspapers and magazines, but requiring proper showing that the positions were available and represented actual job openings for the plaintiff). Also, at no time did the defendants through their economist or otherwise prove that had the plaintiff applied for a particular job, he would have obtained it.

Courts hold that defendants fail to meet their burden by simply presenting want ads without more. In Kawasaki v. NLRB, 850 F.2d 524, 528 (9th Cir. 1988), the court held, "Kawasaki's reliance on newspaper advertisements and hiring records to show the availability of jobs is not adequately convincing. Kawasaki failed to produce evidence of employment specifically available or employment offers Bennett refused to accept." See, Meyers v. City of Cincinnati, 14 F.3d 1115, 1119 (6th Cir. 1994) ("The City presented no evidence that substantially equivalent positions were available to Meyers and has not, therefore, met its burden of establishing failure to mitigate."); Reid v. Kraft, 1995 WL 262531 9 (E.D.Pa.1995) (defendant criticizing the plaintiff's efforts to find employment does not meet the defendant's burden; also, defendant failed to demonstrate there were substantially equivalent positions available); Mallek v. City of San Benito, 121 F.3d 993, 997 (5th Cir. 1997) (plaintiff rejected defendant's offer of employment; defendant failed to prove that it's offer was substantially equivalent to the plaintiff's previous job). In NLRB v. Ryder, 983 F.2d 705 (6th Cir. 1993), the Court rejected the defendant's argument that the help-wanted advertisements satisfied their burden:

> Ryder makes much of help wanted advertisements….We are not persuaded.
> Ryder's reliance on the advertisements is not convincing. It 'failed to produce
> evidence of employment specifically available or employment offers… (the
> victimized plaintiff) refused to accept.'

Emph. Add. As in <u>Ryder</u>, the defendants in <u>Smith</u> failed to produce evidence of substantially equivalent employment and of employment offers which the plaintiff did not accept. Therefore, as in <u>Ryder</u>, Judge Dow may decide to enter judgment against the defendants on their affirmative defense. In <u>Coleman v. Lane</u>, 949 F. Supp. 604, 614 (ND Ill. 1996), though the plaintiff only submitted four job applications and inquired into a few positions, the court held that the defendant failed to meet its burden to overcome the important public policy of making harassed, victimized plaintiffs whole. The defendant submitted numerous pages from the Chicago Tribune listing maintenance positions. Also, the defendant submitted evidence that the plaintiff did not apply for these maintenance jobs. The plaintiff argued 1) that the Tribune was hearsay and 2) the defendant failed to prove that the posted jobs were actual, real jobs and that if the plaintiff had applied, he would have obtained the job. The court analyzed whether the defendant met its burden to prove that the plaintiff had a reasonable likelihood to acquire a job, citing <u>Gaddy</u>, 884 F.2d at 318. Finding that the defendant failed to meet its burden to overcome the important public policy of making victimized plaintiffs whole, the court held:

> The two pronged test…requires Defendant to…(prove) that further efforts on Plaintiff's part might have succeeded. All that Defendant has offered…are… want-ads….Nowhere does the court find evidence of the specific job qualifications sought by the potential employers and how they compare to Plaintiff's skills and background. <u>Nor did Defendant present evidence from any potential employer that an application from Plaintiff would have resulted in an offer.</u> Thus, although Plaintiff was…remiss…to mitigate…Defendant has failed to adequately demonstrate that Plaintiff had a reasonable likelihood of receiving a job offer had he contacted the employers in the newspaper. Although Plaintiff appears to believe that he was qualified to do 'anything I want to' in the maintenance field…Defendant presented no evidence that potential employers shared that assessment. The court accordingly awards Plaintiff $88,261.95 in post-judgment back pay — $94,261.95 in lost wages and benefits.

id. Emph. Add. As in <u>Coleman</u>, in <u>Smith</u>, the defendants 1). failed to provide any evidence of any specific, substantially equivalent job to which the plaintiff had not applied, 2). presented hearsay, generalized, abstract information of job postings without presenting any

specific information of the specific job qualifications for each job posting and comparing it to the plaintiff's skills and background, 3). provided no evidence from "any potential employer that an application from plaintiff would have resulted in an offer," Id., 4). "failed to adequately demonstrate that plaintiff had a reasonable likelihood of receiving a job offer had he contacted the employers" mentioned in the economist's report, presuming that such unidentified employers are real, actual employers, have real, actual job openings. Therefore, as in <u>Coleman</u>, Judge Dow may decide to choose the option of moving to the next step and finding that the defendants failed to meet their burden and entering judgment against the defendants on their affirmative defense.

