**Introduction; plaintiff's motion for judgment of its findings of facts and conclusions of law**

The plaintiff titled his 6/24/16 findings of facts and conclusions of law as a motion for judgment because the plaintiff believes that the defendants failed to meet their burden on their affirmative defense and that judgment can be entered against the defendants. The Honorable Judge Dow stated to the plaintiff, "one of your conclusions of law could be the expert should be stricken." 5/4/16 tr., 4:19, 20, Exh. XXXVI. Based upon the defendants failing to present significant facts to meet their burden to prove prong #1 and then prong #2, after reviewing everything, the plaintiff believed that the format he presented was the better option to proceed to the next step. Indeed, this Court stated,  "I don't particularly care if you do these in paragraph format or you write prose. It doesn't matter to me, it's all the same." 5/4/16 tr., 1; 6:2-4, Exh. XXXVI. Regarding the plaintiff's previous motions to strike the economist and his report, this Court stated, "most of what you have here is eminently usable the next time around." id at 10:5.

The plaintiff's 6/24/16 brief has numerous facts and conclusions of law. This Court stated that this case is "complicated" having "a lot of legal issues." 5/4/16 tr, 2:23, Exh. XXXVI. Despite the defendant's arguments, the 5/12/16 order did not require a particular format, but presented "an example of an effective format." Doc 270. The 7/5/16 order acknowledges the plaintiff's motion for judgment as the his findings of facts and conclusions of law. Doc 281.

Instead of focusing on the substance of the plaintiff's 6/24/16 motion for judgment/findings of fact and conclusions of law and despite Judge Dow's above remarks regarding paragraph or prose etc., the defendants focus on the form, the format. Indeed, they spend nearly the first 5 pages on it and paragraphs throughout their brief. The defendant's attack on the format might demonstrate that the defendants know that their affirmative defense is weak. This is particularly true based upon the public policy the plaintiff discusses throughout his 6/24/16 and 7/8/16 briefs to make victimized plaintiffs whole. The jury already determined that

the defendants broke the law. To overcome this important public policy, the defendants had to prove prong #1, that is, identifying an employer having a real, actual opening for substantially equivalent employment who would have hired the plaintiff had he applied. In their 7/8/16 brief, the defendants referred to this as prong #2. Some courts do also. However, even those courts hold that unless the defendants prove substantially equivalent employment, the analysis ends and judgment must be entered against the defendants. For this reason, the plaintiff refers to the substantially equivalent employment prong as prong #1. Neither in the defendant's 7/8/16 nor 6/24/16 brief do the defendants identify a single employer to meet their burden under prong #1. Thus, this Court might be inclined to enter judgment against the defendants at this point. Notably, though the defendants bear the burden to prove prong #1, the defendants scarcely use the words, substantially equivalent employment, much less prove it. This Court might find that the defendant's failure further demonstrates that the defendants know that their affirmative defense is deficient and weak.

Even if the defendants had proved prong #1, arguendo, the defendants failed to meet their burden regarding prong #2. Prong #2 involves the defendants proving that the plaintiff did not take reasonable steps to mitigate. This Court might notice that the defendants explicitly and implicitly attempt to shift this burden to the plaintiff, e.g., the plaintiff did not prove this, did not prove that, but the burden rests solely with the defendants. After all, it is their affirmative defense. Even though at the 4/16 hearing, the plaintiff presented evidence of his many attempts to find work, the plaintiff did not have to as it was not his burden. Rather, the defendants had the burden to present evidence that the plaintiff did not mitigate his damages. This Court might find that the defendants did not. Indeed, the defendants did not even refute the plaintiff's 4/16 testimony regarding his efforts.

Instead, the defendants attempt to attack the plaintiff's credibility with peripheral,

collateral irrelevant issues but "the lack of credibility…is insufficient to meet the defendant's burden of proof". Floca v. Homecare, 849 F.2d 108, 112 (5th Cir. 1988) (reversing District Court's holding that plaintiff, a supervisory RN, was required to accept a regular RN position). This Court may find itself wondering if the defendant's personal attacks also demonstrate that the defendants have known that their defense is weak. Also, this Court may find that the defendants based their arguments on inadmissible hearsay and speculation, again, demonstrating that the defendants have known that their defense is weak.

Regarding the defendant's argument, p. 2, that the plaintiff did not cite the trial transcript relating to the jury trial, for 4 years from the filing of the complaint in 2011 until the 12/15 trial, the plaintiff bore the burden of proof. The plaintiff met his burden of proof and the jury returned a verdict for the plaintiff on all counts and against all defendants. In phase II, the defendants bore the burden of proof. Therefore, it was unnecessary to cite the jury trial transcript. Indeed, the defendants point to nothing that should have been cited.

As far as Phase II, in the plaintiff's 7/8/16 brief, the plaintiff cited the 4/16 transcripts because they supported the plaintiff's arguments how the defendants continued to fail to meet their burden. The plaintiff did not cite the transcript in the plaintiff's 6/24/16 brief because His Honor had held at the 4/16 Phase 2 hearing that economist, Malcolm Cohen, would be restricted in his testimony to what was contained in his report. Therefore, the plaintiff utilized the economist's report to demonstrate that the defendants failed to meet their burden to prove prong #1 and then prong #2. The Honorable Judge Dow asserted, "if I exclude their expert or some part of their expert testimony, then they would be without an expert on the issue or probably will not prevail on the points that the expert is trying to make." 5/4/16 tr., 10:20-24, Exh. XXXVI.

Despite the defendant's argument, the 4/16 hearing was only had because the defendants filed an affirmative defense. Otherwise, the plaintiff's damages could have been resolved on

briefs. The damages are not overly complicated. The defendants paid the plaintiff minimum wage. The defendants did not provide benefits, e.g., medical insurance, sick days etc. Pltff's 7/20/16 aff., ¶2, Exh. XXXII. Indeed, but for the defendant's defense, upon the plaintiff submitting the calculations to this Court, this Court could have then informed the plaintiff what further information this Court wanted or needed to promote and protect the important public policy to make the plaintiff whole. Therefore, the only reason why the plaintiff and this Court had to be at a two day hearing was because the defendants insisted on pursuing their affirmative defense, despite the plaintiff's 1/4/16 motion demonstrating how the defendant's defense failed.

