## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 11-cv-9147 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| ROSEBUD FARM, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's petition for attorney's fees [411]. For the reasons stated below, the Court awards Plaintiff $611,388.50 in attorney's fees to be paid by Defendant Rosebud Farmstand. The Court further awards Plaintiff $3,868.71 in agreed costs also to be paid by Defendant Rosebud Farmstand.[1]

### I.      Background

Defendant Rosebud Farmstand operates a grocery store on the south side of Chicago. Plaintiff Robert Smith worked as a butcher in Rosebud's meat department from 2003 through 2008. Plaintiff is African American, and many of Rosebud's other employees are Latino. Most of the workers in the grocery store are paid minimum wage. In 2011, Plaintiff sued Rosebud, alleging that Rosebud employees sexually harassed and racially discriminated against him during

---

[1] When the parties filed their Local Rule 54.3 Joint Statement, in which Defendants agreed to pay Plaintiff $3,868.71 in costs [342, at 1], Defendants jointly were represented. The Court will incorporate the terms of the parties' agreement with respect to the agreed costs in its final order on Plaintiff's fee award. Ordinarily the Court would order costs to be paid in proportion to the judgments against each Defendant. In this instance, however, the amount of the judgments against the individual Defendants, both of whom are employees of the corporate Defendant, amounts to less than 1.5% of the Plaintiff's total award. Given the individual Defendants' *de minimis* share, the Court imposes the entire amount on the corporate Defendant.

his employment. He also alleged that Rosebud retaliated against him for filing a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") and that Rosebud's retaliatory conduct forced him to quit his job. Plaintiff further alleged that two of Rosebud's employees, General Manager Carlos Castaneda and Assistant Manager Roque Mendoza, committed acts of gender violence against him.

Plaintiff filed a six-count complaint, asserting claims for sexual harassment, racial harassment, retaliation, and constructive discharge pursuant to Title VII of the Civil Rights Act of 1964, a violation of the Illinois Gender Violence Act ("IGVA"), and racial harassment and retaliation in violation of 42 U.S.C. §1981. [1.] In November 2012, the Court granted Defendants' motion to dismiss Plaintiff's Title VII racial harassment and constructive discharge claims, but otherwise denied the motion. [30.] In December 2014, the Court granted summary judgment in favor of Defendants Mendoza and Castaneda for Plaintiff's Section 1981 claims. [165.] In November 2015, the Court granted Defendant Rosebud's motion for summary judgment on Plaintiff's IGVA claim. [224.] After running this gauntlet, Plaintiff's Title VII sexual harassment claim, Section 1981 racial harassment claim, Title VII retaliation claim, and Section 1981 retaliation claims survived to be pursued against Rosebud and his IGVA claim survived to be pursued against Mendoza and Castaneda.

Because Plaintiff sought compensatory and punitive damages as well as equitable relief, the Court bifurcated the trial such that Phase I would be a jury trial covering liability on all claims and Phase II would be a bench trial covering equitable relief. At the conclusion of the Phase I jury trial, the jury returned a verdict for Plaintiff on all remaining counts and awarded Plaintiff $2,407,500 in compensatory and punitive damages. During the Phase II bench trial, however, Defendants successfully impeached Plaintiff and cast doubt on Plaintiff's Phase II testimony.

[293, at 28-33.]   After briefing on the Phase II bench trial, the Court awarded Plaintiff $69,761.80

in back pay and $19,894.77 in prejudgment interest.   [293, at 1.]

Defendants filed a motion for a new trial or reduction of damages through remittitur [316],

which the Court granted in part.   Specifically, the Court remitted the jury award against Defendant

Rosebud to $470,000 and remitted the jury award against Defendants Mendoza and Castaneda to

$3,000 and $4,500, respectively.   [337, at 57.]   Plaintiff accepted the Court's remittitur.   [341.].

On appeal, the Seventh Circuit affirmed the judgments against Defendants.   See *Smith v. Rosebud*

*Farm, Inc.*, - - - F.3d - - -, 2018 WL 3655147 (7th Cir. Aug. 2, 2018).

Plaintiff seeks $1,392,420 in attorney's fees as the prevailing party in this litigation.

Plaintiff also seeks $3,868.71 in costs.   [411, at 34.]   Although Defendants do not dispute

Plaintiff's claimed costs, Defendant Rosebud does contest the reasonableness of Plaintiff's

claimed attorney's fees.[2]   Defendant argues that Plaintiff only is entitled to $413,160.00 in fees.

Currently, pending before the Court is Plaintiff's petition for attorney's fees [411].

## II.    Analysis

The starting point for determining Plaintiff's "reasonable attorney's fees" is the lodestar,[3]

which is the "the hours reasonably expended multiplied by the reasonable hourly rate."   *Johnson*

---

[2] Plaintiff's fee petition includes a certificate of service indicating that Plaintiff served the petition by electronically filing it on November 16, 2017.   [See 411, at 34.]   Although Defendants Mendoza and Castaneda did not file responses to Plaintiff's fee petition or the Court's request for supplemental briefing, a review of the docket indicates that this is likely because they have not filed *pro se* appearances, are not electronic filers, and had satisfied their portions of the judgment as of October 31, 2017 [see 403].   It therefore appears that Defendants Mendoza and Castaneda were not served.   Unless otherwise noted, any references to "Defendant" are to Defendant Rosebud, the only Defendant to file an opposition to Plaintiff's fee petition.

[3] Plaintiff requests reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k).   Given that Plaintiff also brought Section 1981 claims against Defendant Rosebud, attorney's fees may also be appropriate under Section 1988.   Because Section 2000e-5(k) is similar to Section 1988, *Stomper v. Amalgamated Transit Union, Local 241*, 27 F.3d 316, 318 (7th Cir. 1994), the Court will consider cases addressing the application of both fee-shifting statutes.

3

*v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012). The Court has an obligation to "exclude from this initial fee calculation hours that were not 'reasonably expended'" on the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed. *Id.* at 433.

Once the lodestar is determined, the Court must determine whether it is appropriate to adjust the lodestar. *Sommerfield v. City of Chicago*, 863 F.3d 645, 650 (7th Cir. 2017). A downward adjustment may be appropriate where a plaintiff achieves "only partial or limited success[.]" *Montanez v. Simon*, 755 F.3d 547, 556 (7th Cir. 2014) (quoting *Hensley*, 461 U.S. at 434). On the other hand, an upward adjustment may be appropriate where the Plaintiff achieves "[e]xtraordinarily good results[.]" *Sommerfield*, 863 F.3d at 650 (citing *Baker v. Lindgren*, 856 F.3d 498, 503 (7th Cir. 2017)). If a district court elects to reduce a fee award, it must "provide a 'concise but clear explanation of its reasons[.]'" *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (quoting *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999)). "In other words, the court cannot simply 'eyeball the fee request and cut it down by an arbitrary percentage because it seemed excessive to the court.'" *Id.* (quoting *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1314 (7th Cir. 1996)). However, the Court is "not obligated to conduct a line-by-line review of the bills to assess the charges for reasonableness." *Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 738 (7th Cir. 2010).

Plaintiff repeatedly argues that the Court should award him all of his claimed attorney's fees, noting that adjustments to the lodestar are rare. However, Plaintiff's insistence that the lodestar controls begs a key question embedded in the definition of a lodestar. The Seventh Circuit defines lodestar as "the hours *reasonably* expended multiplied by the *reasonable* hourly

rate." *Johnson*, 668 F.3d at 929 (emphasis added). The Court therefore must assess whether the hourly rate and hours submitted by Plaintiff are "reasonable."

A.  **Hourly Rate**

The first step in determining the lodestar is to assess the reasonableness of the attorney's hourly rate. "A reasonable hourly rate is based on the local market rate for the attorney's services." *Montanez*, 755 F.3d at 553 (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011)). "The best evidence of the market rate is the amount the attorney actually bills for similar work, but if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Id.* (citing *Johnson v. GDF, Inc.,* 668 F.3d at 933). "The party seeking a fee award bears the burden of establishing the market rate for the work; if the lawyers fail to carry that burden, the district court can independently determine the appropriate rate." *Id.*

Here, Plaintiff seeks a rate of $550 per hour for the work performed by his attorney in this matter. Plaintiff does not, however, provide any evidence of what fee-paying clients actually have paid for his attorney's work in similar cases.[4] Instead, Plaintiff primarily relies upon (i) the affidavit of Plaintiff's counsel [411-5], (ii) the affidavits and declarations of five other attorneys and a Cook County Judge [411-1; 411-2; 411-3; 411-4; 411-6; 454-1], (iii) the affidavit of Plaintiff [411-7], and (iv) the Laffey Matrix [411-10], which "is a chart of hourly rates published by the U.S. Attorney's Office for the District of Columbia [that] some circuits use to help determine a

---

[4] Although Plaintiff's counsel indicates that he has paying clients [411-5, at ¶ 13], he does not indicate whether any clients have paid him in employment-related civil rights cases. Furthermore, although Plaintiff's counsel avers that he charges clients "costs and time similar to the costs and time" sought in the pending fee petition, *id.*, Plaintiff's counsel does not specify the hourly rate that he charges his paying clients.

reasonable fee under fee-shifting statutes." *Iroanyah v. Bank of Am.*, 753 F.3d 686, 694 (7th Cir. 2014). This evidence fails to establish that $550 per hour is a reasonable rate for the work Plaintiff's counsel performed in this case.

