In the

# United States Court of Appeals

### For the Seventh Circuit



CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

No. 17-2626

ROBERT SMITH,

                                *Plaintiff-Appellee*,

                    *v.*

ROSEBUD FARM, INC., d/b/a ROSEBUD FARMSTAND,

                                *Defendant-Appellant*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:11–cv–09147 — **Robert M. Dow, Jr.**, *Judge*.

_____

ARGUED MAY 29, 2018 — DECIDED AUGUST 2, 2018

_____

Before BAUER, BARRETT, and ST. EVE, *Circuit Judges*.

BARRETT, *Circuit Judge*. Robert Smith worked behind the meat counter at Rosebud Farm, a local grocery store. After several years of ongoing sexual and racial harassment from his male coworkers and supervisor, Smith sued Rosebud. He claimed various violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Illinois Gender Violence Act.

The jury returned a verdict for Smith. Rosebud appeals, maintaining that the district court erred in denying its motions for judgment as a matter of law and a new trial.

Rosebud argues that it was entitled to judgment as a matter of law on Smith's Title VII sex discrimination claim. To win, Smith had to show more than unwanted sexual touching or taunting; he had to show that the harassment occurred because of his sex. Rosebud contends that Smith's evidence demonstrates that the other men in the shop engaged in "sexual horseplay," not sex discrimination. But Rosebud is wrong about that: the evidence supports the inference that Smith's coworkers harassed him because he was male. The shop was a mixed-sex workplace, and only men were groped and taunted. Because men were treated differently from women at Rosebud, a reasonable jury could conclude that Smith was tormented because of his sex.

Rosebud also insists that the district court should have awarded it judgment as a matter of law on Smith's § 1981 retaliation claim and granted a new trial because of inflammatory statements that Smith's counsel made during his closing argument. But Rosebud did not raise either of these arguments below, so it has forfeited them. Its challenges to the judgment uniformly fail.

I.

In 2003, Robert Smith began working as a butcher at Rosebud Farm, a small grocery store on the south side of Chicago.[1] Smith had been on the job for less than three weeks when his

---

[1] Because the jury returned a verdict in Smith's favor, we construe all facts and reasonable inferences in the light most favorable to him. *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 661 (7th Cir. 2001).

male coworkers behind the meat counter began harassing him by grabbing his genitals and buttocks. Over the next four years, that behavior was consistent, if not constant. At trial, Smith recalled the many times his coworkers groped him, grabbed him, and even reached down his pants. They repeatedly mimed oral and anal sex, both on Smith and on each other. Carlos Castaneda, Smith's supervisor, not only knew about the harassment, but he even participated once or twice. And the group did not stop at aggressive sexual contact— they also targeted him for his race, using racial epithets and telling him "go back to Africa."

Smith complained about the sexual harassment multiple times to no avail. In January of 2008, he decided that enough was enough. He filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights, alleging that his coworkers had sexually harassed him. He also claimed that Castaneda had discriminated against him based on his race by giving him fewer weekly work hours and sending him home for nine days without pay.

When Castaneda received notice of the discrimination charges, he told the meat-counter employees to stop "goofing off" and quit the "horseplay." Smith's coworkers changed their behavior after their meeting with Castaneda, but not for the better. Behind the meat counter, they banged their cleavers menacingly at him and passed by him with large knives pointing out of the meat trays they carried. Smith found his car—which he parked in the gated, employee-only lot—with slashed tires and a cracked windshield. Smith became increasingly frightened at work, and he quit his job in June 2008 because of the "intolerable" working conditions.