**Plaintiff's damages**

The jury (probably the most formally educated that the plaintiff's attorney has had) heard and saw the evidence. After getting a handle of the evidence for approximately one one-half weeks of the trial, the jury entered a verdict for the victimized plaintiff under Title VII and §1981. <u>Pals v. Schepel</u>, 220 F. 3d 495, 501 (7th Cir. 2000) ("When assessing back...or...front pay...the judge must respect the findings implied by the jury's verdict.") Victimized plaintiffs must be made whole. <u>US v. City of Chicago</u>, 853 F. 2d 572, 574 (7th Cir. 1988); <u>Albemarle v. Moody</u>, 422 U.S. 405, 418 (1975); <u>Lalowski v. Corinthian</u>, No. 10 C 1928 (ND Ill. 4/26/13), Exh. XX. All doubts relating to calculations are resolved in favor of the victimized plaintiff and against the defendants breaking the law. <u>Stewart v. GM</u>, 542 F. 2d 445, 452 (7th Cir. 1976).

**Back wages**

Courts compensate victimized plaintiffs with back wages until the date of judgment. <u>Lalowski</u>, supra, Exh.XX. Thus, Mr. Smith should receive back wages from the 6/08 constructive discharge until the date of the judgment—approximately 8 years. As stated, Rosebud answered the plaintiff's interrogatories that had the plaintiff continued to be employed, he would have $.25-$.50 above minimum wage. The plaintiff had worked for the defendants for

about 5 years before he was constructively discharged. At the 4/4/16 hearing, the plaintiff, indisputably, testified 1). that he would have continued working with Rosebud, but for the constructive discharge, i.e. 13 years until 2016, and 2). to his earnings since 2008. Given that Rosebud pays a low-wage and the law holds that all ambiguities must be construed against Rosebud and in favor of the plaintiff, the plaintiff prepared a chart utilizing $.50 over minimum wage. Exh. XVIII.

**Overtime**

At the 4/4, 4/5/16 hearing, but for Rosebud's constructive discharge, the plaintiff testified how he would have worked 50, 60 and more hours weekly. He testified that Rosebud did not pay him time and one-half for overtime. Indeed, he testified that he complained to head butcher, Federico Lopez, but to no avail. Rosebud violated Illinois law by failing to pay time and one-half for the plaintiff working overtime. 820 ILCS 105/4a (1).  At the 4/4/16 hearing, the plaintiff-- indisputably--testified that he would have worked whatever number of hours Rosebud would have given to him from 2008-2016 and beyond. Rosebud presented no evidence that they would not have assigned overtime to the plaintiff, for example, 50, 60 and more hours etc. The plaintiff's chart, Exh. XVIII, demonstrates that Rosebud's witnesses worked more than 60 hours per week, i.e., 21, 22 overtime hours. The plaintiff suggests 15 hours/week of overtime  paid according to the law, i.e., time and one-half for a total of 55 hours per week, fewer than Rosebud's witnesses.

**Front pay**

Equitable future relief can be either reinstatement or front wages. Williams v. Pharmacia, 137 F.3d 944, 952-54 (7th Cir. 1998). Based upon the jury's verdict for the plaintiff on all counts of the defendant's abusive, retaliatory work environment, reinstatement is impractical. Thus, front pay is appropriate. The plaintiff testified at the 4/16 hearing that had he not been

constructively discharged, he would have worked at Rosebud for many years beyond 2016. He worked for Rosebud twice, with his last term being for about 5 years. Despite Rosebud's illegal work environment, the plaintiff could walk to work which was important when his car would frequently breakdown. Rosebud was the only major business in the neighborhood.