**The law set the standard which this Court uses when exercising its discretion**

As stated, throughout the plaintiff's 6/24/16 and 7/8/16 briefs, the plaintiff discusses the public policy which this Court must use and protect when exercising its discretion to enforce equity. See, e.g., 7/8/16 brief, p. 4. Disregarding this well-established public policy and standard on p. 24, the defendants argue that the choice of the plaintiff's attorney of the format for the 6/24/16 brief demonstrates that the "equities" weigh in the defendant's favor, but the defendants cite no case law, thus waiving the argument. Long v.Teachers, 585 F.3d 344,349 (7th Cir. 2009) ("[U]nsupported and underdeveloped arguments are waived"); Echo v. Timberland, 661 F.3d 959, 967 (7th Cir. 2011) (3 sentence argument of breach of contract without explaining how contract was breached was "too skeletal, and...a waiver"). Also, the defendants cite no definition of "equity."[1] As stated, the only equity that the Court enforces is to make the plaintiff whole as if the discrimination, harassment and retaliation by the defendants had never occurred. After scrutinizing whether and how the defendants failed to meet their burden to overcome this important public policy, based upon the jury's verdict against all defendants, the Honorable

---

[1] The defendants have belatedly, and inappropriately, argued "unclean hands", but some might argue that the defendants approached this Court with unclean hands. The same attorneys have represented Rosebud, Carlos Castaneda and Rocky Mendoza. This might be a conflict of interest, perhaps illegal or unethical. Also, if Rosebud paid for Castaneda and Mendoza's attorney's fees and/or agreed to indemnify them --material benefits-- such might be a conflict of interest. Indeed, arguably, Rosebud has purchased the testimony of Castaneda and Mendoza, crucial witnesses, to testify in the manner desired by Rosebud.

4

Judge Dow might decide to choose to proceed to enter judgment against the defendants.

**Though the plaintiff must produce some evidence of his damages, the only real burden that exists in phase II rests with the defendants to prove prongs 1 and then 2**

The plaintiff presented caselaw, some of which defendants cite on p. 7, that the plaintiff must present evidence of his damages. The plaintiff's responsibility to present evidence is not onerous, and indeed, light. "No mathematical certainty is required in the computation. See Bowe v. Colgate…416 F.2d 711, 721 (7 Cir. 1969)" as cited in Kaplan v. Intern., 525 F. 2d 1354, 1363 (9th Cir.1975). As mathematical certainty is unnecessary, Judge Dow can use any formula to approximate the amount owed to the victimized plaintiff because of the defendant's illegalities. NLRB v. Pilot Freight, 604 F. 2d 375, 378 (5th Cir.1979). This public policy to make victimized plaintiffs whole is so important that the Seventh Circuit will remand the case so that the plaintiff can present further evidence for his damages as cited in the defendant's citation of Taylor v. Philips, 593 F. 2d 783 (7th Cir.1979). If The Honorable Judge Dow needs any further information to promote this important public policy, the plaintiff will be happy to provide it. Starceski v. Westinghouse, 54 F.3d 1089, 1101 (3d Cir. 1995) ("risk of lack of certainty with...projections of lost income must be borne by the wrongdoer, not the victim").

Promoting public policy, the law requires that all favorable inferences must be given to the plaintiff and against the defendants which violated the law as determined by the jury. In the plaintiff's citation of Coleman v. Lane, 949 F.Supp. 604, 608, 611 (N.D. Ill. 1996), which the defendants also cite, the court held:

> Once a plaintiff has established that his employer unlawfully terminated his employment, a presumption in favor of full relief arises. Gaddy...884 F.2d 312, 318 (7th Cir.1989). The plaintiff must establish, nonetheless, the amount of damages (in the form of lost salary and benefits) to which he is entitled. The proper measure of back pay damages is the 'difference between actual earnings for the period and those which [the plaintiff] would have earned absent the discrimination by defendant.' Taylor, 593 F.2d at 786 (emphasis supplied). Although Plaintiff does not give an in-depth assessment of his calculations, he does indicate the amount he believes he would have earned had there been no wrongful termination — $94,261.95 as of October 24, 1996. He also

5

reduces this figure by $6,000 representing his various income offsets. (Pl.'s Back Pay Petition, at 8.) Defendant, which presumably has superior access to information concerning the pay and benefits Plaintiff would have earned had he remained employed at CHA, has not rebutted Plaintiff's calculations. The court gives Plaintiff the benefit of the doubt and finds that his request suffices as a threshold showing of damages owed.

As in Coleman, in Smith vs. Rosebud, the plaintiff presented "the amount he believes he would have earned had there been no wrongful termination" $198,203.46 for back wages, $550,819 for future wages, Exh. XVIII, with prejudgment interest and negative tax consequences to be computed by the parties after this Court's ruling. The defendants provided no medical insurance, no sick days or any other benefits, (Plff's 7/20/16 aff. ¶2, Exh. XXXII) though the trial evidence demonstrated that Rosebud has a large complex with many trucks with a security guard at the entrance, Plff's 7/20/16 aff. ¶3, Exh. XXXII, and grosses $36 million annually. Aff. of pltff's atty., Exh. XXXV. Notably, the defendants have little to no argument--with specifics-- about how the plaintiff calculated his damages. Thus, this Court might deem that the defendants have admitted them. The defendants, p. 8, do argue that the plaintiff did not present "record evidence", but failed to cite any case law that such is not unnecessary; thus waiving the argument. Pelfresne v. Village, 917 F.2d 1017, 1023 (7th Cir.1990) (failing to cite "pertinent authority. . . forfeits the point. [The court] will not do his research for him.")

Despite the defendant's argument, the plaintiff's 6/24/16 brief discussed his damages. As the plaintiff had presented estimates of his damages in the FPO, supra, p. 1-36 of the 6/24/16 brief discussed how the defendant's affirmative defense failed. Consequently, the next step in the analysis would be to calculate the plaintiff's damages. The plaintiff discussed this in p. 37-40 which contain his findings of fact and, along with the exhibits, conclusions of law. id.