To begin, to the extent the affidavits and declarations merely opine on the reasonableness of the rates claimed by Plaintiff's counsel, the Court finds the affidavits and declarations unpersuasive. *Montanez*, 755 F.3d at 554 (holding that district court properly disregarded "affidavits from other Chicago attorneys, which only attested that [plaintiff's] lawyers were well qualified and that their fees were reasonable"). Only two of the declarations provided by Plaintiff—the Declaration of David L. Lee and the Declaration of Aaron B. Maduff—provide the hourly rate charged by the declarant. However, neither David L. Lee and nor Aaron B. Maduff aver that clients have paid their respective hourly rates in cases similar to Plaintiff's case.[5] Furthermore, it is not clear to the Court that Mr. Lee and Mr. Maduff are of "reasonably comparable skill, experience, and reputation" to Plaintiff's counsel. For example, Mr. Lee's affidavit indicates that has been practicing longer than Mr. Longo. [411-3, at ¶¶ 3-4.] Mr. Lee's declaration further indicates that he has a number of professional affiliations with organizations relating to civil-rights and employment law and has taken on significant roles with such professional organizations, including serving on the National Employment Lawyers Association's

---

[5] In his declaration, Aaron B. Maduff indicates that he charges his hourly clients $ 675 per hour, but Mr. Maduff does not indicate whether any of the hourly clients he has charged $ 675 per hour were pursuing claims similar to Plaintiff's. Although Mr. Maduff also avers that he has been practicing for more than 20 years almost exclusively in the employment and civil rights fields, the Court can only speculate regarding whether clients with claims similar to Plaintiff's claims have ever paid Mr. Maduff the identified hourly rate. Similarly, Mr. Lee avers that his hourly rate is $625 an hour and that clients have paid him that hourly rate for his work relating to litigation matters, negotiations (including contract negotiations, settlement negotiations, and severance negotiations), an EEOC Charge, employment advice, and an internal grievance. Mr. Lee does not, however, aver that he has charged $625 in any Title VII or Section 1981 case similar to Plaintiff's case.

6

Board of Directors. *Id*. at ¶ 6(i). Mr. Lee has written nearly two dozen articles and has given more than 50 presentations on legal matters, including many employment related matters. *Id*. at ¶¶ 7-8. Mr. Lee worked as a clinical professor at Chicago-Kent College of Law from 1984 to 1991, maintaining a clinical practice in the field of employment discrimination, wrongful discharge, and civil rights related matters. *Id*. at ¶ 9.

The performance of Mr. Longo, on the other hand, has been criticized by many courts. See, *e.g., Sommerfield v. City of Chicago*, 2012 WL 5354987, at \*3 (N.D. Ill. Oct. 29, 2012), report and recommendation adopted, 2013 WL 139502 (N.D. Ill. Jan. 10, 2013), aff'd, 863 F.3d 645 (7th Cir. 2017) ("[Mr. Longo's] willful misconduct time and time again results in needless and unreasonable expenditures of time for which he invariably seeks compensation through inflated fee awards and that courts have repeatedly condemned his behavior in published opinions that could not be more critical of a lawyer. All this bears on the question of Longo's reputation and ability, which is one of the 12 Hensley factors to be considered."). Although Mr. Longo was able to recover a substantial judgment for his client in this matter, Mr. Longo did not litigate this case efficiently. Even a cursory review of the docket reveals that Plaintiff's submissions regularly cited incorrect and/or irrelevant authorities and often were of questionable necessity or utility. To his credit, Mr. Longo prevailed in hotly-contested litigation. But many of his briefs reflected a penchant for overkill, turning simple arguments into lengthy dissertations that often obscured more than they clarified. Thus, although the Court considers the affidavits of Mr. Lee and Mr. Maduff, it gives them limited weight. *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001) ("Although the district court must consider submitted evidence of the hourly rates of attorneys with comparable experience, the court is 'entitled to determine the probative value of each submission and must arrive at its own determination as to a proper fee.'").

7

The other evidence submitted by Plaintiff in support of the claimed hourly rate of $550 per hour for the work Mr. Longo performed in this matter also is deficient. Plaintiff's affidavit discusses how Mr. Longo worked arduously on his behalf. [411-7, at ¶ 3.] Plaintiff avers that Mr. Longo represented him with unusual passion and dedication. *Id*. at ¶ 5. Plaintiff further avers that if he had substantial money, he would have gladly paid Mr. Longo even more than $550 per hour rate he seeks. *Id*. at ¶ 12. The Court does not question Mr. Longo's commitment to Plaintiff or his clients generally. Furthermore, the Court recognizes that Mr. Longo obtained a sizeable judgment for Plaintiff in this matter. However, Plaintiff's *post hoc* speculation that he would pay Mr. Longo's requested hourly rate does little to support Mr. Longo's claimed hourly rate of $550 per hour. In fact, many successful Plaintiffs are willing to pay their attorneys substantial sums of money after a victory. While clients working with their attorneys on a contingency fee basis might be happy to pay their attorneys after a judgment in their favor, this is not strong evidence of the market rate for the attorneys' services. See, *e.g., Montanez*, 755 F.3d at 554 ("The judge did not abuse her discretion by giving little weight to [contingency] agreements as evidence of market hourly rates for the attorneys' services."). Accordingly, the Court gives little weight to the affidavit submitted by Plaintiff.

Finally, the Court also gives little weight to the Laffey Matrix, which would set Mr. Longo's hourly rate at $826 per hour based on the fact that he has over 20 years of experience. Although some courts have accepted the Laffey Matrix as evidence of a reasonable hourly rate, see, *e.g., Hadnott v. City of Chicago*, 2010 WL 1499473, at *7 (N.D. Ill. Apr. 12, 2010), the Seventh Circuit has not explicitly endorsed the use of the Laffey Matrix, and in fact has questioned its application. See *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 649-50 (7th Cir. 2011). Given that the Laffey Matrix relates to a different legal market (*i.e.* the Washington D.C. market)

and that it does not account for a particular attorney's skill, reputation, or specialty, the Court declines to rely on the Laffey Matrix to conclude that $550 per hour is the market rate for the work Mr. Longo performed in this case. In sum, by any measure, Plaintiff has failed to establish that the market rate for the work Mr. Longo performed on this case is $550 per hour.

Even if the evidence submitted by Plaintiff did support Plaintiff's contention that $550 per hour is a reasonable hourly rate for the work Plaintiff's attorney performed in this case, Defendant has "neutralized" this evidence by citing to a recent fee award received by Plaintiff's attorney. *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (holding that the defendants "neutralized" the evidentiary impact of affidavits from other attorneys by citing to recent fee awards). Specifically, Defendant cites to a July 12, 2017 opinion from the Seventh Circuit affirming a district court fee award based on an hourly rate of $300 per hour. *Sommerfield*, 863 F.3d at 650. Mr. Longo argues that the hourly rate determined to be reasonable by the court in *Sommerfield* (a rate that was affirmed by the Seventh Circuit in 2017) is not relevant to determining the reasonable hourly rate for the work he performed in this case because the rate applied in *Sommerfield* should not apply in perpetuity. It is true that "hourly fees often increase over time, both because of inflation and because of the increasing skill and reputation of the attorney." *Fox ex rel. Fox v. Barnes*, 2013 WL 4401802, at *3 (N.D. Ill. Aug. 15, 2013). However, Mr. Longo fails to justify an increase in his hourly fee from $300 per hour in 2012, when he had been practicing for approximately 29 years, to $550 per hour in 2018,[6] when he had been

---

[6] "Since payment for services in civil rights litigation often comes by court order years after the services were performed, the court must account for the delay in payment of attorney's fees." *Pickett v. Sheridan Health Care Ctr.*, 813 F.3d 640, 647 (7th Cir. 2016). To account for the delay, the district court has discretion to "calculate the fee award for services rendered in prior years using the attorney's current hourly billing rate," or to "calculate the fee award using the hourly rate the lawyer charged at the time the lawyer performed the services for the client (the "historical rate") and add interest to that amount." Because the Court is using the former approach, the Court must determine Mr. Longo's 2018 rate.

practicing for approximately 35 years.[7]  Although a modest increase in Mr. Longo's hourly rate might be appropriate, the more than 80 percent increase requested by Plaintiff's counsel is excessive.  See *Prather v. Sun Life & Health Ins. Co. (U.S.)*, 852 F.3d 697, 700 (7th Cir. 2017) ("reducing the attorney's billing rate from $630 to $620, on the ground that the $630 rate reflected an excessive rate increase of 5 percent [in 2017] from his hourly rate of $600 in 2015").  Although the prior fee award is not dispositive, it certainly is relevant.  *Pickett*, 664 F.3d at 647 ("[A] previous attorneys' fee award is useful for establishing a reasonable market rate for similar work whether it is disputed or not." (quoting *Jeffboat, LLC, v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 491 (7th Cir. 2009)).