Case: 1:11-cv-09147 Document #: 481 Filed: 08/24/18 Page 4 of 11 PageID #:8660
Case: 17-2626 Document: 00713273470 Filed: 08/24/2018 Pages: 11

4 No. 17-2626

After the EEOC issued him a Notice of Right to Sue, Smith brought a host of claims against Rosebud and its employees, seeking compensatory and punitive damages, as well as attorneys' fees and costs. Four of Smith's claims went to trial: sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; race discrimination under 42 U.S.C. § 1981; retaliation under both statutes; and violations of the Illinois Gender Violence Act, 740 ILCS 82/1, by two Rosebud employees, including the general manager, Carlos Castaneda.[2] The jury returned a verdict for Smith on all claims.[3]

Rosebud raises three issues on appeal. It claims that the district court should have granted it judgment as a matter of law on the sexual harassment claim, because Smith failed to prove that his male coworkers discriminated against him because of his sex. It argues that it was also entitled to judgment on the § 1981 retaliation claim: according to Rosebud, there was no evidence that Smith's coworkers knew that he had filed charges of racial discrimination against Rosebud; thus, they could not have retaliated against Smith for filing them. Finally, Rosebud complains that the district court should have

---

[2] Smith's other claims were resolved prior to trial in favor of the defendants.

[3] The jury awarded Smith a total of $2,407,500 ($2,250,000 against Rosebud). Because of Title VII's statutory damages caps and the excessive nature of the award, the district court reduced the jury's total award to $470,000, $462,500 of which was against Rosebud. The court also awarded equitable relief under Title VII and § 1981, granting Smith $69,761.80 in back pay and $19,894.77 in prejudgment interest. Rosebud appeals only the Title VII sex discrimination claims and the § 1981 retaliation claim. The claims of the individual defendants are not on appeal.

granted it a new trial when Smith's counsel compared Rosebud's employees to terrorists in his closing argument.

## II.

Smith's Title VII claim charged his male coworkers and male supervisor with creating a hostile work environment by severely and pervasively harassing him because of his sex. *See Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013) (defining a "hostile work environment" under Title VII as one "so pervaded by discrimination that the terms and conditions of employment were altered"). Rosebud does not dispute that Smith introduced evidence sufficient to show that its employees severely and pervasively harassed him with the knowledge of the store's general manager. But Title VII does not impose a flat ban on all harassment. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). It prohibits harassment that discriminates against an individual "because of such individual's … sex." 42 U.S.C. § 2000e–2(a)(1). And Rosebud contends that Smith did not prove that its employees harassed Smith because he was male. According to Rosebud, no rational jury could have concluded that the harassment was discriminatory; thus, the district court should have granted its Rule 50 motion for judgment as a matter of law.

Rosebud relies on *Shafer v. Kal Kan Foods, Inc.*, 417 F.3d 663 (7th Cir. 2005) and *Lord v. High Voltage Software Inc.*, 839 F.3d 556 (7th Cir. 2016), both of which involved plaintiffs who failed to prove that the same-sex harassment they experienced was discriminatory. In *Shafer*, the plaintiff's male coworker told him that he had "a 'cheerleader ass' that 'would look real nice on my dick.'" *Shafer*, 417 F.3d at 665. On one occasion, the coworker shoved Shafer's face into his clothed crotch and forcibly simulated oral sex. *Id*. On another,

he yanked Shafer's hand, placed it on his crotch, and "moan[ed] as if Shafer were masturbating him." *Id.* There were two other incidents: the coworker seized a handful of Shafer's chest hair in the locker room and later bit Shafer's neck. *Id.* We held that the plaintiff was the victim of "four batteries," at the hands of his male colleague, not sex discrimination. *Id.* at 666.[4] Shafer failed to establish "that working conditions at [his workplace] were worse for men than for women"; indeed, the evidence reflected that "[the offending coworker] picked on anyone of either sex he could get away with tormenting." *Id.* Without further evidence of discriminatory behavior, the aggressive encounters with his coworker reflected no more than "personal animosity or juvenile behavior." *Id.* The unwanted sexual contact was "dramatic," *id.* at 665, and grounds for bringing a state tort claim, *id.* at 667, but it did not constitute discrimination on the basis of sex. *Id.* at 665–66.