Rosebud failed to provide evidence of any employer since 2008 which would have provided substantially equivalent employment had the plaintiff applied. Padilla v. Metro, 92 F. 3d 117, 125 (2nd Cir.1996). Rosebud must accept the egg shell plaintiff as he is with his limited qualifications, education and abilities. The plaintiff is 40 years old. He could have worked at Rosebud until he would have retired at 65 years old. Please see chart, Exh. XVIII. Rosebud presented no evidence that had it not constructively discharged the plaintiff, he could not have continued to work at Rosebud until he would have retired at 65 years old. Front pay until retirement is appropriate. Padilla, id at 122, 124 (approx.25 years front pay until retirement); Pierce v. Atchison, 65 F.3d 562 (7th Cir. 1995) (affirming front pay of 10 years until retirement); Salitros v. Chrysler, 306 F.3d 562, 570 (8th Cir. 2002) (front pay of $445,516, i.e., 7 years until anticipated retirement); Belk v. City of Eldon, 228 F.3d 872, 883 (8th Cir. 2000), cert. denied, 532 U.S. 1008 (2001) (affirming 10 years of front pay of $119,000); Haddad v. Wal-Mart, 914 NE 2d 59 (Mass. 2009) (front pay, $733,000, 29 years until retirement); Kelley v. Airborne, 140 F. 3d 335, 355 (1st Cir. 1998) ($1 million front pay until retirement; plaintiff had no college education).

### The law favors prejudgment interest

Prejudgment interest "is simply an ingredient of full compensation that corrects judgments for the time value of money." Matter of Bergner, 140 F.3d 1111, 1123 (7th Cir. 1998). "The basic purpose of prejudgment interest is to put a party in the position it would have been in had it been paid immediately." Am. Nat'l v. Yellow, 325 F.3d 924, 935 (7th Cir. 2003).

Calculating prejudgment interest, the "market rate...is the one during the litigation-when the defendant had the use of money that the court has decided belongs to the plaintiff-not the going rate at the end of the case." In the Matter of Oil Spill, 954 F.2d 1279, 1332-33 (7th Cir. 1992). the best starting point is to calculate the average of the prime rate for the years in question.

Generally, courts utilize the monthly average prime rate. Cabernoch v. Union, 2009 WL 2497669 (N.D. Ill. 8/14/09), Exh. XXI; Ryl v. Care, 564 F. Supp. 2d 817, 829 (N.D. Ill. 2008), aff'd, 565 F.3d 1027 (7th Cir. 2009). Interest should be compounded, Amer. Nat. v. Yellow, supra, monthly. Halley v. Aetna, 13-6435 (ND Ill. 10/15/15), Exh. XXII; Juszynski v. Life, 2008 WL 877977 (N.D. Ill. 3/28/08). Otherwise, the defendants "would be profiting from their wrong and Plaintiff would not be compensated fully for the lost value of her money in the marketplace." Cabernoch, supra at 5. The plaintiff respectfully requests that Judge Dow grant prejudgment interest and order the parties to calculate the amount and submit it to him for the judgment. Geraty v. Village of Antioch,  #09 C 6992 (ND Ill. 4/15/14), Exh. XXIII.

**Negative tax consequences**

The plaintiff receiving a lump-sum payment in one year will cause him to incur taxes, indeed, substantial taxes. Because the plaintiff has earned minimal income annually since Rosebud's constructive discharge, the plaintiff will be moved to a higher tax bracket. Therefore, to make him whole and promoting the law that the defendants should not benefit from their illegalities, courts compensate for the extra taxes. EEOC v. Northern, 777 F.3d 898, 902-904 (7th Cir. 2015) Once all of the amounts are determined to make the plaintiff whole, the plaintiff suggests that the parties work together to agree to the plaintiff's extra taxes and present such amount to His Honor to enter as part of the judgment.

Respectfully submitted,

Joseph A. Longo

**LONGO AND ASSOCIATES LTD.**
Joseph A. Longo, Esq.
Attorney for Plaintiff
2100 West Haven
Mt. Prospect, IL   60056
(847) 640-9490
Longo-Associates@SBCglobal.net
Attorney No. 53635

## CERTIFICATE OF SERVICE

I, Joseph A. Longo, an attorney, certify that I served this MOTION FOR JUDGMENT ON DEFENDANT'S AFFIRMATIVE DEFENSE OF MITIGATION by electronic filing on 24 June 2016 before 5pm. Under penalties as provided by law pursuant to 735 ILCS, Sec 5/1-109, I certify that the statements set forth in this Certificate of Service are true and correct.

Joseph A. Longo