As in Coleman, the defendants have superior knowledge of what the plaintiff would have earned, but for the constructive discharge. As in Coleman, the defendants have not rebutted the plaintiff's hourly rate in his chart, Exh. XVIII. Indeed the defendant's answers to the plaintiff's

6

interrogatories state that had the plaintiff continued to be employed at Rosebud, he would have received $.25-$.50 above minimum wage. 6/24/16 brief, p. 24, 37, 38. At the 4/16 hearing, the plaintiff testified that at Rosebud he worked hourly, working 50 hours weekly, 55 hours weekly, 60 hours weekly and 65 hours weekly. 4/4/16 tr., 10:30 AM, 42:24, 25; 43:1-8, Exh. XXVI. Because this Court had the plaintiff's time records, this Court stated that it was unnecessary for the plaintiff to testify how much he earned at Rosebud, his hours and so forth: "Mr. Smith just testified to what he has made this year so far, and I couldn't tell you what I've made this year so far". 4/4/16 tr., 10:30 AM, 45:15, 16, Exh. XXVI. Regarding the plaintiff's time records, this Court stated "they'll show how many hours he worked and what he got paid for those hours. And then we don't have to try to remember them." 4/4/16 tr., 10:30 AM, 45:22, 23, Exh. XXVI.

    At the 4/4/16 hearing, this Court stated:

> what I am trying to establish here is, there's a couple of ways we can do this. He can testify from his own memory. There's a certain weight that goes with that. If you have got a document that backs it up, that sounds like it has more weight. I'm just going to make my own notes here. I'm just going to make this easier for me.… Okay. But it sounds like for the most part there isn't any dispute on these numbers because they're all supported with the W-2 and a W-2 is good enough for my purposes that is what it is purported to be. I don't see a lot of dispute in this.… But this is going to be easy. You guys are going to give me the W-2s and any other tax records and then I'll have something that I can take to the bank. I don't have to rely on anybody's memory.

    4/4/16 tr., 10:30 AM, 17:17-22; 20:4-8; 21:13-16, Exh. XXVI. At the 4/4/16 hearing, the plaintiff testified that, but for the defendant's constructive discharge, the plaintiff would have continued working for the defendants in 2008, 2009, 2010 etc. to the 4/16 hearing and beyond 2016. 4/4/16 tr., 10:30 AM, 2:12-25; 3:1, Exh. XXVI. The plaintiff had worked for the defendants from 2003-until 2008. He had worked for the defendants in 2001, left the defendants and then returned to working for them in 2003 as he could only find seasonal jobs, had a conviction, Rosebud was within walking distance of his mother's apartment where he lived, he did not have a car, etc. pltff's 8/13/13 tr., 32:16; 33-36, Exh. XXXIII. Based upon these factors

and the plaintiff's difficulties of finding a job even after 2008, the defendants do not dispute that

the plaintiff would have continued to work for Rosebud until he would have retired, but for

Rosebud's constructive discharge. When the plaintiff returned from his conviction, Castaneda

told the plaintiff that "he owns my ass." Pltff's 8/13/13 tr., 39:9-13, Exh. XXXIII.

On p. 8, the defendants argue that in the FPO, the plaintiff stated that he would continue

to work 34 hours a week, that there is no mention of a 40 hour work week or front pay. At the

4/4/16 hearing, the defendants argued that the plaintiff stated that he worked 34 hours weekly in

the FPO and that the defendants were "confused." This Court stated "but were not now, so let's

go ahead." 4/4/16 tr., 10:30 AM, 46:6-11, Exh. XXVI. At, the 4/4/16 hearing, the plaintiff

mentioned that the defendants did not object to the plaintiff's calculations of damages except to

state that the plaintiff did not mitigate damages. This Court stated "it doesn't matter if there are

for things that weren't going to deal with at that time." Id at 22:7-11, Exh. XXVI. In other words,

the FPO dealt with issues relating to the jury trial only, not what the Honorable Judge Dow will

decide. Indeed, as the defendants admit, p. 8, the FPO could be amended "to prevent injustice."

As the plaintiff demonstrated that the defendants violated the law practically daily for years,

justice requires that public policy be fostered, as held by the Supreme Court and the Seventh

Circuit, to make the plaintiff whole. As the plaintiff only had to present some "evidence on the

issue of damages", and the plaintiff did, "the burden of producing sufficient evidence to establish

the amount of interim earnings or lack of diligence shifts to the defendant." Rasimas v.

Michigan, 714 F. 2d 614, 623 (6th Cir. 1983).

However, as stated, this Court need not reach such (prong #2) as the defendants failed to

prove prong #1 (an employer having a real, actual opening for a substantially equivalent job who

would have hired the plaintiff had he applied). Though on p. 9 the defendants argue that the

plaintiff's figures in Exh. XVIII are not supported by the evidence, they failed to specify any

8

facts or figures, thus waiving the argument. Supra. Thus, this Court might decide to rule that the defendants are deemed to have admitted that the plaintiff is owed at least the damages in the plaintiff's chart. Exh. XVIII. The plaintiff's figures are supported by the evidence. The plaintiff testified to the figures. Also, he was going to testify further regarding all of the figures in the plaintiff's exhibit which was a chart which the plaintiff gave this Court at the 4/16 hearing. However, this Court stated that such was unnecessary as the Court had a copy of the plaintiff's exhibit/chart. 4/4/16 hearing, 10:30 AM, 47:22-25; 48:1-13, Exh. XXVI.

As this Court may recall, the plaintiff's chart listed the amount the plaintiff would have earned from 2008 until the time of trial but for the defendant's constructive discharge, along with the amounts that he did earn with other employers. Regarding front wages, the plaintiff's citations to the transcripts of those employees who actually testified at trial are good evidence to establish the number of hours the plaintiff would have received after 2008. The defendants argue, p. 9, that this Court should not utilize the testimony of their own employees as this Court has the plaintiff's time records, but such time records involve what occurred prior to 2008. Also, the defendants never refuted that but for their constructive discharge, the plaintiff would have worked 70 hours weekly. Notably, the plaintiff's chart, Exh. XVIII, does not use 30 hours of overtime (70-40=30), but only 15 hours weekly. If any doubt exists, the law holds that all doubts must be resolved against the defendants repeatedly breaking the law and in favor of the victimized plaintiff to make him whole.