The Court also finds it relevant that Mr. Longo only requested $395 per hour for the work he performed in *Sommerfield*.  863 F.3d at 648.  Furthermore, in the final pretrial order dated October 26, 2016, Plaintiff represented to the Court that he only had incurred $555,093 in attorney's fees as of that date [203, at 6], which Plaintiff concedes was calculated using an hourly rate of $395.  [411, at 13 n. 10.]  Plaintiff attempts to explain away this fact by arguing that it was premature to research the market rate for attorneys with similar abilities and experience at the time of the final pretrial order, because Plaintiff could have lost the case.[8]  *Id.*  However,

---

[7] Plaintiff also argues that the hourly rate set in *Sommerfield* is of little relevance, because the Court was setting Mr. Longo's hourly rate for work performed from 2006 through 2012.  However, the initial decision setting Mr. Longo's rate at $300 per hour for his work in *Sommerfield* was decided in October of 2012 and that decision appears to be deciding Mr. Longo's hourly rate at the time of the decision (as opposed to his hourly rate for services rendered in prior years).  2012 WL 5354987, at *14-16 (N.D. Ill. Oct. 29, 2012), report and recommendation adopted, 2013 WL 139502 (N.D. Ill. Jan. 10, 2013), aff'd, 863 F.3d 645 (7th Cir. 2017).

[8] Plaintiff further argues that the reasonable hourly rate could not be determined at the time of the final pretrial order because the most important *Hensley* factor—the degree of success—was unknown at the time. [411, at 13 n.10.]  However, in *Hensley*, the Supreme Court discussed the "degree of success" as part of its discussion regarding whether it was appropriate to adjust the lodestar, not as part of its discussion of the hourly rate claimed by the attorney.  461 U.S. at 436.  The Court therefore finds that argument unpersuasive.  Still, as discussed above, the Court recognizes that the reasonable hourly rate for the work

Plaintiff's counsel signed the corrected final pretrial order, which was filed with the Court. [203.] Although Plaintiff did indicate that he would present evidence relating to his exact damages figures after receiving the appropriate information from the Defendants, *id*. at 6, Plaintiff did not indicate that he was waiting to conduct research necessary to more accurately determine the amount of attorney's fees he had accrued to date. Given that Mr. Longo has relatively recently claimed an hourly rate of $395 per hour, the Court finds Mr. Longo's claimed hourly rate of $550 per hour to be excessive. Based on all of the evidence before the Court—including the prior fee award to Mr. Longo in *Sommerfield* and the Court's familiarity with the work performed by Mr. Longo— the Court concludes that $360 is a reasonable hourly rate for Mr. Longo's work. This reflects a 20% increase over the amount that he was awarded by Judge Cole in 2012 (as affirmed by the district court and the Seventh Circuit).

**B.      Number of Hours**

Once a reasonable hourly rate is determined, the Court must then analyze the number of hours reasonably expended. *Hensley*, 461 U.S. at 433. Here, Defendant argues that the court should reduce the number of recoverable hours for time entries that (1) are related to work on motions that were denied in full, (2) are related to court appearances for motions that were excessive and/or unwarranted, (3) are administrative or clerical in nature, (4) are vague and/or insufficient as a result of the use of block-billing, or (5) are otherwise excessive, redundant, or unnecessary.

"[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper v. City of*

---

performed by Mr. Longo may have increased modestly since the pretrial order was filed.

*Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000). "Whichever option the district court chooses, it is required to 'provide a concise but clear explanation of its reasons for the fee award' that is sufficient to permit appellate review." *Id*. (quoting *Ohio-Sealy Mattress*, 776 F.2d at 658). The Supreme Court has cautioned, however, that "[a] request for attorney's fees should not result in a second major litigation." See *Hensley*, 461 U.S. at 437.

Because of the voluminous time records submitted in conjunction with Plaintiff's fee petition, the Court will use a hybrid approach—striking the entries for categories of billings that clearly are not recoverable and then reducing the hours by a reasonable percentage as a result of the excessive billing and errors in the billing records submitted by Plaintiff's counsel. *Obrycka v. City of Chicago*, 2013 WL 1749803, at *3-4 (N.D. Ill. Apr. 23, 2013) (using a hybrid approach to determine the amount of recoverable attorneys' fees); see also *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986) (recognizing that "it is generally unrealistic to expect a trial court to evaluate and rule on every entry in an application").[9]

### i. *Excessive and/or Improper Motions*

Defendant argues that Plaintiff should not be able to recover hours spent on excessive and/or improper motions filed by Plaintiff. "Whether a motion or argument in support of a successful cause is granted or denied is irrelevant to the recoverability of fees for time spent on the motion. Instead, the relevant inquiry is whether the motion or argument was reasonable."

---

[9] Initially, Plaintiff only provided Defendants with heavily redacted billing records. Defendants submitted line-by-line objections to these redacted time entries, but were unable to review a significant portion of Plaintiff's counsel's billing records as a result of the extensive redactions. The Court ordered Plaintiff to turn over unredacted billing records or file a brief defending his extensive redactions. [See 357.] When Plaintiff elected not to file a brief defending his extensive redactions, the Court ordered that Plaintiff turn over unredacted time records. [370.] Although the Court gave Defendant Rosebud the opportunity to submit line-by-line objections to Plaintiff's counsel's unredacted billing records or to otherwise respond to the unredacted billing entries, Defendant Rosebud elected not to do so.

*Garner v. Wade*, 1998 WL 474137, at *5 (N.D. Ill. Aug. 6, 1998) (internal citations omitted); see also *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1314 (7th Cir. 1996) ("A court's focus should not be limited to the success/failure of each of the attorney's actions. Rather, it should be upon whether those actions were reasonable."). Thus, the time Plaintiff's counsel spent on unsuccessful motions is compensable unless the motions were unreasonable. In this case, the Court agrees that some of Plaintiff's motions were unreasonable.

For example, Plaintiff filed a motion to compel Defendants to answer discovery relating to the immigration status of employees. [76.] Defendants moved for a protective order barring discovery on this issue. [78.] Magistrate Judge Gilbert denied Plaintiff's motion to compel, noting that Plaintiff failed to show that the immigration status was relevant or reasonably calculated to lead to the discovery of admissible evidence.[10] [83, at 1.] Magistrate Judge Gilbert granted Defendants' motion for a protective order on the same basis. *Id*. at 2. Plaintiff continued to pursue this meritless theory before this Court, filing a motion to vacate Magistrate Judge Gilbert's rulings with respect to these issues [86], which this Court denied. [See 104.] The Court noted that cases cited by the parties universally rejected efforts to obtain discovery relating to immigration status. *Id*. at 2 (collecting cases).

Similarly, Plaintiff filed a motion for sanctions against Defendants for destroying evidence [100] that was not supported by law or by known facts. [128.] Plaintiff's counsel claims to have

---

[10] The order was issued before Federal Rule of Civil Procedure 26 was amended to establish a proportionality standard for discovery. See Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." (amended 2015)).

spent 39.8 hours on this motion, which was summarily denied. [128.] Plaintiff also filed a motion to supplement the motion for sanctions, citing only a quote attributed to Abraham Lincoln. [115.] Magistrate Judge Gilbert correctly denied the motion, noting the quote from Abraham Lincoln added nothing to the material or legal issues already briefed by the parties. [118.]

However, Defendant has asked the Court to exclude time spent on motions that were granted in part or that were not unreasonable. For example, Defendant argues that the time Plaintiff's counsel spent on his motions *in limine* 1-18 should not be included in the amount of reasonable hours claimed by Plaintiff's counsel. But the Court granted some of these motions *in limine* in whole or in part and denied some of the motions *in limine* without prejudice to the arguments being raised again. [223.] The Court therefore has not excluded hours Plaintiff's counsel worked on these motions or other motions that could have advanced Plaintiff's case.[11]

After reviewing the hours claimed by Plaintiff for work performed in connection with denied motions that did nothing to advance Plaintiff's case, the Court concludes that is appropriate to deduct 72.4 hours from hours claimed by Plaintiff's counsel, as shown in the chart below.

| Motion | ECF No. | Hours Deducted | Basis for Excluding |
|---|---|---|---|
| Motion to Extend Time for Discovery | 74 | 1.8 | Motion necessitated as a result of counsel's lack of diligence. [84.] |
| Motion to Compel Answers to Discovery | 76 | 3.5 | Motion was unreasonable in light of case law and arguments raised by Plaintiff. [104.] |
| Motion to Vacate Magistrate Discovery Order | 86 | 6 | Motion was unreasonable in light of case law, arguments raised by Plaintiff, and discretion in |

---

[11] The Court also has not excluded time spent on Plaintiff's motion to compel answers to interrogatories and for sanctions [89]. Although Magistrate Judge Gilbert denied the motion on the grounds that requiring a formal answer by Defendants was an unnecessary formality, he also recognized that Defendants should have provided a formal response to Interrogatory No. 15. [119.]