*Lord* also involved sexually tinged harassment of a male plaintiff by male coworkers. In *Lord*, the plaintiff brought a Title VII suit complaining that his male coworkers had poked and slapped him on the buttocks, reached between his legs, and teased him about a female coworker whom they thought he liked. *Lord*, 839 F.3d at 560. But to prove that his coworkers had discriminated against him because of his sex, Lord "relie[d] entirely" on the fact that this behavior had "sexual overtones." *Id.* at 562. As in *Shafer*, we held that sexual touching

---

[4] The plaintiff in *Shafer* also failed to show that any discrimination was by his employer rather than his coworker. *Id.* at 665 ("Shafer encounters difficulty with both the 'discrimination' branch and the 'by the employer' branch.") In Smith's case, the only issue is whether the harassment was discriminatory.

No. 17-2626 7

and taunting was not enough, standing alone, to prove that the plaintiff had been harassed because he was male. *Id.* at 561–62.

Rosebud contends that Smith's claim resembles those pressed by the plaintiffs in *Shafer* and *Lord*. It emphasizes *Shafer*'s distinction between "sexual horseplay" and "sex discrimination" and insists that Smith experienced the former, not the latter. *Shafer*, 417 F.3d at 666 ("Sexual horseplay differs from *sex discrimination*."). To support its argument, Rosebud points out that quarters were tight behind the meat counter, and the butchers often bumped into each other during the workday. Smith's coworkers testified that they frequently teased and touched each other—not just Smith—and that they often did so in front of others. Rosebud says that this demonstrates that the meat counter culture was one of sexual roughhousing, not sex discrimination.

Rosebud is correct that that unwanted sexual behavior—including the touching of genitals and buttocks—is not necessarily actionable under Title VII. *Oncale*, 523 U.S. at 80 ("We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations."); *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999) ("[T]he sexual content or connotations of workplace harassment do not automatically render that conduct sex discrimination."). *Shafer* and *Lord* mark an important boundary line: Title VII is an anti-discrimination statute, not an anti-harassment statute.

But Smith, in contrast to the plaintiffs in *Shafer* and *Lord*, introduced evidence that the harassment was discriminatory.

Neither Shafer nor Lord offered any proof that the unwelcome sexual touching was discrimination based on sex, including any evidence that men in the workplace were treated differently from women. *Shafer*, 417 F.3d at 666; *Lord*, 839 F.3d at 562. Smith, on the other hand, offered direct comparative evidence that only men, and not women, experienced the kind of treatment that he did at Rosebud. *See Oncale*, 523 U.S. at 80–81 ("A same-sex harassment plaintiff may also … offer direct comparative evidence about how the alleged harasser[s] treated members of both sexes in a mixed-sex workplace."). Ample testimony—from both Smith and other witnesses—established that only men were groped, taunted, and otherwise tormented. Witnesses recounted the numerous times they saw men grabbing the genitals and buttocks of other men. No witness recalled seeing female Rosebud employees subjected to the same treatment. Because Smith introduced evidence that his coworkers only harassed male employees, the jury was free to conclude that these men discriminated against him on the basis of sex. *See also Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1378 (8th Cir. 1996) (finding that evidence showing only men were the targets of sexual harassment could support an inference of sex discrimination).

Rosebud argues that this direct comparative evidence is insufficient because only male employees worked behind the meat counter. If Smith worked in an all-male environment, the fact that only men were touched and groped would not raise an inference of sex discrimination. But Smith did not work in an all-male environment—Rosebud was a mixed-sex workplace where men and women interacted daily. According to Castaneda, Rosebud employed approximately 6–7 women and 15–16 men in its small store. *See Smith v. Rock–Tenn Servs.*,

No. 17-2626 9

*Inc.*, 813 F.3d 298, 308 (6th Cir. 2016) (concluding that a workplace with 30% female employees was not gender-segregated). Female employees sometimes worked in the meat department when the shop was busy; they also brought orders and returned items to the meat counter. And even if the all-male meat counter had been segregated from the rest of the store, that was not the only place where male-on-male sexual harassment occurred—men also groped and harassed each other in the stock room and produce section. Because men worked alongside women at Rosebud and only men were harassed, a reasonable jury could conclude that Smith's coworkers would not have tormented him if he had been female.