On p. 9, the defendants argue that for 18 months prior to their constructive discharge of the plaintiff, the plaintiff had reduced hours and the defendants had not given overtime hours to the plaintiff. The evidence also demonstrated that the defendants retaliated against the plaintiff by reducing his hours when he complained. 7/8/16 brief, p. 8. Reduced hours might have been needed for the plaintiff based upon the intensifying harassment in 2007 and 2008. Doc 150, ¶2,

9

36. Pltff's 8/13/13 tr, 204:13-24; 205:1-9; 229:11-19, 254:19-21, 296:20-24; 297:1-7; 307:17-24; 308:1-4. Exh. XXXIII; Pltff's 9/18/14 aff. ¶17, Exh. XXXVII. Nevertheless the issue is whether the defendants would have given overtime hours to the plaintiff <u>after</u> 2008. As stated, the defendants presented <u>no</u> admissible evidence to refute the plaintiff's overtime claim.

On p. 10, the defendants argue that in the plaintiff's earlier years, he was paid time and a half for overtime, but the defendants refer to hearsay to which the plaintiff objects. Notably, as stated, at the 2 day 4/16 hearing, Rosebud's co-owner did not refute the plaintiff's overtime testimony occurring in the morning of the 1st day. Also, he did not testify that Rosebud has always paid time and a half for overtime. The defendant's hearsay evidence does not overcome the plaintiff's testimony 1) that when he worked overtime, the defendants did not pay him time and a half and 2) when he complained to the head butcher, the head butcher stated that Rosebud does not pay time and a half, but only regular time for overtime hours. 7/8/16 brief, p. 7, 8.

As the plaintiff argued in his 7/8/16 brief, the defendants have failed to present any case law or argument that the plaintiff should not receive all back wages, overtime, front wages, etc., under Illinois law for the Illinois Gender Violence Act claim without any deduction for any earnings that the plaintiff earned from 2008-2016. Consequently, the defendants have waived any deduction, particularly as they have no affirmative defense for such deduction. 7/8/16 brief, p. 1, 3, 4, 23, 38. Therefore, no amounts should be deducted from the amount that should be granted to the plaintiff as required by public policy.

**The defendant's affirmative defense; failure to produce documents**

In pages 5, 6, the defendants argue that their affirmative defense is not bare-bones, but the defendant's defense fails to provide any facts identifying any employer having an opening for a substantially equivalent job who would have hired the plaintiff had he applied. Also, the defendants failed to provide any facts for their conclusory statement that the plaintiff did not

exercise reasonable diligence to find a substantially equivalent job. Indeed, the defendants failed to present any of these facts, despite the plaintiff filing motions to strike the defendant's deficient affirmative defenses for failing to include sufficient facts. Doc. 250, 257, 266, 267.

As argued in the plaintiff 6/24/16 brief, the defendants also 1). failed to provide any of the aforementioned facts in response to the plaintiff's discovery, and 2). failed to produce the exhibits relating to their economist before the discovery cutoff. Though the plaintiff filed a motion to strike and bar the economist's report on 1/4/16, arguing that the defendants failed to produce the exhibits, the defendants still did not produce them to the plaintiff at that time. Doc 250. One of the purposes of receiving all of the documents before the discovery cutoff is so that parties can determine how to proceed. Based upon the deficiencies in the defendant's report, the plaintiff made decisions regarding whether to take the economist's deposition, whether to retain an expert, etc. Consequently, the plaintiff would be prejudiced if this Court did not prohibit the defendants from disregarding the rules. Indeed, this Court striking the economist would be consistent with this Court's order striking the plaintiff's witnesses, though the plaintiff complied with FRCP and seasonably supplemented. 6/24/16 brief, p. 4.

Also, the defendant's argument, p. 22, that the plaintiff was not prejudiced as he could have cross-examined their economist must be rejected because otherwise the defendants would be encouraged to violate the rules in the future knowing that at worst, they will just get slapped on the wrist. On p. 23, the defendants state that this Court could disregard their exhibits and rely on the economist's 2/14 report. In such a situation, the defendant's report would have to be disregarded as having no factual basis or underpinning, aside from and in conjunction with the plaintiff's other arguments regarding the deficiency of the report.

In 3/16, just a couple of weeks before the 4/16 hearing, the defendants produced some of their exhibits, but not all. They produced thousands and thousands of documents to the plaintiff

which should have been produced in 2014--2 years prior. Aside from this, at the 4/16 hearing, the defendants surprised the plaintiff by utilizing other exhibits which were never produced to the plaintiff. The defendants do not dispute this. Instead, on p. 6, the defendants state that the plaintiff did not present all of the communications between the parties, but, the defendants failed to state how those extra communications had any bearing. Consequently, the defendants waived the argument. Hernandez v. Cook, 634 F.3d 906, 913, n.9 (7th Cir. 2011) (poorly developed arguments and skeletal references constitute waiver).

For the most part, the defendants failed to respond to the plaintiff's arguments relating to their failure to produce facts and documents. Please see p. 5-8, plaintiff's 6/24/16 brief. Moreover, the defendants failed to refute the plaintiff's brief demonstrating how the defendants continuously attempted to mislead the plaintiff, and perhaps entering the realm of falsehoods, by stating that they had produced their documents to the plaintiff when they had not. In any event, the defendants have waived any response. Thus, this Court may find that the defendants have admitted the plaintiff's arguments.

On p. 20, the defendants turn FRCP 26 upside down by arguing that they can violate it, not produce the required information within the required deadline and still testify relating to that information at trial. The defendants cite no case law for their rewriting of FRCP 26. Consequently, they waived the argument. Supra. Though the defendants, p. 20, state that they produced their economist's report in 2014, they conspicuously do not mention anything about producing the required documents, again, admitting, that they failed to produce the required documents. Indeed, on p. 20, the defendants admit that they did not produce exhibits, stating "the report contained no exhibits." Continuing to rewrite FRCP 26 the defendants, p. 20, 21, state that the plaintiff did not request their exhibits, but the defendants were required to produce under FRCP 26. The defendants cite no case law for their rewriting of FRCP, thus waiving the

argument. Supra. Their failure to produce is yet another reason why the defendants failed to meet their burden on their affirmative defense.