14

| | | | |
|---|---|---|---|
| | | | controlling discovery given to magistrate judges. [104.] |
| Motion for Sanctions for Destroying Documents | 100 | 39.8 | Motion not supported by the law or facts. [128.] |
| Supplemental Motion for Sanctions | 115 | 0.3 | Motion added nothing of value to pending motion and was available to Plaintiff at the time pending motion was drafted. [118.] |
| Motion for Sanctions | 120 | 16.1 | Motion denied because Plaintiff's counsel failed to avail himself of procedures adopted by the Court for resolving disputes during depositions. [129.] |
| Motion to Schedule Conference | 136 | 4.9 | Motion was unreasonable given the Court's standard practice and the lack of a clear argument barring summary judgment, which the Court ended up granting in part. [165.] |
| | **Total** | **72.4** | |

### ii. Court Appearances

Defendant argues that the time Mr. Longo billed for traveling and attending court in relation to excessive and unwarranted motions also should be deducted. However, a review of the docket indicates that none of the excessive or unwarranted motions identified above necessitated additional court appearances. The motions were either noticed for days on which the parties had to appear in court for another reason or the Court struck the notice of motion date after ruling on the motion or issuing a briefing schedule for the motion. The Court therefore will not deduct any hours from the time claimed by Plaintiff's counsel for time billed for court appearances related to excessive and unwarranted motions.

### iii.    *Administrative or Better Suited for Support Staff*

Defendant also asks the Court to deduct entries that are administrative in nature or better suited for support staff.   Parties cannot recover attorneys' fees or paralegals' fees for tasks that can be delegated to a non-professional.   *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999);[12]  *Delgado v. Vill. of Rosemont*, 2006 WL 3147695, at *2 (N.D. Ill. Oct.31, 2006); *Morjal v. City of Chicago, Ill.*, 2013 WL 2368062, at *2 (N.D. Ill. May 29, 2013) ("[T]ime spent organizing file folders, preparing document[s], assembling filings, electronically filing documents, sending materials, docketing or logging case events into an internal case tracking system, and telephoning court reporters is noncompensable." (internal quotations omitted)); *Missouri v. Jenkins*, 491 U.S. 274, 288-90 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.").

Here, Defendant challenges 368 entries for reviewing electronic mails from the court, 273 entries for docketing case events, 109 entries for filing court documents electronically, 132 entries for dictating new dates, at least 12 entries to enter notices of motions, 19 entries to check court status, and 93 entries to review stamped filings.

Upon reviewing a sampling of Plaintiff's time entries for reviewing emails from the Court, it appears that most if not all of these time entries relate to time spent by Plaintiff's counsel reviewing the CM/ECF email transmitting a docket entry.   Plaintiff also billed for time spent reviewing the actual docket entry.   For example, on July 5, 2016, Plaintiff's counsel bills 0.1 hours for reviewing an email from the Court regarding an order, as well as 0.1 hours for reviewing the

---

[12] Plaintiff argues that *Spegon* is distinguishable because the defendant "admitted to erring about the limited amount of back overtime pay at the beginning of the lawsuit."   [411, at 25.]   This argument is nonsensical; Plaintiff attempts to distinguish *Spegon* based on a fact having no relevance to whether a prevailing party can recover attorney's fees for clerical work billed at an attorney rate.

actual order. The only entry on the docket for that date is a minute entry entered by the Court (and there were no other orders issued in the immediately preceding days). The Court agrees that it is improper for counsel to bill 0.1 hours for reviewing the transmittal email in addition to reviewing the actual docket entry or document filed. Accordingly, the Court will deduct 36.8 hours from the time claimed by Plaintiff's counsel.[13]

The Court also will deduct 13.2 hours from the time claimed by Plaintiff's counsel for entries relating to dictating new dates. Although it is not entirely clear what tasks Plaintiff's counsel is referring to in these entries, these entries appear to relate to internal calendaring conducted by Plaintiff's attorney. Indeed, Plaintiff does not appear to dispute that these entries are clerical in nature. Instead, Plaintiff argues that because his legal malpractice carrier requires that at least two people maintain the docket, he is entitled to recover fees for time spent on these clerical tasks. However, the fact that Plaintiff's counsel is a sole practitioner who has decided to forgo additional support staff does not entitle him to bill professional rates (*i.e.,* attorney rates or paralegal rates) for clerical work. *Pecha v. Barnhart*, 2008 WL 3850388, at *2 (W.D. Wis. Mar. 8, 2008). Because internal calendaring is clerical in nature and could be delegated to a non-professional, the Court deducts 13.2 hours from the time claimed by Plaintiff's counsel. For the

---

[13] Defendant did not identify a total amount of time claimed by Plaintiff in relation to the clerical time entries. Instead, Defendant used 0.1 hours for each of these entries to estimate how much time Plaintiff claimed for these entries (even though Plaintiff billed more than 0.1 hours for some of these entries). [426, at 10.] The Court concludes that this is reasonable method for roughly calculating the number of hours that should be deducted from Plaintiff's fee petition for these improper billing entries. The Court notes that some of the entries have already been excluded in connection with excessive and improper motions (*e.g.* the time spent filing the motions). Given that many of these clerical entries are for more than 0.1 hours, however, the Court is satisfied that a more precise calculation of the time associated with these clerical entries would actually result in an even greater reduction in the number of hours Plaintiff could claim, even after adjusting for the entries that have already been excluded in connection with excessive and improper motions. Defendant concluded that it would be a waste of time to make the more precise calculation, and the Court agrees.

same reasons, the Court deducts 27.3 hours for docketing case events, 1.9 hours for checking court status, and 9.3 hours for reviewing stamped filings from the time claimed by Plaintiff's counsel.[14]

Although Defendant argues that filing documents and notices of motion are administrative in nature and that hours associated with such tasks should not be credited to Plaintiff at all, the Court concludes that it is reasonable not to delegate these tasks to a non-professional. See, *e.g., Williams v. Z.D. Masonry, Corp.*, 2009 WL 383614, at *5 (N.D. Ill. Feb. 17, 2009) ("In light of the problems that can result from a botched electronic filing, the court will not second-guess the firm's decision that such filing must be overseen by a paralegal."). Still, given that these tasks could have been delegated to a paralegal, Plaintiff only is entitled to the rate that a paralegal would receive for this work. Plaintiff has requested that if the Court finds that Plaintiff cannot recover attorney's fees for time counsel spent performing work that was clerical or administrative in nature, that the Court award Plaintiff the hourly rate a paralegal would receive for the same work. The Court will only do so to the extent that a paralegal could recover fees for the work. Plaintiff cited to cases awarding paralegals hourly rates ranging from $90 per hour, *Franks v. Mkm Oil, Inc.*, 2016 WL 861182, at *9 (N.D. Ill. Mar. 7, 2016), to $195 per hour, *Webb v. CBS Broad., Inc.*, 2011 WL 4501366, at *2 (N.D. Ill. Sept. 28, 2011). Defendant has not taken a position on the reasonable hourly rate for paralegals in civil rights cases. Based on a review of the cases cited by Plaintiff, the Court finds that an hourly rate of $125 is reasonable for the paralegal work performed in this matter. Accordingly, Plaintiff is awarded $125 per hour for the 10.9 hours spent filing court documents electronically and 1.2 hours spent drafting notices of motions.

---

[14] Defendants objected to these entries in their January 25, 2017 letter to Plaintiff, and the Court specifically asked that Plaintiff respond to these objections [357, at 3]. The letter is included in Defendant Rosebud's response to Plaintiff's fee petition. [See 426, at 19-30.] Again, Plaintiff does not disagree with Defendants' characterization of these entries as clerical, nor did Plaintiff object to Defendants' representation regarding the number of entries associated with each of the challenged tasks.

The Court also has reviewed Defendant's line-by-line objections to counsel's billing entries on the grounds that they were clerical in nature. However, Plaintiff points out that Defendant has billed its client for similar tasks.[15] [See 411, at 26 n.24.] Accordingly, the Court will not strike these entries. *Valerio v. Total Taxi Repair & Body Shop, LLC*, 82 F. Supp. 3d 723, 744 (N.D. Ill. 2015), amended, 2015 WL 3962573 (N.D. Ill. June 25, 2015) ("The Court notes that many of Defendants' attorneys' time entries provide the same level of detail as Plaintiffs' attorneys, and therefore, the Court will not strike these time entries.").

In sum, the Court is deducting 100.6 hours from the time claimed by Mr. Longo at his hourly rate for attorney work. However, the Court will award a paralegal rate of $125 per hour for 12.1 of those hours.

### iv. *Peripheral Matters*

Defendant also challenges attorney's fees claimed for "conversations with another attorney relating to deposition questions to ask about alleged immigration status and inquiries with area law schools about a mock jury trial." [426, at 27.] Although Plaintiff contends that "at least some of these" entries are compensable, Plaintiff has agreed to deduct 4.5 hours from his claimed hours. Plaintiff asks, however, that he be credited 3.8 hours for work relating to a May 4, 2016 hearing which he inadvertently excluded from the time records he provided. The Court has confirmed that there indeed was a hearing on that day. [269.] Defendant Rosebud has not challenged Plaintiff's request to add 3.8 hours to his recoverable hours. Accordingly, the Court will credit

---

[15] The Court will not compare each line-by-line objection to each of Defendant's billing entries to determine whether Defendant also billed for the same category of clerical tasks. Plaintiff has identified enough of Defendant's billing entries that are similar enough to the line-by-line entries challenged by Defendant for the Court to find that it would be hypocritical to allow Defendant generally to stand on those objections. However, the same cannot be said of the clerical entries Defendant specifically referenced in its Rule 54.3 letter to Plaintiff and its response to Plaintiff's fee petition. The Court therefore still will deduct time associated with those entries, as discussed above.