### III.

Rosebud next asserts that no rational jury could have found for Smith on his 42 U.S.C. § 1981 retaliation claim. Section 1981 protects the right of all persons, regardless of race, to "make and enforce contracts." This protection encompasses retaliation claims when an employer takes an adverse employment action against an employee for asserting rights protected by § 1981. *CBOCS West Inc. v. Humphries*, 553 U.S. 442, 446 (2008); *Tank v. T–Mobile USA, Inc.*, 758 F.3d 800, 807 (7th Cir. 2014). Smith alleged that his coworkers retaliated against him after he reported race discrimination to the EEOC by making his working conditions so intolerable he that was forced to quit. That, he said, constituted a "constructive discharge" and therefore an adverse employment action under § 1981. Rosebud argues, however, that no retaliation could have occurred because there was no evidence that Smith's coworkers knew that he had filed a charge of racial discrimination. If they didn't know about it, Rosebud says, they could not have retaliated against him for it.

Rosebud has forfeited this argument. To preserve a sufficiency-of-the-evidence challenge for appeal, a party moving for judgment as a matter of law must "specify the judgment sought and the law and facts that entitle the movant to judgment." Fed. R. Civ. P. 50(a)(2); *see also Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 823–24 (7th Cir. 2016) (citing *Ortiz v. Jordan*, 562 U.S. 180, 189 (2011)). Rosebud's motion for judgment as a matter of law under Rule 50(a) and its renewed motion under Rule 50(b) focused exclusively on whether Smith's decision to quit amounted to a constructive discharge. Neither motion made any reference to the argument Rosebud makes now: that a rational jury could not have concluded that Smith's coworkers retaliated against him for filing a claim of race discrimination, because there was no evidence that they knew about the claim. Rosebud's failure to challenge the sufficiency of the evidence on this ground at trial precludes our review of the argument it asserts on appeal.

IV.

In a last-ditch effort to disrupt the verdict, Rosebud argues that it is entitled to a new trial because of inflammatory statements that Smith's counsel made during his closing argument. Counsel referenced a then-recent mass shooting in the United States and stated "In the Middle East terrorists have murdered tens of thousands of people creating chaos in countries not having the order of law. A country that does not have laws to protect the common good breeds anarchy." He then drew a comparison to Rosebud, calling it a "company that breeds anarchy." Rosebud claims that this comparison was so unfairly prejudicial that the district court abused its discretion in denying its motion for a new trial.

No. 17-2626                                                    11

The district court did not abuse its discretion, because Rosebud did not raise this objection during counsel's closing argument. Rosebud raised two objections to counsel's reference to terrorism. It first complained that counsel's statements were "beyond the scope" and later protested that counsel was appealing to "social science research … not in the record." It did not, however, object on the ground that the statements were prejudicial. Rosebud therefore forfeited this objection. *Hamdan v. Indiana Univ. Health N. Hosp., Inc.*, 880 F.3d 416, 422 (7th Cir. 2018).

In any event, Rosebud lost little by forfeiting the objection. Improper statements made during closing arguments seldom warrant a new trial, *Soltys v. Costello*, 520 F.3d 737, 745 (7th Cir. 2008), and this is not one of the rare cases in which they do. If anything, the counsel's comments hurt Smith more than they hurt Rosebud. The district court observed a number of jurors grimacing in reaction to the bizarre terrorism analogy. These references would certainly not have been reason for the district court to set aside the jury's verdict and start over.

***

All three of Rosebud's challenges fail, and the judgment of the district court is AFFIRMED.