The defendant's argument on p. 20 regarding the plaintiff's motion to strike and bar their economist's report can be rejected for several reasons. The defendants argue that the motion had to be filed before the 12/15 trial (though the defendants inadvertently state 12/16 trial), but the jury trial had nothing to do with the defendant's report. Relating to the FPO, this Court stated that it had nothing to do with the Phase II issues, and thus, it was irrelevant. Supra. Courts reject defendant's arguments that evidence of wages should be presented at the jury trial because such are not jury questions. Downes v. Volkswagen, 41 F.3d 1132, 1141-43, n. 9,10 (7th Cir. 1994); Salitros v. Chrysler, 306 F.3d 562, 570 (8th Cir. 2002).

From the plaintiff's perspective, engaging in briefing on a motion to strike and bar the defendant's report before the jury trial would have been a waste of attorney's fees and judicial resources. Why? Phase II would have never come about unless the jury found in the plaintiff's favor. If the parties had briefed the issues and this Court had spent time writing a written opinion on such issues, and if the jury had decided differently, then the parties and this Court would have wasted time and money for naught. In the FPO regarding back wages, front wages, etc. and the correlative information for such, the plaintiff stated that such should be addressed after the jury's verdict. 10/26/15 FPO, p. 2, 3, 6, Exh. XXVIII. It also states that the plaintiff will request prejudgment interest along with all compensatory and equitable relief allowed under Federal and Illinois State law. Therefore, as stated in the FPO, after the jury rendered its verdict, the plaintiff presented the amounts owed to the plaintiff in his 6/24/16 brief. The defendants did not object to this, except to assert their defense. Though the defendants, p. 21, state that the plaintiff had some objections on p. 3 of the corrected FPO, the plaintiff does not see those objections. id. Nevertheless, the plaintiff thought and felt that delaying such objections and issues until after the

jury decided the case was most prudent and the best use of attorney's fees and judicial resources.

On p. 20, the defendants state that the economist's report has the help wanted ads for Chicago and the entire Maricopa County for "occupations and categories relevant to someone with Smith's qualifications." The defendant's economist never determined what were "Smith's qualifications" or even what were the "occupations and categories relevant" to him. The report is unreliable. Also, p. 20, the defendants state that the economist mentions the unemployment percentages and duration of unemployment for the same geographical areas. Putting aside that the entire County of Maricopa is too large, Midwestern, infra, particularly as the plaintiff had little to no access to a car, as the plaintiff has argued in his filings, courts have held that such generalities do not provide the specifics to meet the defendant's burden.

Even if they did, arguendo, the unemployment percentage or duration of unemployment would have to relate to substantially equivalent jobs--presuming that the unemployment percentage or duration of unemployment were not completely irrelevant. As repeatedly argued in the plaintiff's 6/24/16 and 7/8/16 briefs, the defendants had to identify an employer having a substantially equivalent job with an opening which would have hired the plaintiff had he applied. The defendants have not identified even a single employer.

On p. 20, the defendants referred to the hearsay data from Wanted Technologies. As previously argued in the plaintiff's briefs, the defendants have presented no proof that using Wanted Technologies or similar multiple levels of hearsay is customary within the profession. The defendant's economist speaking about his preference to use it at numerous conferences and attempting to persuade others to use it does not make it customary. Similarly, while economist Stan Smith may speak at numerous conferences about his methodology of the hedonic value of life, such does not mean that his methodology is accepted within the profession. Indeed, courts have found it unreliable. See, e.g., Stokes v. Deere, 2014 LEXIS 21725 (CD Ill. 2/21/14).

Ultimately, by a FRE104(a) preponderance of the evidence, the defendants bore the burden to establish that it's report was not inadmissible. <u>Daubert v. Merrell,</u> 509 US 579, 592 n. 10 (1993).

Indeed, the economist's report relies on information which is very general, having multilevel hearsay, having little to no specifics of names of employers, the duties and responsibilities relating to job openings, the conditions of employment, rates of pay, distance from the plaintiff's residence, etc. Indeed, the defendants have presented no evidence that even one of the thousands of alleged jobs relate to a real, actual job opening. The defendants had the obligation to present admissible evidence, not repeatedly present speculation to this Court.

The defendant's citation of <u>Walden v. City of Chicago</u>, 755 F. Supp. 2d 942 (ND Ill. 2010) is inapplicable or distinguishable. Even if it were not, arguendo, the defendant's citation concerning unrelated issues cannot overcome the plaintiff's citations of Courts of Appeal, including the Seventh Circuit. <u>Walden</u> involved the plaintiff's expert opining that the defendant had a policy of coercive interrogations and illegal detentions. The plaintiff's expert researched other persons victimized by the defendant, including the use of the Internet. Denying the defendant's motion against the plaintiff's expert, the court noted that 1). the defendant did not challenge the reliability, relevance or the reasonableness of the reports that the expert reviewed, 2). it was common in the profession to rely on the same type of computer searches of databases, 3). the plaintiff's expert used different search terms through several different databases over several weeks to crosscheck for accuracy.

Unlike <u>Walden</u>, in <u>Smith vs. Rosebud</u>, the plaintiff argues that the defendant's report is unreliable, unreasonable and irrelevant. Also, unlike <u>Walden</u>, the defendants failed to meet their burden to prove that others in the profession use Wanted Technologies with its multiple layers of hearsay. Moreover, the defendants failed to present any evidence that the economist used different search terms through several different databases over several weeks to crosscheck for

accuracy. Even if the defendants had overcome these challenges, arguendo, cases on point involving the defendant's mitigation affirmative defense hold that generalized data do not meet the defendant's burden. Though the defendants on p. 22 argue that the plaintiff used similar internet sources, like Monster, what the plaintiff used or did not use does not meet the defendant's burden to overcome the important public policy of making victimized plaintiffs whole. Indeed, the defendants cite no case law for their argument, thus waiving it. Supra. Notably, the defendants present no "record evidence", a term that the defendants use, for the proposition that Monster is similar to Wanted Technologies. Instead, the defendant's attorney merely renders her own opinion. Walden does not relate to the issues before the Honorable Judge Dow. Therefore, it is distinguishable/inapplicable, particularly when the plaintiff's several citations are on point and hold against the defendants.