Plaintiff with an additional 3.8 hours. Both of these adjustments already are accounted for in the total number of hours claimed by Plaintiff's counsel.

*v.*      ***Block Billing and/or Vague Entries***

Defendant objects to the lack of detail in many of the time entries submitted by Plaintiff's counsel, characterizing those entries as "block billing" and complaining that entries made in such fashion render any assessment of the reasonableness of the time spent on specific tasks extremely difficult, if not impossible. The Seventh Circuit has stated that "although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank & Trust Co.*, 433 F.3d 558, 569 (7th Cir. 2006). The standard for evaluating the amount of itemization and detail in time entries in a fee petition, to the extent that there can be said to be one, appears to be based on the market—that is, "the level of detail paying clients find satisfactory." *Garcia v. City of Chicago*, 2003 WL 22175622 (N.D. Ill. Sept. 19, 2003). In addition, the time entries must be "sufficiently detailed to permit the Court to determine whether the hours expended were reasonable and necessary to the conduct of the litigation." *Reid v. Unilever United States, Inc.*, 2015 WL 3653318, at *8 (N.D. Ill. June 10, 2015) (quoting *Gibson v. City of Chi.*, 873 F. Supp. 2d 975, 986 (N.D. Ill. 2012)).

Defendant argues that many of Plaintiff's billing entries are improper because "it is impossible to determine what was done, let alone distinguishing between researching and drafting." [426, at 11.] For example, Defendant challenges Plaintiff's February 9, 2013 billing entry, which states, "[r]esearch to prepare motion to dismiss defendant's [sic] affirmative defenses[.]" [426, at 11.] Similarly, Defendant challenges Plaintiff's November 22, 2016 entry, which states "[c]ontinuing to draft defendant's [sic] posttrial motion; research, review, revise response[.]" Plaintiff responds that Defendant's own billing records also contain a number of

20

similar entries. For example, Defendant's June 2, 2014 billing entry simply states "[r]eview and revise memorandum in support of motion for summary judgment."

However, most of the billing entries Plaintiff challenges contain much more detail than the billing entries Defendant challenges. For example, Plaintiff argues that the following of Defendant's billing entries are "true block billing":

- **Defendant's August 7, 2013 entry**. "Research re: Smith residences in Arizona; Respond to communications from Longo re: discovery; Continued preparation of deposition outline for Smith deposition; Continued background law for summary judgment assessment and for same[.]"

- **Defendant's March 5, 2014 entry.** "Review court docket, motion history and background rules and law for motion for attorney's fees and motion to strike; Research background documents underlying prior sanctions against Longo[.]"

- **Defendant's July 27, 2015 entry**. "Update research on same sex harassment and Illinois Gender Violence Act for trial preparation and pretrial filings; Commence preparation of arguments to refute same sex harassment theory based on new caselaw; Evaluate contents for trial brief and necessity of same; Continued evaluation of jury instructions."

- **Defendant's May 10, 2016 entry.** "Review court communication re: proposed briefing schedule and requirements; Respond to same; Research re: standards for determining credibility at bench trial; Commence preparation of finding of facts[.]"

As discussed above, although block billing is not itself prohibited, a prevailing party seeking to recover attorney's fees still must provide sufficient detail for the Court to determine whether the hours expended were reasonable and necessary to the conduct of the litigation. Although Defendant's time entries are sometimes lacking in details, they are for the most part sufficiently detailed. For example, Defendant's entries for time spent researching generally identify the

subject matter being researched.   Similarly, Defendant's entries for correspondence generally contain the subject of the correspondence.

Many of Plaintiff's time entries lack the same detail.   Based on the line-by-line objections submitted by Defendant, the Court concludes that 133.3 hours of the time claimed by Plaintiff— including time claimed in entries using "block billing"—are insufficiently documented.   These entries are identified in the chart below.

***Vague Entries***

| Date | Description | Time |
|------|-------------|------|
| 12/21/2011 | Review materials; review research; draft complaint; analyze various issues | 4.9 |
| 03/30/2012 | Check status of individual defendants | 0.2 |
| 01/22/2013 | Telephone with Ray Thomas, witness | 0.5 |
| 02/09/2013 | Research to prepare motion to dismiss defendant's affirmative defenses | 3.8 |
| 09/22/2013 | Correspondence with Juanita Jones. | 0.3 |
| 10/04/2013 | Review information relating to Plaintiff's witnesses | 0.3 |
| 11/18/2013 | Review documents and prepare deposition questions | 3.4 |
| 11/27/2013 | Review Plaintiff's hourly rate with Rosebud | 0.2 |
| 01/03/2014 | Continue to draft reply to defendant's response to plaintiff's motion to compel | 2.8 |
| 01/29/2014 | Received, reviewed Attorney General's correspondence to discuss case | 0.2 |
| 08/12/2014-09/11/2014 | Nonspecific entries regarding researching and drafting response to defendants' motion for summary judgment | 51.4[16] |
| 08/28/2015 | Review file to prepare pretrial order, motions in limine etc. | 1.8 |
| 08/29/2015 | Review file to prepare pretrial order, motions in limine etc. | 0.5 |

---

[16] Defendant only objected to some of the billing entries relating to drafting a response to Defendants' motion for summary judgment.   The Court only is deducting hours for entries Defendant identified as objectionable.

| | | |
|---|---|---|
| 09/04/2015 | Continuing to review documents, legal research to prepare motions in limine, pretrial order | 3.3 |
| 10/07/2015 | Review material regarding Gary Holloway | 0.2 |
| 11/26/2015 | Correspondence with attorney concerning a similar case | 0.2 |
| 12/15/2015 | Research regarding issue requested by Plaintiff | 1.4 |
| 01/02/2016 | Continuing to work relating to motion concerning the defendant's economist | 5.3 |
| 03/10/2016 | Received, reviewed exhibits | 0.4 |
| 04/12/2016 | Begin reviewing materials regarding phase II to determine how to proceed | 0.7 |
| 11/18/2016 | Continue to analyze cases, transcripts, etc., for defendant's posttrial motion; legal research, analyze cases | 8.8 |
| 11/19/2016 | Continuing to review, revise, draft response to defendant's posttrial motion | 6.3 |
| 11/21/2016 | Continuing to draft response to defendant's posttrial motion; analyzing again parts of defendant's posttrial motion, legal research, analyze cases | 6.7 |
| 11/22/2016 | Continuing to draft defendant's posttrial motion; research, review, revise response | 8.4 |
| 11/23/2016 | Continuing to draft defendant's posttrial motion; research, review, revise response; reduce number of pages | 3.3 |
| 11/26/2016 | Continuing to analyze transcripts, draft responses to defendant's posttrial motion | 4.2 |
| 11/30/2016 | Continue to analyze transcripts; continue to review, revise and shorten response to defendant's posttrial motion; continue to draft response to defendant's second posttrial motion | 8.4 |
| 12/01/2016 | Continue to draft responses to defendant's posttrial motions[17] | 5.4 |
| | **Total** | **133.3** |

The Court has not deducted any hours for the time that Plaintiff's counsel claimed on trial

days. The Court's review of counsel's billing entries for trial days may have been easier had

---

[17] Defendant objected to similar billing entries solely on the basis that the hours claimed were excessive, even though the time entries associated with those hours were also vague. The Court has not excluded time for similar entries that were objected to solely on the basis of being excessive.

counsel billed separately for each task.   However, the Court is satisfied that the time claimed by Plaintiff's counsel for these entries is reasonable given the demands the trial would have placed on Plaintiff's counsel, who represented Plaintiff without the help of another attorney.   Defendant also objected to time Plaintiff's counsel billed for travel to Court as inappropriate block-billing, even though these billing entries only listed one task (*i.e.* travel).   The Court concludes that these objections and other objections on vagueness grounds not listed above are meritless.   The Court will credit Plaintiff for half of these hours, and therefore will deduct 66.7[18] hours from the time claimed by Plaintiff's counsel.

### vi.      Excessive, Redundant, or Unnecessary Tasks

Finally, Defendant argues that Plaintiff's claimed hours are unreasonable because they include time spent on excessive, redundant, or unnecessary tasks.   "In determining the reasonable number of hours, [a] court should exclude hours that are 'excessive, redundant or otherwise unnecessary.'"   *Small*, 264 F.3d at 708 (quoting *Hensley*, 461 U.S. at 434).   "In exercising this discretion, the court may properly rely on its own experience to estimate the time reasonably required for the work claimed."   *Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605, 607 (7th Cir. 1982) (citing *Boe v. Colello*, 447 F. Supp. 607, 610 (S.D.N.Y. 1978)).   In this case, the Court agrees that hours should be deducted from Plaintiff's attorney's fees claim for work that was excessive, redundant, and/or unnecessary.