On p. 9, the defendants argue that the Court stated the parties' obligation of using record evidence for their findings of facts, but the defendants provide no citation to this statement. Thus, the defendants have waived it. Supra. Indeed, at the Phase II hearing, this Court stated that the parties could use whatever evidence in their briefs that would support their position, including, the jury trial transcripts, depositions, etc. On p. 8, the defendants cite Hutchison v. Amateur, 42 F. 3d 1037 (7th Cir. 1994), but all Hutchinson states is that once the plaintiff has presented evidence of his damages, the defendants bear the burden to prove their affirmative defense. Otherwise, Hutchinson is distinguishable and inapplicable because the jury decided the issues relating to back wages, etc. The question in Hutchinson was whether the district court properly denied the FRCP 59 motion as it could not be stated that no reasonable jury would have found the same way. The plaintiff's 7/8/16 brief argued that as the jury has decided that the defendants have violated the law, the court must promote the important public policy to make the victimized plaintiff whole. In Stewart v. GM, 542 F. 2d 445, 451 (7th Cir. 1976), the court held:

backpay is ... awarded when a Title VII violation is found. Otherwise, there would be little incentive for employers to obey the statute; a recalcitrant employer could continue plainly discriminatory practices until compelled to stop by a federal court's injunction without suffering any penalty for his blatant disregard of the law.… backpay is necessary ... to effectuate the statutory goal of compensating the victimized employee and placing him in as good a position as he would have been had he not been subject to discrimination.

**The defendants, not the plaintiff, have the burden to prove the defendant's defense**

The plaintiff's case law states that only the defendants bear the burden to prove their defense. On p. 7, the defendants argue that the plaintiff cited cases from other circuits, but the defendants do not argue that they are not applicable or that they are not in accord with the Seventh Circuit, thus, waiving the argument. Supra. Also, the defendants failed to mention that the plaintiff cited cases from and within the Seventh Circuit. At the 4/4/16 hearing, even though the plaintiff did not have to present evidence of interim earnings or lack thereof, as such is the defendant's burden, the plaintiff did present such evidence. Please see, e.g., 4/4/16 tr., 10:31 AM, 25:16, 17 ($3556 at Way to Go in 2012), Exh. XXVI.

"The law only requires of the employee "reasonable exertions in this regard, not the highest standard of diligence." N. L. R. B. v. Arduini, 394 F.2d 420, 423 (1st Cir. 1968); N. L. R. B. v. Miami..." as cited in NLRB v. Pilot., 604 F. 2d 375, 378 (5th Circuit 1979); see also, NLRB v. Westin, 758 F. 2d 1126 (6th Cir. 1985). On p. 10, the defendants state that "Smith obtained a job in March 2009" etc., but conspicuously, the defendants failed to discuss whether the job was substantially equivalent to the Rosebud job or not. The defendant's omission is compelling because the defendants bore the burden on their defense. By failing to discuss it, much less prove it, the defendants conveyed that they know that their affirmative defense is weak.

As discussed in the plaintiff's 7/8/16 brief (¶33, 34), in 3/09, WIS, the employer, suggested to the plaintiff that he resign to avoid them firing him as he did not have a car which was required for the job. Consequently, mitigating his damages by preventing his record to have

a firing, the plaintiff resigned. Also, the plaintiff decided to go to school to increase his probability of obtaining a job, particularly as he only earned $78 for that year at a non-substantially equivalent job. Id at ¶40-45. As the plaintiff had no apartment of his own, moving from one relative's residence to another, the plaintiff moved to Chicago because his §8 apartment application had been approved. Id at ¶36-39. Unfortunately, the §8 apartment was in a "crime-ridden" "very violent" neighborhood. Id. As the plaintiff had no money for his own apartment, he returned to Arizona to live in a safer area from one relative's residence to another. id. If the defendants had not constructively discharged him, the plaintiff would not have had to experience all of this anxiety from moving from one city to another, from one relative's residence to another.

On p. 10, the defendants state that since 6/14, the plaintiff has earned more than minimum wage, but the defendants failed to develop their argument, thus waiving it. Supra. Neither this Court nor the plaintiff should have to guess or construct the defendant's argument for them. Indeed, unless the defendant's undeveloped arguments were not waived, then this would be unfair to the plaintiff. The plaintiff should only have to respond to developed arguments with case citations. This is particularly true as all favorable inferences must be given to the plaintiff and against the defendants which chose, repeatedly, to violate the law for years.

On p. 10, the defendants state that their ¶128-170 allegedly supports the argument that the plaintiff did not establish equitable damages, but ¶120-170 does not. Indeed, in ¶133, the defendants admit that all the plaintiff has to do is "establish what (he) contends are his damages." The plaintiff has done this. The defendants have failed to meet their burden to demonstrate that what the plaintiff presented is not correct. Thus, the defendants waived the argument. Supra.

On p. 10, the defendants continue with their smokescreen by discussing "discrepancies" in the plaintiff's testimony, but whether the plaintiff was truthful, not truthful or confused is irrelevant to what the defendants had to prove regarding prong #1 and then, prong #2. The

defendant's tactic of attacking the plaintiff's truthfulness might violate FRE 608. The defendants refer to the plaintiff's "alleged" "car trouble'" or stating that he did not drive his girlfriend's car, though the plaintiff clarified that his girlfriend obtained 2 cars and he did not drive one of them. Regardless, the defendants provide no admissible evidence to refute the plaintiff's testimony. The defendants do not even cite one case that their smokescreen is something that should not be rejected or has anything to do with the defendant's burden. Indeed, the case law is against the defendants. See, e.g., Floca; ABF vs.NLRB, 510 US 317 (1994); Pltff's 7/8/16 brief, p. 20.

On p. 11, the defendants cite the plaintiff's case law that candidates must make an honest, good faith effort to find comparable employment, but then turn the case law upside down. The defendants  jump on the word "honest", pull it out of context and state that the plaintiff's testimony has not been honest about the conviction on his employment application, using his girlfriend's computer etc. Some may find that the defendants went too far with their argument because they are misleading the Honorable Judge Dow to think and feel that the case law holds that if somebody is not honest about something that he said or did relating to collateral, peripheral matters, then he cannot be made whole. Rather, the case law states that candidates must make an honest good faith effort to find work. The defendants bore the burden to prove that the plaintiff did not make an honest good faith effort to find work. The defendants failed.