To begin, Plaintiff submitted roughly 3,100 time entries (2,732 entries after adjusting for the 368 entries for reviewing electronic mail from the court already accounted for above) related to preparing and reviewing correspondence, frequently using billing increments of 0.2 hours (*i.e.* 12 minutes) for such entries.   Many of these entries related to simple tasks that should not have

---

[18] The Court rounds to the nearest tenth of an hour, for the sake of simplicity.

taken 0.1 hours, and certainly should not have taken 0.2 hours. For example, Defendant represents that many of these entries relate to short email correspondence no longer than a sentence or two. [426, at 26.] As another example, Plaintiff has nine time entries of 0.2 hours each relating to correspondence to or from the court reporter on June 30, 2016 alone. The Court finds it unlikely that each communication with the court reporter took 12 minutes. Billing in 0.1 and 0.2 hour increments for simple tasks results, on a cumulative basis, in excessive billing that a discerning client would not tolerate. *Taylor v. Law Offices of Vincent Peter Cignarale, LLC*, 2011 WL 6102020, at *2 (N.D. Ill. Dec. 5, 2011) (reducing by two-thirds fees billed in 0.1–hour increments for email review). The Court will reduce by three-fourths the approximately 546.4 hours Mr. Longo billed for preparing and reviewing correspondence and therefore will deduct 409.8 hours from the time claimed by Mr. Longo.[19]

Plaintiff's billing records include many other examples of excessive, redundant, or unnecessary billing entries. For example, on October 15, 2013, Mr. Longo billed 0.4 hours for waiting for a telephone call from Defendants for a meet and confer. Mr. Longo also billed 0.2 hours for reviewing correspondence from Defendants for failing to call at the scheduled time, 0.2 hours for reviewing his calendar to identify alternative date for a meet and confer, 0.2 hours for corresponding with Defendants about an alternative date for a meet and confer, and 0.2 hours for

---

[19] Since Plaintiff billed 0.2 hours for most of these entries, the Court uses 0.2 hours per entry to approximately calculate the number of hours Plaintiff billed for preparing and/or reviewing correspondence. The Court notes that Plaintiff does have some entries of 0.1 hours for reviewing correspondence, but a review of those entries indicates that Plaintiff's counsel failed to exercise prudent billing judgment with respect to those entries. For example, Plaintiff billed 0.1 hours for reviewing emails from opposing counsel regarding being out of the office. It is unreasonable for counsel to bill 0.1 hours for reviewing an email that likely took a matter of seconds to review. Furthermore, Plaintiff sometimes bills more than 0.2 for preparing and/or reviewing correspondence. The Court therefore concludes that it is fair and appropriate to use 0.2 hours per entry to approximately calculate the number of hours Plaintiff billed for preparing and/or reviewing correspondence.

a call about Defendants' failure to call for the meet and confer.   In total, Mr. Longo billed 1.2 hours for a meet and confer that never occurred.   Even if Defendants had no justification for missing a scheduled meet and confer—on which the Court takes no position—it is unreasonable to bill 1.2 hours for a conference call that never occurred.   Plaintiff's counsel billed for many other tasks that same day, and he could have worked on those other tasks while waiting for Defendants to call.   And billing 0.8 hours for rescheduling a conferences call is unreasonable and excessive.

By way of another example, Plaintiff's counsel bills for the following tasks in connection with reviewing court orders on December 14, 2015:

| Task | Time |
|---|---|
| Received, reviewed electronic mail from court regarding court order regarding plaintiff's motion for directed verdict | 0.1 |
| Received, reviewed court order | 0.1 |
| Received, reviewed electronic mail from court regarding court order | 0.1 |
| Received, reviewed court order | 0.1 |
| Received, reviewed electronic mail from court regarding continuation of trial | 0.1 |
| Received, reviewed court order | 0.1 |
| Received, reviewed electronic mail from court regarding court order | 0.1 |
| Received, reviewed court order | 0.1 |
| Received, reviewed electronic mail regarding court order | 0.1 |
| Received, reviewed court order | 0.1 |
| **Total** | 1.0 |

The only orders entered by the Court on that day were the following minute orders:

| Date | ECF No. | Text |
|---|---|---|
| 12/14/2015 | 244 | MINUTE entry before the Honorable Robert M. Dow, Jr: Jury trial held and continued to 12/15/2015 at 9:45 a.m. Mailed notice (cdh, ) (Entered: 12/14/2015) |
| 12/14/2015 | 245 | MINUTE entry before the Honorable Robert M. Dow, Jr: Plaintiff's oral motions for directed verdicts are taken under advisement. Mailed notice (cdh, ) (Entered: 12/14/2015) |

Plaintiff's counsel could not have spent an hour reading these two minute entries.

Mr. Longo's billing records are replete with such questionable entries. Mr. Longo appears to bill 0.2 hours for reviewing each minute entry entered by the Court. Mr. Longo also billed 0.2 hours for reading each deposition notice and rider. He billed 0.1 hours for reviewing numerous out-of-office emails. On February 24, 2012, Mr. Longo billed 1.2 hours in connection with reviewing two attorney appearances. On September 24, 2013 alone, Mr. Longo billed 2.6 hours in relation to scheduling depositions, with at least 1.7 hours of that time relating to the scheduling of the deposition of Corey Barr.

Additionally, the Court has concerns about the accuracy of many of Plaintiff's billing records. Defendant identified numerous instances of duplicative billing for the same task. For example, Mr. Longo bills a total of 0.6 hours in connection with January 29, 2016 minute entry resetting a status hearing, billing twice for reviewing the transmittal email, the separate minute entry, and calendaring the new date. By way of another example, Mr. Longo bills a total of 0.4 hours in connection with an August 15, 2012 one-sentence minute entry. [20]

Given the number of entries Plaintiff's counsel is claiming for excessive, redundant, or unnecessary work in the 200 plus pages of billing records submitted by Plaintiff, the Court finds it prudent to deduct a percentage of the remaining hours from the time claimed by Plaintiff's counsel. The Court therefore will reduce the overall attorney time claimed by Mr. Longo—after all other reductions have been applied—by 10 percent. This results in a reduction of 188.2 hours.[21] *Fields v. City of Chicago*, 2018 WL 253716, at *9 (N.D. Ill. 2018) (applying an across-

---

[20] The Court acknowledges that it has already accounted for some of these improper entries elsewhere in this order and accounts for that fact in making its overall percentage reduction. In other words, the Court is not double counting these deficiencies. The Court references these entries as examples of billing entries that call into question the accuracy and completeness of Mr. Longo's billing records as a whole.

[21] For the reasons discussed above, the Court has deducted 649.5 hours from the 2,531.8 hours claimed by Plaintiff's counsel before making the across-the-board reduction. Taking 10% of the remaining 1,882.3

the-board reduction in the hours claimed by a law firm to account for duplicative billing); *Envirogen Techs., Inc. v. Maxim Constr. Corp., Inc.*, 2017 WL 5904663, at \*6 (N.D. Ill. Jan. 24, 2017) (applying an across-the-board reduction in the number of hours recoverable as a result of concerns relating to the thoroughness of submissions).

In sum, the Court is deducting a total of 598 hours for excessive, redundant, or unnecessary work performed by Mr. Longo.   After making the adjustments discussed above, the lodestar is $611,388.50.

| Rate | Total Adjusted Hours | Adjusted Rate | Adjusted Fees |
|------|----------------------|---------------|---------------|
| Attorney Rate | 1,694.1 | $360 | $609,876.00 |
| Paralegal Rate | 12.1 | $125 | $1,512.50 |
| | | Total | **$611,388.50** |

## C.     Lodestar Adjustment

The Court determines that the lodestar of $611,388.50 is presumptively reasonable, and the Court does not find any basis for either an upward or downward adjustment.   Although Plaintiff argues that an adjustment in this case is appropriate because of the risk associated with the case, Plaintiff recognizes that pursuant to the Supreme Court's decision in *City of Burlington v. Dague,* 505 U.S. 557, 566 (1992), risk enhancements are not appropriate under federal law when using the lodestar method for calculating a party's reasonable attorney's fees.   [411, at 31.]   Strangely, after recognizing that the contingency nature of Plaintiff's claim cannot be used to enhance the lodestar after it is determined, Plaintiff argues that the contingency nature of his claims "can increase the applicable considerations when determining the lodestar."   [411, at 31 (citing; *Pennsylvania v. Delaware*, 483 U.S. 711, 726 (1987).]<sup>22</sup>   However, neither of the cases cited by

---

hours results in a reduction of 188.2 hours.   Again, for the sake of simplicity, the Court has rounded to the nearest tenth of an hour in making this calculation.

<sup>22</sup> Plaintiff also argues that an enhancement of the lodestar is permitted under Illinois law.   [411, at 31.]