On p. 12, the defendants argue that the plaintiff was "coached" to use "the right buzzwords", etc., but again, the defendants failed to meet their burden to cite facts for their bald conclusory statement. Thus, they waived the argument. Long; Echo. Once again, the defendants demonstrate the weakness of their affirmative defense by making personal attacks. Though on p. 12 the defendants state that they refuted the plaintiff's trial testimony with the "evidence available in the record", the defendants failed to provide any facts for this alleged refutation, thus waiving the argument. Supra. As argued throughout the plaintiff's 7/8/16 brief, the defendants

make numerous arguments based upon speculation or hearsay, again demonstrating the weakness

of the defendant's defense. Indeed, some may think and feel that the defendant's continual

speculation or relying on hearsay wasted judicial resources and the attorney's fees of the plaintiff.

On p. 12, the defendants state that the plaintiff does not cite "record evidence" relating to

his evidence on p. 31-33 of the plaintiffs 6/24/16 brief. However, the plaintiff does not bear the

burden to prove that he did not mitigate his damages. Rather, the defendants have the burden to

prove this. Notwithstanding, in the plaintiff's 7/8/16 brief, the plaintiff cites the 4/16 hearing

transcripts of the many efforts the plaintiff made to find work. Supra. On p. 13, the defendants

admit that they could not refute the plaintiff's testimony about his efforts to find work.

Attempting to circumvent the weakness of their affirmative defense, the defendants state that

they "could not have anticipated" the plaintiff's trial testimony as the plaintiff's efforts were not

in his interrogatory answers. Even if such argument were not rejected, the defendants still did not

refute any of the plaintiff's trial testimony relating to what he disclosed in his deposition and

interrogatory answers. Also, the defendants referring to peripheral, irrelevant matters, such as,

that the plaintiff was not consistent about where he lived continues to demonstrate that the

defendant's affirmative defense fails.

Also, though the defendants state that preceding their economist's report, the plaintiff

testified in his deposition that he did not have interviews, the plaintiff testified that the only

interviews he did not have were with his online applications. See, e.g., plaintiff's 7/8/16 brief,

¶46, 47.  On p. 16, the defendants state that the plaintiff "changed his deposition testimony"

about disclosing his conviction on his employment applications, but the defendants provide no

facts for their opinion, thus waiving the argument. Supra. Also, the defendant's attorney on p. 17

states her opinion that it would not have been meaningful for the defendant's economist to

consider the plaintiff's conviction when analyzing periods of unemployment, but the defendants

provide no "record evidence" for the opinion of the defendant's attorney.

On p. 12, the defendants argued that the plaintiff did not make sufficient efforts to find a substantially equivalent job, that is, meat butcher jobs. However, the defendants have presented no evidence whatsoever refuting the plaintiff's evidence that the plaintiff did. Indeed, some may find that the defendants mislead this Court because the plaintiff did testify that he looked for meat butcher jobs. E.g., 7/8/16 brief, ¶78-80. The defendants merely arguing that the plaintiff did not fails to meet the defendant's burden. The defendants have failed to identify any employer having a substantially equivalent job opening who would have hired the plaintiff had he applied.

As the defendants admit, on p. 12 and 13, other than looking for meat butcher jobs, the plaintiff looked for other types of jobs, so that he could pay his bills. Then, on p. 13, the defendants argue--with no admissible evidence--that the jobs where the plaintiff applied were entry-level, minimum wage, non-skilled jobs. Even if the defendant's argument were not false, arguendo, the defendants present no developed argument regarding their contention, thus waiving it. Long; Echo. Also, on p. 13, the defendants present no case law refuting the notion that a substantially equivalent job would be a meat butcher job, thus waiving the argument. Long; Echo. All that the defendants do is state that their economist reviewed want ads regarding jobs "most likely" (speculation) that did not require a college education, paid minimum wage etc., but the defendants cite no case law whatsoever to support their argument that such should not be rejected, thus waiving it. Long; Echo. Nor do the defendants meet their burden to present case law that such criteria is not irrelevant.

The defendant's failure to cite any case is particularly telling since the defendants have known about the plaintiff's arguments of the defendant's deficiencies in their economist's report and their failure to identify substantially equivalent jobs as early as 1/4/16 when the plaintiff filed his motion to bar and strike their economist. Supra. The defendants even admit that they

had the benefit of the plaintiff's motions prior to the Phase II briefing. Indeed, on p. 14, the defendants even state that they "wisely anticipated most of Smith arguments." Some might think and feel that based upon the plaintiff's 1/4/16 motion to bar and strike, the defendants should have 1) settled this case; indeed, the 1st page of the plaintiff's 1/4/16 motion discusses how the plaintiff made many efforts to settle Phase II with the defendants, but the defendants were disinterested, Exh. XXXIV, or II) withdrawn their weak affirmative defense instead of utilizing this Court's resources and the attorney's fees of the plaintiff. The defendant's disinterest to discuss settlement is similar to their rejection of the EEOC's invitation to conciliate. Exh. XXIV

On p. 14, the defendants discuss their "second prong" (the plaintiff's first prong), i.e., the defendant's failure to identify an employer having a substantially equivalent job opening who would have hired the plaintiff had he applied. In Sparks v. Griffin, 460 F. 2d 433, 443 (5th Cir. 1972), the court held:

> Mr. Bozeman asks this Court for…back pay….he sent...applications to two...districts…and that he had also inquired about vacancies in the area through teachers and former teachers….The...court concluded that...(his) efforts…were insufficient....the appellees do not claim that at trial it was proved that there were teaching jobs available...had he applied. It merely asserts that Mr. Bozeman did not expend sufficient effort to find other teaching employment. The appellees' position is without legal justification.

In Smith vs. Rosebud, the defendants failed to meet this burden. On p. 14, the defendants argued that the plaintiff does not use "record evidence" to challenge their economist, but the plaintiff does. The plaintiff repeatedly refers to the economist's report and how it fails to meet the defendant's burden. The Honorable Judge Dow at the 4/16 hearing restricted the economist to testify to only that which was contained in his report. Indeed, the defendants somewhat admit this on p. 15 by stating that their economist "did not offer opinions beyond the scope of his report." The plaintiff demonstrated that the defendants failed to meet their burden in such report. The defendants failed to specify any of their economist's testimony that should have been discussed by the plaintiff, thus, waiving the argument. Long; Echo.