Plaintiff support this assertion. One of the cases cited does not even discuss the lodestar method. *Blum v. Stenson*, 465 U.S. 886, 888 (1984). The other case applies the multiplier to the lodestar— it does not use a multiplier as part of its calculation of the lodestar. *Pennsylvania v. Delaware*, 483 U.S. 711, 726 (1987). Regardless, to the extent that *Blum* and *Pennsylvania*—both of which were decided before *Burlington*—applied a risk multiplier, the cases are no longer good law in light of *Burlington*. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 645 (7th Cir. 2011) ("[C]ourts cannot enhance the lodestar to account for the risk of nonpayment incurred by attorneys who take cases pursuant to contingent fee agreements." (citing *Burlington*, 505 U.S. at 567 (1992)).

Furthermore, although Plaintiff's counsel obtained a substantial judgment on Plaintiff's behalf in the Phase I jury trial, Plaintiff was not nearly as successful in the Phase II bench trial. As discussed above, Defendants successfully impeached Plaintiff, casting doubt on his credibility. Additionally, both this Court and Magistrate Judge Gilbert have noted deficiencies in counsel's performance. [See, *e.g.*, 84 (Noting Plaintiff's lack of diligence resulting in a discovery dispute regarding an extension of time to complete discovery).] Accordingly, the Court finds that an upward adjustment to the lodestar is unwarranted.

A downward adjustment also is inappropriate. Defendant argues that Plaintiff's claimed attorney's fees must be proportional to a reasonable estimate of the value of his claims. The Seventh Circuit has "rejected the notion that the fees must be calculated proportionally to damages." *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009) (quoting *Alexander v. Gerhardt Enterprises, Inc.*, 40 F.3d 187, 194 (7th Cir. 1994)). Still, the Seventh Circuit has explained that "a district court may consider proportionality as one factor in determining a reasonable fee." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574

However, as discussed above, Plaintiff is not entitled to attorney's fees under the IGVA.

F.3d 852, 857 (7th Cir. 2009); see also *Sommerfield v. City of Chicago*, 863 F.3d 645, 652 (7th Cir. 2017) (recognizing same). Even though Plaintiff requested $1,392,490.00 in attorney's fees, the lodestar only is $611,388.50. In light of Plaintiff's judgment of approximately $570,000, a downward adjustment of the lodestar on the grounds of proportionality is inappropriate. *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542 (7th Cir. 2009) (holding that district court erred in reducing attorney's fees on the ground of proportionality where Plaintiff sought over $50,000 in fees for a judgment of approximately $6,500); see also *Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585 (7th Cir. 2000) (affirming fee award of over $391,000 for a jury verdict awarding plaintiff $137,000 in damages).

### D.    Apportionment of Attorneys' Fees and Costs

Because no party addressed how to apportion attorney's fees in the initial briefing on Plaintiffs' fee petition, the Court requested that the parties file supplemental briefs addressing the issue. [464.] Defendant Rosebud Farmstand chose "not to address how the Court may apportion attorney's fees among the Defendants." [466, at 1.] Plaintiff filed a two-page brief asserting that Defendants should be jointly and severally liable, but failed to cite any statute or authority in support of his position. [467.] Having failed to properly argue and support their respective positions despite being asked to do so by the Court,[23] Plaintiff and Defendant Farmstand have waived any argument with respect to how to allocate fees.[24] It is not the duty of the court to make

---

[23] In its May 15, 2018 order, the Court gave the parties the opportunity to address issues not addressed in their initial round of briefing due to a misunderstanding of an earlier order from the Court. [464.] Although the Court indicated that the parties could elect to stand on their prior submissions with respect to those issues, the Court specifically requested that the parties address how to apportion fees among the Defendants with judgments against them. *Id.*

[24] Although Defendants Mendoza and Castaneda did not file responses to Plaintiff's fee petition or the Court's request for supplemental briefing, as discussed above, this appears to be because they were never served as they are not electronic filers.

parties' arguments for them. *Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995); see also *First Indiana Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992) ("[The appellant] has waived this issue, for he has failed to cite any pertinent authority for his argument[.]"); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]").

Even if Plaintiff and Defendant Rosebud had not waived any arguments on this issue, the Court nonetheless would have concluded that Plaintiff is not entitled to attorneys' fees from Defendants Mendoza and Castaneda. Plaintiff seeks attorney's fees against all Defendants pursuant to 42 U.S.C. § 2000e-5(k), which is the fee-shifting provision in Title VII. However, Plaintiff's only successful claims against Defendants Mendoza and Castaneda were under the IGVA. [248.] Although that statute has a fee-shifting provision, that fee-shifting statute is permissive.[25] See 740 Ill. Comp. Stat. Ann. 82/15 ("A judgment ***may*** also include attorney's fees and costs." (emphasis added)); see also *Chemetall GMBH v. ZR Energy, Inc.*, 2002 WL 23826, at *2 (N.D. Ill. Jan. 8, 2002) (discussing the permissive nature of similar Illinois fee-shifting statutes; "Case law decided under [815 ILCS 505/10a(c)] has confirmed that the use of the word 'may' means that an award of fees to the prevailing party is discretionary rather than mandatory[.]").

In determining whether to award attorneys' fees under permissive fee shifting statutes in Illinois, courts consider "(1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the

---

[25] Although § 1988 and § 2000e-5(k) also contain permissive language, the Supreme Court has held that those statutes require an award of attorney's fees to the prevailing plaintiff absent "special circumstances." *Hensley*, 461 U.S. at 423 n.7, 429.

31

opposing party would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all consumers or businesses or to resolve a significant legal question regarding the Act; and (5) the relative merits of the parties' positions." *Krautsack v. Anderson*, 861 N.E.2d 633, 644 (Ill. 2006) (quoting *Graunke v. Elmhurst Chrysler Plymouth Volvo, Inc.*, 617 N.E.2d 858, 863-64 (Ill. App. Ct. 2d Dist. 1993), abrogated on other grounds).

With respect to the first factor, the jury verdict reflects a view that Defendants Mendoza and Castaneda were culpable and that they behaved inappropriately in the workplace—either by perpetrating or failing to stop untoward acts directed at Plaintiff. However, the Court does not see any basis for concluding that Defendants Mendoza and Castaneda acted in bad faith through the course of the litigation.[26] *Cf. Purepecha Enterprises, Inc. v. El Matador Spices & Dry Chiles*, 2013 WL 3388869, at *5 (N.D. Ill. July 8, 2013) (awarding attorney's fees based on conduct causing "unnecessary delay and a needless increase in the cost of this litigation"). Accordingly, the first factor weighs somewhat in favor of awarding Plaintiff attorney's fees under the IGVA.

With respect to the second factor, Defendants Mendoza and Castaneda would have a difficult time paying for any fee award in this case. Even though these Defendants paid the judgments against them, their prior counsel previously explained in court that it was difficult for them to do so. Defendant Mendoza even had to borrow money from his family members just to pay the judgment against him. Mendoza is paid a modest wage, and although Castaneda has a management position at the grocery store, he is not highly paid, either. Accordingly, the second factor also weighs against awarding Plaintiff attorney's fees under the statute.

---

[26] The Court notes that a finding of bad faith is not a prerequisite to a fee award. See *Raybourne v. Cigna Life Ins. Co. of New York*, 700 F.3d 1076, 1090 n.6 (7th Cir. 2012).

With respect to the third factor, awarding attorney's fees in this case will not have any deterrent effect sufficient to justify the imposition of attorney's fees. While it always can be said that an award of attorneys' fees—which increases the amount that a defendant must pay to the plaintiff—might have some deterrent effect, that can be said in every case. Courts therefore look to "whether there is anything about the particular circumstances of this case that would provide some extra deterrent effect." See *Chemetall GMBH v. ZR Energy, Inc.*, 2002 WL 23826, at *6 (N.D. Ill. Jan. 8, 2002). Nothing before the Court indicates there is. Indeed, Defendants Mendoza and Castaneda already paid judgments representing substantial sums of money to them, which provides an ample deterrent message that would not be significantly enhanced by awarding fees.

With respect to the fourth factor, there is nothing before the Court establishing that Plaintiff sought to benefit the public as a whole, or that this lawsuit required the Court to resolve a significant legal question. Since the Court has no information on this factor, the fourth factor is neutral. *Prather v. Sun Life & Health Ins. Co. (U.S.)*, 852 F.3d 697, 699 (7th Cir. 2017) ("We have no information about factor 4, so let's forget it.").

Finally, given that both liability and punitive damages against Defendants Mendoza and Castaneda were close calls in this case—as discussed in the Court's remittitur order—the final factor weighs against awarding attorney's fees against Defendants Mendoza and Castaneda. *Chemetall GMBH v. ZR Energy, Inc.*, 2002 WL 23826, at *5 (N.D. Ill. Jan. 8, 2002) ("[T]he closeness of both the liability and punitive damages issues weighs against an award of fees.").

The Court recognizes that there may be other facts relevant to the factors discussed above but not addressed by the Court. Although the Court is very familiar with the facts of this case after having presided over the trial and ruled on numerous substantive motions, it is not the Court's

obligation to scour the record and make the parties arguments for them. *Burns v. Vill. of Crestwood*, 2016 WL 946654, at *2 (N.D. Ill. Mar. 14, 2016) (citing *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015)). Plaintiff failed to properly present his fee petition with respect to Defendants Mendoza and Castaneda, seeking fees under the incorrect statute and failing to properly respond to the Court's request for supplemental briefing.[27] Defendant Rosebud also failed to discuss whether it should be responsible for all or only a portion of any fees awarded in its response brief and declined to address the issue when specifically asked to do so by the Court.