The defendants cite. <u>Roundy's Inc. v. N.L.R.B.,</u> 674 F.3d 638, 648 (7th Cir. 2012) to state that experts cannot render legal opinions, but the defendant's citation is inapplicable because it involved the expert opining about Wisconsin property law. Only the court can determine what is the law. On p. 18, though the defendants attempt to argue that the plaintiff's case law, <u>NLRB v. Midwestern</u>, 508 F. 3d 418, 427 (7th Cir. 2007), is not applicable, the plaintiff's case law is applicable. The Seventh Circuit affirmed the restrictions on Dr. Cohen, the same economist that the defendants utilized in <u>Smith vs. Rosebud</u>. The Seventh Circuit noted that the economist's report was irrelevant as being Statewide. Even if the economist's report did not have other deficiencies, like <u>Midwestern</u>, it was broad, involving the entire County of Maricopa instead of the city where the plaintiff lived, i.e., the "relevant geographical area", id, particularly as the plaintiff had little to no access to a car. Supra. Though the defendants argue, p. 19, that their economist provided "specific data" for the relevant area, the defendants cite no specifics, thus implicitly admitting that their defense is weak.

Also, like <u>Midwestern</u>, the defendant's economist failed to provide any data regarding the applicants, failed to provide any insight into whether the victimized plaintiff would have secured the jobs had he applied. Moreover, like <u>Midwestern</u>, the defendant's economist provided no information regarding the hours, wages and locations of the "supposedly available positions". Id. Thus, this Court may, like the Seventh Circuit, find that "it is reasonable…to reject expert testimony regarding generalized labor market" i.e., the defendant's economist, Malcolm Cohen.

Notably, the defendants admit, p. 16, that the only information that their economist had about the plaintiff at Rosebud was that he "worked behind a meat counter." See economist's report, p. 2, Exh. XIV. The economist did not even know what the plaintiff did behind the meat counter. Did he do janitorial duties? Did he clean the bathrooms? Was he a meat butcher? Did he work in the backroom? Did he serve customers? Did he sort the various types of meat to give to

the meat butchers? The defendant's economist knew none of this. On p. 16, the defendants confirm and admit that their attorney provided all of the information regarding this case to their economist instead of allowing the economist to do his own independent review. The defendants failed to discuss, much less distinguish, all of the plaintiff's cases finding that the defendant's tactic makes their economist's report unreliable. See, e.g., plaintiff 6/24/16 brief, p. 15, 16.

On p. 16, the defendants state that the plaintiff's challenges to their report are opinions of counsel, but they are legal challenges to the report's deficiencies. On p. 18, the defendants state that their economist providing information relating to minimum-wage entry-level positions and unemployment rates would help, but the defendants failed to provide any facts or case law of exactly how it relates to what the defendants must prove. If the defendant's argument were not false, the defendants would have specified all of the facts supporting their position with case law, but they did not. The fact that they did not continues to demonstrate the weakness of their affirmative defense. Not only that, but on p. 18, the defendants even direct this Court how he should rule by stating that this Court has already made a decision regarding the economist's report, though this Court has not ruled yet.

On p. 19, the defendants refer to one of the many reasons why the economist's report failed, that is, referring to a generalized labor market analysis. The defendants argue that the plaintiff cited 2 cases for the plaintiff's argument, but the 2 cases that the defendants cite are not the cases that the plaintiff cited for his argument. Rather, the plaintiff 6/24/16 brief, p. 17, 18, 27, cited NLRB v. Midwestern, 508 F. 3d 418, 427 (7th Cir. 2007), Prine v. Sioux, 95 F.Supp.2d 1005, 1013 (N.D. Iowa 2000) ("that the economy is good, and that jobs are available…does not satisfy its burden.") and Kuper v. Empire, 2003 LEXIS 2362, 20 (S.D.N.Y. 2003).

In Kuper, aside from rejecting the defendant's argument that the plaintiff did not use reasonable efforts to find a job, citing Seventh Circuit case law, the court held that the defendants

failed to meet their burden to prove prong #1, that is, that an employer had an opening for a substantially equivalent job and would have hired the plaintiff had he applied.

Instead, the defendants in <u>Kuper</u> only offered "expert testimony that 'insurance adjusters, examiners and investigators had a strong occupational outlook with faster than average growth expectancy." Id. See also, <u>Zerilli v. NYC</u>, 973 F. Supp. 311, 316 (E.D.N.Y. 1997) (rejecting that "this industry has been growing very quickly within the last year and therefore is one of the fastest growing sectors of the economy"). The court noted that such "generalized evidence" is deficient for the defendants to prove that a substantially equivalent job existed. The same reasoning would apply to the report of the defendant's economist in <u>Smith vs. Rosebud</u>, for example, the economist testifying that thousands and thousands of jobs existed and about the unemployment rate. Furthermore, <u>Kuper</u> held that the defendants failed to meet their burden because their expert only testified that the plaintiff could have acquired a claims adjuster job, but such job was not substantially equivalent to a fraudulent claims managerial position. Id.

In short, the defendants have failed to meet their burden regarding prong #1 and/or prong #2. Therefore, the Honorable Judge Dow might determine to enter judgment against the defendants on their affirmative defense. Then, this Court may decide to foster the important public policy and make the victimized plaintiff whole as the defendants violated the law, repeatedly, daily or nearly daily, for years. If this Court needs further information for the calculations to promote the important public policy and if this Court can inform the plaintiff, the plaintiff will do his best to provide such information.

Respectfully submitted,

_____
Joseph A. Longo

25

**LONGO AND ASSOCIATES LTD.**
Joseph A. Longo, Esq.
Attorney for Plaintiff
2100 West Haven
Mt. Prospect, IL   60056
(847) 640-9490
Longo-Associates@SBCglobal.net
Attorney No. 53635

## CERTIFICATE OF SERVICE

I, Joseph A. Longo, an attorney, certify that I served this PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON DEFENDANT'S AFFIRMATIVE DEFENSE/FINDINGS OF FACTS AND CONCLUSIONS OF LAW by electronic filing on 22 July 2016 before 5pm. Under penalties as provided by law pursuant to 735 ILCS, Sec 5/1-109, I certify that the statements set forth in this Certificate of Service are true and correct.

_____
Joseph A. Longo

26