Because Plaintiff has not shown that he is entitled to attorney's fees from Defendants Mendoza and Castaneda, the Court must determine whether Defendant Rosebud is liable for all of Plaintiff's recoverable fees or only a portion of Plaintiff's recoverable fees. The Seventh Circuit has recognized "[w]here several claims arise out of a common factual core or are based on related legal theories, separating out the legal services rendered with respect to these overlapping claims would be an exercise in futility." *Munson v. Milwaukee Bd. of Sch. Directors*, 969 F.2d 266, 272 (7th Cir. 1992) (quoting *Zabkowicz v. W. Bend Co., Div. of Dart Indus.*, 789 F.2d 540, 551 (7th Cir. 1986)). This issue primarily comes up when a plaintiff brings multiple claims against the same defendant, but a fee-shifting statute only applies to some of the plaintiff's claims. See, *e.g., id*. However, when claims against multiple defendants arise out of a common factual core and are overlapping, separating out the legal services rendered is no less an exercise in futility. In this case, Plaintiff's claims against Defendants Mendoza and Castaneda were based on a subset of the misconduct that served as the basis of Plaintiff's claims against Defendant Rosebud. It would be an exercise in futility to attempt to separate out the legal services rendered with respect to

---

[27] This is in addition to failing to serve the fee petition on Defendants Mendoza and Castaneda in the first place.

Plaintiff's overlapping claims. Accordingly, Defendant Rosebud is responsible for all of Plaintiff's recoverable attorney's fees and costs.[28]

### E. Miscellaneous Arguments

In their submissions, the parties raise a number of arguments that are not properly supported or that are lacking in merit.

For example, Defendant Rosebud argues that Plaintiff should only be able to recover attorney's fees for 1,377.2 hours of work—the time Defendants' attorneys spent on the case minus 195.8 hours Plaintiff spent on what Defendant characterizes as meritless motions. However, Defendant does not cite to any authority supporting the proposition that the Court can or should limit the amount of attorney's fees Plaintiff can recover to the amount Defendants together paid to its attorneys. Defendant's argument also overlooks the facts that Plaintiff (a) had the burden of proof and (b) won a substantial victory. In any event, Defendant's proposed approach would be inconsistent with lodestar analysis applied by the Court above.

By way of another example, in his reply, Plaintiff argues that Defendants have waived any argument challenging the reasonableness of his claimed attorney's fees based on their failure to comply with Local Rule 54.3. [454, at 3-4.] However, Plaintiff did not raise this argument in

---

[28] Even if the Court found that the Plaintiff was entitled to attorney's fees from Defendants Mendoza and Castaneda, it would be unfair to hold Defendants Mendoza and Castaneda jointly and severally liable for all of Plaintiff's attorney's fees. The Court's significant discretion in awarding fees extends to the Court's determination of how best to allocate fees among numerous defendants. *Herbst v. Ryan*, 90 F.3d 1300, 1305 (7th Cir. 1996). "[T]he district court should make every effort to achieve the most fair and sensible solution that is possible, and ought to make this assessment without transforming the consideration of a fee petition [into a] second major litigation." *Id.* (internal citations and quotations omitted). The misconduct that served as the basis for Plaintiff's IGVA verdict against Defendant Mendoza and Castaneda represents a small portion of the overall misconduct presented at trial. [337, at 53-56 (discussing the limited evidence supporting Plaintiff's IGVA claims).]. Furthermore, it would be unlikely that Defendant Mendoza and Castaneda—who had a difficult time paying the relatively small judgments against them—could bear the full burden of all of Plaintiff's recoverable attorney's fees.

his opening brief. Plaintiff also devotes a significant portion of his fee petition generally arguing that Defendants unnecessarily caused Plaintiff to incur additional attorney's fees. As this Court has repeatedly recognized, this case has not been litigated efficiently by either side. However, Plaintiff's criticisms go too far. For example, Plaintiff faults Defendants for—among other things—filing a motion for a new trial or reduction of damages through remittitur. [411, at 18.] But the Court granted the motion in part, which resulted in Plaintiff accepting a substantial remittitur. [337; 341.] Furthermore, Plaintiff's general attack on the work performed by defense counsel fails to address Defendant's specific objections to the time claimed by Plaintiff's counsel.

There are additional minor skirmishes between the parties set out in the briefs that the Court has considered but do not merit discussion other than to say that they are insubstantial and their resolutions would not affect the final fee award in this case. Suffice to say that the law of diminishing marginal returns has kicked in long ago on this final chapter of the case.

### F. Fees on Fees

One final issue remains. Plaintiff seeks leave to present his time records dating after June 6, 2017, noting that a prevailing party is entitled to attorney's fees for time spent on a fee petition. It is well-established that a prevailing plaintiff in a civil rights case may in some circumstances recover fees on fees. See *Ustrak v. Fairman*, 851 F.2d 983, 987-90 (7th Cir. 1988). The Court notes, however, that that a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The Seventh Circuit has repeatedly frowned upon the fact that "lawyers litigate fee issues with greater energy and enthusiasm than they litigate any other type of issue." *Spegon*, 175 F.3d at 554 (quoting *Ustrak v. Fairman*, 851

F.2d 983, 986-87 (7th Cir. 1988)).   The preceding thirty-six pages confirm that these admonitions did not have the desired effect in this case.[29]

As the seminal case on attorney's fees explains, a fee applicant should exercise "billing judgment" and "make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."   *Hensley*, 461 U.S. at 434.   Here, out of nearly 250 pages in billing records reflecting 2,531.8 hours of work, Plaintiff only excluded 0.6 hours from his claimed hours.   Given all of the deficiencies raised by Defendant and upheld by the Court, Plaintiff's failure to winnow his claimed hours down demonstrates an astounding lack of billing judgment.   The Seventh Circuit has repeatedly reaffirmed that "a fees award for fees litigation can be reduced even to nothing, so that the award is 'reasonable' when considered "in light of all the circumstances of the case.'"   *In re Burlington Northern, Inc. Employment Practices Litig.*, 832 F.2d 430, 434 (7th Cir. 1987) (quoting *Muscare v. Quinn*, 680 F.2d 42, 44 (7th Cir. 1982)); see also *Muscare*, 680 F.2d at 45 (holding that "the district judge had discretion to deny the plaintiff's second fee request in its entirety" and that "[o]nly in extraordinary circumstances will we disturb a district judge's exercise of his discretion in awarding or denying fees for establishing fees").

Taking "a look at the litigation in its two phases—merits and fees—and from this examination, structur[ing] an award that is reasonable in light of all the circumstances of the case" (*Sommerfield v. City of Chicago*, 2017 WL 3675722, at *5 (N.D. Ill. Aug. 25, 2017)), the Court declines to award any "fees on fees" in this litigation.   Regrettably, the fee litigation in this case

---

[29] Furthermore, the Court notes that—out of nearly 250 pages in billing records reflecting 2,531.8 hours of work—Plaintiff only excluded 0.6 hours from his claimed hours.   Given all of the deficiencies noted by Defendant, Plaintiff's failure to winnow his claimed hours down demonstrates a lack of billing judgment. In exercising "billing judgment," the Supreme Court emphasized that counsel for the prevailing plaintiff should "exclude from a fee request hours that are excessive, redundant, or *otherwise unnecessary,* just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."   *Hensley,* 461 U.S. at 434 (emphasis added).

represents an instance of what baseball great Yogi Berra would have called "déjà vu all over again," as less than a year ago, in *Sommerfield*, Judge Leinenweber "cut down on the fees awarded for work on the merits" on account of Mr. Longo's "inflated bill," which he submitted after exercising "no 'billing judgment,'" and then found at the fee stage "no reason to increase Longo's fees beyond what it has awarded him" on the merits. *Id*. at *1-*5. To be sure, in this case Mr. Longo won a far more substantial victory than he won in *Sommerfield*, and the Court's merits award here takes that difference into account. Nevertheless, as in *Sommerfield*, the fee litigation amounted to an excruciating exercise in sustaining defense objections to entries that Mr. Longo should have screened out on his own had he taken the Supreme Court's, the Seventh Circuit's, and Judge Leinenweber's and Magistrate Judge Cole's guidance to heart. In these circumstances, the more than $600,000 that the Court has awarded amply compensates Mr. Longo for his work on this case.

### G. Costs

The Court also awards Plaintiff $3,868.71 in agreed costs [see 342, at 1], which as noted above (see n.1, *supra*) are to be paid by Defendant Rosebud Farmstand.

## III. Conclusion

For the foregoing reasons, the Court awards Plaintiff $611,388.50 in attorney's fees and $3,868.71 in costs, for a total amount of $615,257.21 to be paid by Defendant Rosebud Farmstand.

Dated: August 23, 2018

_____
Robert M. Dow, Jr.
United States District Judge